# EXHIBIT D



December 20, 2022

Via E-Mail: tmf@lawofficetmf.com
Thomas M. Ferlauto, Esq.
Law Office of Thomas M. Ferlauto, APC
25201 Paseo de Alicia, Ste. 270
Laguna Hills, CA 92653

>Re: ***Assiff, Joshua v County of Los Angeles, et al.***
>Our File Number   :   610-2
>Case No.          :   2:22-CV-05367-RAO
>Trial Date:       :   Not Set

Dear Counsel:

      This correspondence is to meet and confer regarding continued deficiencies in Plaintiff's First Amended Complaint in lieu of a Motion to Dismiss and Motion to Strike under Federal Rule of Civil Procedure 12, and to arrange a telephonic conference to further discuss these issues personally. As you are aware, Defendants' responsive pleading must be filed no later than December 28, 2022. As such, please advise your availability to confer on December 21, 2022.

## New Allegations

      At paragraph 10: On or about September 24, 2021, **at approximately 7:50 a.m.** Plaintiff was driving from his home to a teammate's house in order to carpool to basketball practice. **Plaintiff was obeying all traffic laws, rules and regulations. At the intersection of Soledad Canyon Road and Sierra Highway, Plaintiff made a legal right hand turn on a green light.**

      At paragraph 12: **The encounter was captured on the DEPUTY's body worn camera. DEPUTY falsely accused Plaintiff of making an illegal right hand turn on a red light. Plaintiff politely protested his innocence, referring to the DEPUTY throughout the encounter as either "sir" or "officer." Merely 40 seconds into the encounter, DEPUTY angrily shouted at Plaintiff, "Gimme your driver's license or you're going to jail!" Merely 5 seconds after this demand, DEPUTY threw open Plaintiff's car door and laid hands upon Plaintiff in an effort to forcibly remove Plaintiff from the car. Plaintiff requested to speak with the DEPUTY's supervisor. DEPUTY immediately responded to Plaintiff's request by shouting, "I AM A SUPERVISOR!" and pepper spraying Plaintiff in the face.** For no apparent reason and without probable cause, DEPUTY – as well as other deputies apparently acting under color of law and apparently working for the Department and COLA who subsequently responded to the call – all tasered, choked, pepper sprayed, beat and arrested Plaintiff.

Kjar, McKenna & Stockalper, LLP   |   LA (424) 217-3026   |   OC (657) 237-7533   |   www.kmslegal.com

PLEASE REPLY TO: LOS ANGELES OFFICE

**Los Angeles County**
841 Apollo St, Suite 100
El Segundo, CA 90245

**Orange County**
7711 Center Avenue, Suite 350
Huntington Beach, CA 92647

Re: ***Assiff, Joshua v County of Los Angeles, et al.***
December 20, 2022
Page 2



      At paragraph 21: The County knowingly and intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendment respectively to the United States Constitution, which policies, customs, practices, and usages at all times herein mentioned caused Plaintiff's harm. These policies, customs, practices and usages included, without limitation, the employment of motorcycle and other officers to make unnecessary and unwarranted traffic stops to bully and harass African American drivers. This would include among other things, the initiation of frivolous traffic stops, arrest without probable cause, and the use of excessive force to effectuate the arrest. **The Los Angeles County Sheriff's Department has a long and sordid history of racial profiling and discriminatory traffic stops, particularly in the Antelope Valley. For years, black and Latino residents in the Antelope Valley complained they were the victims of racially biased stops and searches along with other mistreatment by Los Angeles County Sheriff's deputies. In 2013, the US Department of Justice, Civil Rights Division analyzed Sheriff's Department data from tens of thousands of vehicle and pedestrian stops, interviewed hundreds of people and reviewed volumes of internal sheriff's documents, and after this thorough analysis the Department of Justice "found that LASD's Antelope Valley stations have engaged in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force, in violation of the Fourth Amendment, the Fourteenth Amendment, and Title VI. We found also that deputies assigned to these stations have engaged in a pattern or practice of discrimination against African Americans in violation of the Fair Housing Act." (See, Exhibit 1) The findings forced the county to reach a legal settlement with federal authorities in 2015 that called for significant reforms and continued oversight. However, despite all of this, the racial profiling and discriminatory traffic stops in the Antelope Valley persist, as evidenced by continued gross racial disparities. According to an NCCD report from 2020 found on the Sheriff's Department's own website entitled, "An Analysis of Racial/Ethnic Disparities in Stops by Los Angeles County Sheriff's Deputies in the Antelope Valley" the report found that Black drivers make up 32% of all traffic stops even though they account for only 17% of the population. The report also found that black drivers once stopped were more likely to have both their vehicle and their persons searched, more likely to experience backseat detentions, and more likely to be asked if they are on probation or parole. All this is in spite of the fact that black drivers have a much lower contraband discovery rate (15.4%) than either their white or Hispanic counterparts (24.4% and 22.3% respectfully). (See, Exhibit 2) This problem with racial profiling and discriminatory traffic stops in the Antelope Valley is not an isolated single incident, but rather a persistent and ongoing problem recognized by the US Department of Justice, Civil Rights Division.**

