THOMAS M. FERLAUTO (SBN 155503)
LAW OFFICE OF THOMAS M. FERLAUTO, APC
25201 Paseo de Alicia, Suite 270
Laguna Hills, California 92653
Telephone: 949-334-8650
Fax: 949-334-8691
Email: TMF@lawofficeTMF.com

Attorney for Plaintiff, JOSHUA ASSIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA ASSIFF,**<br><br>**Plaintiff,**<br><br>v.<br><br>**COUNTY OF LOS ANGELES; SHERIFF DEPUTY BADGE NUMBER 404532; And DOES 1 through 10,**<br><br>**Defendants.** | Case No. 2:22-cv-05367 RGK (MAAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>**Date:** January 30, 2022<br>**Time:** 9:00 a.m.<br>**Dept:** 850<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br>Assigned to: Hon. R. Gary Klausner, District Judge, Courtroom 850<br>All Discovery Matters Referred to: Hon. Maria A. Audero, District Judge |

Plaintiff **JOSHUA ASSIFF** (hereinafter referred to as "ASSIFF" or "Plaintiff") hereby respectfully submits the following memorandum of points and authorities in opposition to the motion to dismiss under FRCP 12(b)(6) filed in this action by Defendants COUNTY OF LOS ANGELES ("COLA") and SERGEANT TRAVIS KELLY ("KELLY") (hereinafter COLA and KELLY shall collectively be referred to as "Defendants").

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ………………………………..…………………p. 6

I. INTRODUCTION ………………………………..…………………p. 6

II. STANDARD OF RULING ON MOTION TO DISMISS ………………………………..…………………p. 9

III. PLAINTIFF ADEQUATELY ALLEGED UNLAWFUL ARREST ………………………………..…………………p. 10

    A. PLAINTIFF WAS ARRESTED WITHOUT PROBABLE CAUSE ………………………………..…………………p. 10

    B. THERE IS NO COLLATERAL ESTOPPEL ON THE ISSUE OF PROBABLE CAUSE ………………………………..…………………p. 12

VI. PLAINTIFF ADEQUATELY ALLEGED A "MONELL" CLAIM ………………………………..…………………p. 14

V. IN THE EVENT THAT THE COURT IS INCLINED TO GRANT ANY PART OF THE DEFENDANTS' MOTION, PLAINTIFF REQUESTS AN OPPORTUNITY TO AMEND ………………………………..…………………p. 17

VI. CONCLUSION ………………………………..…………………p. 18

# TABLE OF AUTHORITIES

**STATUTES AND RULES**

42 USC § 1983
............................................................................................................p. 6

Federal Rule of Civil Procedure 12(b)(6)
........................................................................................................p. 9, 10

Federal Rule of Evidence 201
.............................................................................................................p. 10

Penal Code section 69
.........................................................................................................p. 10, 16

Penal Code section 243(b)
.........................................................................................................p. 10, 16

Federal Rule of Civil Procedure 15(a)
.............................................................................................................p. 17

**CASES**

*Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011)
...............................................................................................................p. 9

*Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)
...............................................................................................................p. 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
...........................................................................................................p. 6, 9

*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)
.........................................................................................................p. 10, 16

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)
.............................................................................................................p. 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)
.............................................................................................................p. 10

*Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ………………………………………………………………………………p. 10

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) ………………………………………………………………………………p. 10

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ………………………………………………………………………………p. 10

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) ………………………………………………………………………………p. 10

*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ………………………………………………………………………………p. 10

*Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir.1995) ………………………………………………………………………………p. 12

*Younan v. Caruso*, 51 Cal.App.4th 401, 406-07, 59 Cal.Rptr.2d 103 (1996) ………………………………………………………………………………p. 12

*Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) ………………………………………………………………………………p. 12

*Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir.1993) ………………………………………………………………………………p. 12

*Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848, 850 (9th Cir.1997) ………………………………………………………………………………p. 12

*Evans v. Cnty. of Los Angeles,* 529 F. Supp. 3d 1082 (C.D. Cal. 2021) ………………………………………………………………………………p. 13, 14

*Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir. 1989) ………………………………………………………………………………p. 6, 14

*United States v. Corinthian Colleges,* 655 F3d 984, 995 (9th Cir. 2011) ………………………………………………………………………………p. 17

*Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F3d 930 (7th Cir. 2012)
………………………………………………………………………………………p. 17

*Foman v. Davis*, 371 US 178, 182, 83 S.Ct. 227, 230 (1962)
………………………………………………………………………………………p. 17

*Sonoma County Ass'n of Retired Employees v. Sonoma County,* 708 F3d 1109, 1117 (9th Cir. 2013)
………………………………………………………………………………………p. 17

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F3d 510, 520, 523 (7th Cir. 2015)
………………………………………………………………………………………p. 18

*Ynclan v. Department of Air Force,* 943 F2d 1388, 1391 (5th Cir. 1991)
………………………………………………………………………………………p. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff JOSHUA ASSIFF (hereinafter referred to as "ASSIFF" or "Plaintiff") hereby respectfully submits the following memorandum of points and authorities in opposition to the motion to dismiss under FRCP 12(b)(6) filed in this action by Defendants COUNTY OF LOS ANGELES ("COLA") and SERGEANT TRAVIS KELLY ("KELLY") (hereinafter COLA and KELLY shall collectively be referred to as "Defendants").

## I. INTRODUCTION

Plaintiff is a 21-year old black male and a student at Antelope Valley College where he plays basketball. Plaintiff was driving from his home to a teammate's house in order to carpool to basketball practice. For no apparent reason and without probable cause, KELLY, a male Caucasian motorcycle Sheriff deputy, pulled Plaintiff over. For no apparent reason and without probable cause, KELLY – as well as other deputies who subsequently responded to the call – all tasered, choked, pepper sprayed, beat and arrested Plaintiff. Plaintiff has asserted two causes of action – the First Cause of Action against KELLY for violation of 42 USC § 1983 (arrest without probable cause and with excessive force), and the Second Cause of Action against COLA for violation of 42 USC § 1983 (*Monell* liability).

Defendant's prior motion to dismiss, brought on substantially the same arguments as offered on this motion, was granted in part *with leave to amend*. On the 1983 cause of action against KELLY, the Court **granted** the motion as to *unlawful arrest*, finding the allegations contained legal conclusions as opposed to factual allegations (citing *Twombly*). The Court **denied** the motion as to *excessive force,* finding the allegations sufficient to state a cause of action. The Court **granted** the motion as to the *Monell* claim against COLA, again finding the allegations too conclusory under *Twombley* and finding the single incident alleged in the complaint insufficient to allege a custom and practice (citing *Davis v. Ellensburg*).

Plaintiff filed an amended complaint specifically addressing the deficiencies found by the Court.

The amended complaint alleges detailed factual allegations of the events leading up to the unlawful arrest. Plaintiff did not commit a traffic infraction. (FAC 4:6-8) Nevertheless, KELLY pulled Plaintiff over for purportedly committing a minor traffic infraction. (FAC 4:12-13) Plaintiff was polite throughout the encounter and always referred to KELLY as "officer" or "sir." (FAC 4:13-14) Even though the traffic stop only involved a minor traffic infraction, KELLY irrationally and angrily threatened to arrest Plaintiff a mere 40 seconds into the encounter, (FAC 4:16-16) and KELLY actually used force to effectuate the arrest of Plaintiff a mere 5 seconds after that. (FAC 4:16-18) Nothing in the allegations can justify KELLY's inexplicable behavior and nothing justifies Plaintiff's arrest.