      <u>**First Cause of Action - Violation of 42 USC 1983 Against Defendant Deputy**</u>

      Plaintiff alleges that the subject Deputy "acting under color or law or color of authority, deprived Plaintiff of his rights, privileges, or immunities secured by the State and Federal Constitutions, ***by arresting Plaintiff without probable cause*** … violation of the Fourth and Fourteenth Amendment to the United States Constitution." (FAC, ¶ 15.)

      <u>**Plaintiff's Fourteenth Amendment Claim**</u>:  Plaintiff continued to maintain claims under the Fourteenth Amendment.  As previously advised, claims of unreasonable arrest and seizure

Re: ***Assiff, Joshua v County of Los Angeles, et al.***
December 20, 2022
Page 3



and/or excessive force during the arrest are governed by the Fourth Amendment's analysis.

"If, in a Section 1983 suit, the plaintiff's claims can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the 'more subjective standard of substantive due process.'" *Hufford v. McEnaney* (9th Cir. 2001) 249 F.3d 1142, 1151 (citing, *Armendariz v. Penman* (9th Cir. 1996) 75 F.3d 1311, 1319 (en banc); see, *Albright v. Oliver* (1994) 510 U.S. 266, 273 ("The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor* (1989) 490 U.S. at 395 ("The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right...").

Where a Section 1983 plaintiff alleges that he has been unlawfully seized, the Court has held that the Fourth Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. See, *Graham, supra*, 490 U.S. at 394. Indeed, "the Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions." *U.S. v. James Daniel Good Real Property* (1993) 510 U.S. 43, 51.

Because the Fourth Amendment's legal standard governs all claims relating to "unreasonable search or seizures," including those alleged by Plaintiff's the Fourteenth Amendment claim is superfluous and should be dismissed.

**Probable Cause**: Probable cause to arrest or detain is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each. *Mustafa v. City of Chicago* (7th Cir. 2006) 442 F.3d 544, 547; see also *Hutchinson v. Grant* (9th Cir. 1986) 796 F.2d 288, 290 (holding that "a police officer has immunity if he arrests with probable cause").

Under California *Penal Code* section 836, a peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested has committed a felony. Cal. *Penal Code* § 836(a)(3); see *United States v. DiRe* (1948) 332 U.S. 581, 589, 68 S. Ct. 222, 92 L. Ed. 210; United States v. Branch (9th Cir. 1973) 483 F.2d 955, 956.

Plaintiff is collaterally estopped from arguing lack of probable cause, because a "finding of probable cause … is a final judgment on the merits for the purposes of collateral estoppel under the California law...." *Evans v. Cnty. of Los Angeles* (C.D. Cal. 2021) 529 F. Supp. 3d 1082, 1095 (aff'd, No. 21-55406, 2022 WL 3359171 (9th Cir. Aug. 15, 2022)) (citing *McCutchen v. City of Montclair* (Cal. Ct. App. 1999) 73 Cal. App. 4th 1138, 1145-46, 87 Cal. Rptr. 2d 95).