In support of the *Monell* claim against COLA, Plaintiff's amended complaint added allegations that the U.S. Department of Justice performed an extensive study of traffic stops in the Antelope Valley by the Los Angeles Sheriff's Department in 2013 and "found that LASD's Antelope Valley stations have engaged in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force, in violation of the Fourth Amendment, the Fourteenth Amendment, and Title VI." (FAC 6:25-7:1) These finding led to a settlement agreement between the US DOJ and COLA in 2015 requiring significant reform and continued oversight. (FAC 7:3-5) However, the recent oversight reports establish that the Sheriff's Department in Antelope Valley still has a pattern and practice of racial profiling and discriminatory traffic stops against African Americans like Plaintiff. (FAC 7:7-17) Plaintiff even attached the 2013 report of the DOJ Civil Rights Division finding the discriminatory practices (Exhibit 1) and the 2020 oversight report finding the racial profiling and discriminatory traffic stops persist. (Exhibit 2)

7
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

Defendants argue that the facts as alleged do not show that Plaintiff's arrest was unlawful. However, Defendants' motion to dismiss (at 7:2-6) grossly mischaracterize the allegations in an attempt to justify KELLY's unlawful arrest. Defendants claim Plaintiff "verbally argued" with KELLY and refused to provide his driver's license. Those facts were not alleged. Rather, Plaintiff was always polite and referred to KELLY as "officer" or "sir," (FAC 4:11-14) and there is no allegation that Plaintiff ever refused to provide his license. Finally, the short amount of time (a matter of only seconds) between KELLY's demand for Plaintiff's license and KELLY's use of force to effectuate the arrest puts the lie to any assertion that KELLY's arrest of Plaintiff was justifiable.

Defendants, again, argue that the issue of probable cause has been conclusively determined, and Plaintiff is precluded by collateral estoppel from disputing a finding purportedly made on an ex parte booking form entitled Probable Cause Determination (Declaration) and apparently e-signed by a California Superior Court Judge. The fact that Defendants would even forward such an argument (not once, but twice) is worrisome. The "determination" was made only 24 hours after the arrest, before Plaintiff obtained counsel, while Plaintiff was not present, without an opportunity by Plaintiff or Plaintiff's counsel to be heard, and based solely on a six-line declaration e-signed by KELLY. This was not a final judgment on the merits or even a probable cause finding after a preliminary hearing. This issue was not litigated, Plaintiff was not a party with an opportunity to be heard, and this was not a final determination on the merits. Collateral estoppel simply does not apply.

Defendants, again, argue that the *Monell* claim against COLA fails, because the allegations are conclusory and unsupported by facts. However, this time the argument is being made in the face of a mountain of evidence and statistics of a pattern or practice of Constitutional violations provided by the Plaintiff via the U.S. Department of Justice and COLA's own compliance monitors. The specific factual allegations show that in 2013, the US DOJ found "reasonable cause to believe that

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

LASD Antelope Valley deputies engage in a pattern or practice of misconduct in violation of the Constitution and federal law in a number of ways, including: • Pedestrian and vehicle stops that violate the Fourth Amendment; • Stops that appear motivated by racial bias, in violation of the Fourteenth Amendment and federal statutory law; • The use of unreasonable force in violation of the Fourth Amendment…" (Exhibit 1, p. 22)  These finding by the US DOJ perfectly track the allegations in this case – a traffic stop without probable case, a racially motivated traffic stop, and the use of unreasonable force.

Plaintiff made a good faith effort to address the deficiencies identified by the Court in its prior ruling.  In the event that the Court finds any deficiencies, Plaintiff contends that the deficiencies can be corrected by amendment and respectfully requests an opportunity to do so.

## II. STANDARD OF RULING ON MOTION TO DISMISS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint

9
MEMORANDUM OF POINTS AND AUTHORITIES IN Opposition TO MOTION TO DISMISS

must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); see *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

### III. PLAINTIFF ADEQUATELY ALLEGED UNLAWFUL ARREST
**A.  Plaintiff Was Arrested Without Probable Cause**

Defendants argue that the facts as alleged in the Complaint show that KELLY had probable cause to arrest Plaintiff under Penal Code section 69 for obstructing or resisting an officer and Penal Code section 243(b) battery against an officer. However, in ruling on this motion, the facts are not what Defendants hope to be able

to argue at trial, but rather as set forth in the amended complaint. Those allegations are as follows:

> **Plaintiff was obeying all traffic laws, rules and regulations. At the intersection of Soledad Canyon Road and Sierra Highway, Plaintiff made a legal right hand turn on a green light.** (FAC 4:6-8)
> **The encounter was captured on the DEPUTY's body worn camera. DEPUTY falsely accused Plaintiff of making an illegal right hand turn on a red light. Plaintiff politely protested his innocence, referring to the DEPUTY throughout the encounter as either "sir" or "officer." Merely 40 seconds into the encounter, DEPUTY angrily shouted at Plaintiff, "Gimme your driver's license or you're going to jail!" Merely 5 seconds after this demand, DEPUTY threw open Plaintiff's car door and laid hands upon Plaintiff in an effort to forcibly remove Plaintiff from the car. Plaintiff requested to speak with the DEPUTY's supervisor. DEPUTY immediately responded to Plaintiff's request by shouting, "I AM A SUPERVISOR!" and pepper spraying Plaintiff in the face.** For no apparent reason and without probable cause, DEPUTY – as well as other deputies apparently acting under color of law and apparently working for the Department and COLA who subsequently responded to the call – all tasered, choked, pepper sprayed, beat and arrested Plaintiff. (FAC 4:11-24)

Defendants mischaracterize these allegations to suit their argument. However, the allegations are clear. KELLEY pulled Plaintiff over for a mere traffic infraction, a traffic infraction that Plaintiff did not even commit. So, there was not even probable cause for the traffic stop, which was just another racially motivated traffic stop in Antelope Valley. Plaintiff was polite to KELLY and referred to him as "sir" or "officer." There is no allegation that Plaintiff refused to produce his driver's license. There is no allegation that Plaintiff obstructed or battered KELLY. Rather, KELLY inexplicably started using force against Plaintiff to effectuate Plaintiff's arrest for no apparent reason and without probably cause *in a matter of seconds into a traffic stop*

*for a minor traffic infraction*. Based upon these allegations, Plaintiff has adequately alleged unlawful arrest.

**B.     There Is No Collateral Estoppel On The Issue Of Probable Cause**

Defendants renew their argument that the issue of probable cause has been conclusively determined, and Plaintiff is precluded by Collateral Estoppel from disputing a finding purportedly made on an ex parte booking form entitled Probable Cause Determination (Declaration) and apparently e-signed by California Superior Court Judge Christopher Estes approximately 24 hours after the arrest. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir.1995). Under both California and federal law, collateral estoppel applies only where it is established that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. [*Younan v. Caruso*, 51 Cal.App.4th 401, 406-07, 59 Cal.Rptr.2d 103 (1996); see also *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) – "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Id*. citing *Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir.1993)] "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848, 850 (9th Cir.1997).

The Defendants' claim of collateral estoppel, based upon a one-paged ex parte e-signed booking form, must be rejected for a host of reasons. First, there is no

showing that the issue was ever litigated in the first proceeding. Plaintiff was not present. Plaintiff was not represented. Plaintiff was not given any opportunity to be heard. Only KELLY's short one-sided declaration was even considered. Thus, the issue was never litigated, and Plaintiff cannot fairly be considered to be a party to the first "proceeding." Second, the first "proceeding" did not end with a final judgment on the merits. Under these circumstances, a *final* determination would be after a trial on the merits and a conviction of Plaintiff on the crimes alleged. However, that did not happen here. There was no trial on the merits. Plaintiff was never convicted of anything. *There was not even a preliminary hearing where Plaintiff might have had an opportunity to be heard*. There was no preliminary hearing, because there were no criminal proceedings. **This was a DA reject** – no charges were even brought by the District Attorney. The DA took one look at the body camera footage and presumably concluded, despite the violent arrest, there were no crimes committed by Plaintiff. Since Plaintiff was not a party, the issue was not litigated, and there was no final judgment on the merits, there is no issue preclusion on probable cause.