Defendants' previous Motion to Dismiss established that a judicial officer found on September 25, 2022 that there was probable cause to believe that Plaintiff committed violations of California *Penal Code* sections 69 (obstructing or resisting an officer) and 243(b) (battery against an officer) during the subject September 24, 2021 incident.

Plaintiff's additional allegations continue to fail to show that there was no probable cause to arrest Plaintiff for violations of California *Penal Code* sections 69 (obstructing or resisting an

Re: *Assiff, Joshua v County of Los Angeles, et al.*
December 20, 2022
Page 4

officer) and 243(b) (battery against an officer).

### Second Cause of Action - Violation of 42 USC 1983 Unlawful Custom and Practice Against Defendant County (*Monell* Claim)

In order to recover against a government entity or supervisor under Section 1983, a plaintiff must prove a pattern of unconstitutional acts by government officials which are "so permanent and well settled as to constitute an [unspoken] 'custom or usage' with the force of law." *Monell v. Department of Social Servs.* (1978) 436 U.S. 658, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 611 . Further, liability under Section 1983 requires the identification of a municipal 'policy' or 'custom' that caused the plaintiff's injury. *Bd. of County Comm'rs of Bryan County v. Brown* (1997) 520 U.S. 397, 403-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 .

Since *Iqbal*, *supra*, courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability. See, e.g., *Rodriguez v. City of Modesto* (9th Cir. 2013) 535 Fed. App'x 643, 646 (affirming district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual support); *Via v. City of Fairfield* (E.D. Cal.2011) 833 F. Supp. 2d 1189, 1196 (citing cases).

As discussed below, we will seek to strike Exhibit 1 and allegations pertaining thereto, as the only relevant findings of discrimination against African Americans are for violation of the Fair Housing Act, which is not at issue in this litigation. We will also seek to strike Exhibit 2, as the findings therein do not pertain to arrests for violations of California *Penal Code* sections 69 (obstructing or resisting an officer) and 243(b) (battery against an officer).

Thus, the FAC alleges in a conclusory manner that the "County knowingly and intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages… include[ing], without limitation, the employment of motorcycle and other officers to make unnecessary and unwarranted traffic stops to bully and harass African American drivers. This would include among other things, the initiation of frivolous traffic stops, arrest without probably cause, and the use of excessive force to effectuate the arrest." (FAC, ¶ 21.) Absent from the FAC are any factual allegations supporting these conclusory statements.

### Motion To Strike Under Fed.R.Civ.P. 12(b)(6)

Plaintiff is not entitled to punitive or exemplary damages against the County, as a municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616.

Moreover, Plaintiff's Complaint alleges in conclusory statements that "Defendant was wanton, willful, deliberate, and in conscious disregard of the rights and feelings of Plaintiff, was undertaken with the intent to cause Plaintiff injury and constitutes malice, actual, express and implied." (Complaint, ¶¶ 18, 25.) Once again, absent from the Complaint are any factual allegations supporting these conclusory statements, against either the subject Deputy or the County.

In addition, we will seek to strike Exhibit 1 and allegations pertaining thereto, as the only

Re: ***Assiff, Joshua v County of Los Angeles, et al.***
December 20, 2022
Page 5



relevant findings of discrimination against African Americans are for violation of the Fair Housing Act, which is not at issue in this litigation. We will also seek to strike Exhibit 2, as the findings therein do not pertain to arrests for violations of California *Penal Code* sections 69 (obstructing or resisting an officer) and 243(b) (battery against an officer).

## Conclusion

As discussed above, please advise as soon as possible regarding your availability for a telephonic conference regarding the issues raised herein. We look forward to working amicably with you to resolve these issues.

Very truly yours,

KJAR MCKENNA & STOCKALPER

*[signature: Molshree Gupta]*

PATRICK E. STOCKALPER
MOLSHREE GUPTA

MG