Defendants rely on *Evans v. Cnty. of Los Angeles,* 529 F. Supp. 3d 1082 (C.D. Cal. 2021) for their argument. However, they selectively edited the quote from that case to mislead this Court. They quote a "finding of probable cause … is a final judgment on the merits for the purposes of collateral estoppel under the California law...." (Defendants' Motion, Doc. #16, 7;4-5) However, the actual quote is a "finding of probable cause **to hold the defendant over for trial** is a final judgment on the merits for the purposes of collateral estoppel under the California law...." (*Evans v. Cnty. of Los Angeles, supra,* 529 F. Supp. 3d at 1095, emphasis added). That omitted part of the quote, "to hold the defendant over for trial" is, of course, all important. *Evans*, and that quote, concerned the very different situation where the plaintiff had been criminally charged, the plaintiff was represented by counsel, the court held a formal adversarial proceeding in the form of a preliminary hearing, counsel for plaintiff was given an opportunity the cross-examine witnesses, present

evidence and make arguments, and after that fully litigated proceeding the Court held there was probable cause to hold the plaintiff (the defendant in the criminal proceeding) over for trial. None of that is present here, and Defendants know that. That is why they deceptively edited the quote in the *Evans* case.

## IV. PLAINTIFF ADEQUATELY ALLEGED A "MONELL" CLAIM

Defendants argue that Plaintiff's *Monell* claim fails, not because the elements of the claim are not satisfied by the pleading, but because the allegations are conclusory and not supported by enough "facts" to support those conclusions. The Court in its ruling on the initial motion to dismiss agreed, and citing *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) stated that Plaintiff needed to allege facts showing this was more than an isolated incident but rather "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." In the amended complaint, Plaintiff did just that and alleges these facts:

> The County knowingly and intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendment respectively to the United States Constitution, which policies, customs, practices, and usages at all times herein mentioned caused Plaintiff's harm. These policies, customs, practices and usages included, without limitation, the employment of motorcycle and other officers to make unnecessary and unwarranted traffic stops to bully and harass African American drivers. This would include among other things, the initiation of frivolous traffic stops, arrest without probable cause, and the use of excessive force to effectuate the arrest. **The Los Angeles County Sheriff's Department has a long and sordid history of racial profiling and discriminatory traffic stops, particularly in the Antelope Valley. For years, black and Latino residents in the Antelope Valley complained they were the victims of racially biased stops and searches along with other mistreatment by Los Angeles County**

**Sheriff's deputies. In 2013, the US Department of Justice, Civil Rights Division analyzed Sheriff's Department data from tens of thousands of vehicle and pedestrian stops, interviewed hundreds of people and reviewed volumes of internal sheriff's documents, and after this thorough analysis the Department of Justice "found that LASD's Antelope Valley stations have engaged in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force, in violation of the Fourth Amendment, the Fourteenth Amendment, and Title VI. We found also that deputies assigned to these stations have engaged in a pattern or practice of discrimination against African Americans in violation of the Fair Housing Act." (See, Exhibit 1) The findings forced the county to reach a legal settlement with federal authorities in 2015 that called for significant reforms and continued oversight. However, despite all of this, the racial profiling and discriminatory traffic stops in the Antelope Valley persist, as evidenced by continued gross racial disparities. According to an NCCD report from 2020 found on the Sheriff's Department's own website entitled, "An Analysis of Racial/Ethnic Disparities in Stops by Los Angeles County Sheriff's Deputies in the Antelope Valley" the report found that Black drivers make up 32% of all traffic stops even though they account for only 17% of the population. The report also found that black drivers once stopped were more likely to have both their vehicle and their persons searched, more likely to experience backseat detentions, and more likely to be asked if they are on probation or parole. All this is in spite of the fact that black drivers have a much lower contraband discovery rate (15.4%) than either their white or Hispanic counterparts (24.4% and 22.3% respectfully). (See, Exhibit 2) This problem with racial profiling and discriminatory traffic stops in the Antelope Valley is not an isolated single incident, but rather a persistent and ongoing problem recognized by the US Department of Justice, Civil Rights Division.** (FAC 6:8-7:20)

In addition to these allegations, the amended complaint attaches the 2013 DOJ report and the 2020 NCCD oversight report. For the purposes of this motion, all of these alleged facts must be presumed true, as well as any and all reasonable inferences to be drawn from those facts. [*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)] These facts, once proven at trial, are sufficient to support Plaintiff's *Monell* claim against COLA.

Defendants attempt to mislead the Court on the import of Exhibit 1 by claiming that it only concerns violations of the Fair Housing Act and does not concern issues involving excessive force or unlawful arrests for violations of Penal Code sections 69 and 243(b). (See, motion 11:4-10) However, even a cursory review of the Exhibits shows nothing could be further from the truth. On page 22 of Exhibit 1 under the section SUMMARY OF FINDINGS, the U.S. Department of Justice, Civil Rights Division stated as follows: "Our investigation demonstrated reasonable cause to believe that LASD Antelope Valley deputies engage in a pattern or practice of misconduct in violation of the Constitution and federal law in a number of ways, including: • Pedestrian and vehicle stops that violate the Fourth Amendment; • Stops that appear motivated by racial bias, in violation of the Fourteenth Amendment and federal statutory law; • The use of unreasonable force in violation of the Fourth Amendment…" (Exhibit 1, p. 22)

As for unlawful arrests for violations of Penal Code sections 69 and 243(b), the U.S. Department of Justice, Civil Rights Division found as follows:

> We examined use of force reports from August 2010 to August 2011 in which the subject was charged only with the following and no other crimes: resisting arrest or obstructing an officer in his or her duties, whether a felony, California Penal Code (PC) § 69; misdemeanor, PC § 148(a)(l); and battery on a peace officer or other public officer without the infliction of injury, PC § 243(b)). Of all the use of force reports reviewed, approximately 22% fit into this category.

> Perhaps most strikingly, we found that 81% of the uses of force we reviewed where the only charge was obstruction-related involved targets who were African American or Latino. For the 25 felony obstruction-only arrests, 88% involved victims who were people of color. This is an extraordinarily disproportionate number of obstruction charges involving use of force against people of color and warrants close attention by the Department. See Arlington Heights, 429 U.S. at 266 (intent may be established by "clear pattern, unexplainable on grounds other than race"). (Exhibit 1, p. 50)

The Exhibits to the amended complaint concerning the US DOJ's findings of unconstitutional practices by the Sheriff's Department in Antelope Valley, as well as the oversight monitor's report showing that the racial profiling and discriminatory traffic stops in the Antelope Valley persist, are directly relevant to Plaintiff's allegations, because those Exhibits show a pattern and practice of the exact same constitutional violations alleged by Plaintiff in this action and these Exhibits support Plaintiff's *Monell* claim against COLA.

## V. IN THE EVENT THAT THE COURT IS INCLINED TO GRANT ANY PART OF THE DEFENDANTS' MOTION, PLAINTIFF REQUESTS AN OPPORTUNITY TO AMEND

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. FRCP 15(a) expressly states the court "should freely give leave when justice so requires." [FRCP 15(a)(2); *United States v. Corinthian Colleges,* 655 F3d 984, 995 (9th Cir. 2011)—standard for granting leave to amend is "generous"; *Independent Trust Corp. v. Stewart Information Services Corp.,* 665 F3d 930, 943 (7th Cir. 2012)]. Federal policy strongly favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. [*Foman v. Davis,* 371 US 178, 182, 83 S.Ct. 227, 230 (1962); *Sonoma County Ass'n of Retired Employees v. Sonoma County,* 708 F3d 1109, 1117 (9th Cir. 2013)] The liberal

standard for permitting amendment "is especially important where the law is uncertain." [*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana,* 786 F3d 510, 520, 523 (7th Cir. 2015)—liberal amendment standard needed "in the face of uncertain pleading standards after Twombly and Iqbal"]  Thus, while "leave to amend should not be granted automatically," the circumstances under which Rule 15(a) "permits denial of leave to amend are limited." [*Ynclan v. Department of Air Force,* 943 F2d 1388, 1391 (5th Cir. 1991)]

Plaintiff contends that any perceived deficiencies can be cured by amendment.

## VI. CONCLUSION

For the reasons set forth above, the motion to dismiss should be denied and the Defendants ordered to answer the Complaint.

DATED: January 9, 2023        The Law Office Of Thomas M. Ferlauto, APC

By: _____
Thomas M. Ferlauto
Attorney For: Plaintiff, JASHUA ASSIFF