PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendants,
**COUNTY OF LOS ANGELES and SERGEANT TRAVIS KELLY**
*(Defendants is exempt from filing fees pursuant to Government Code § 6103*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ASSIFF, | **Case No.: 2:22-cv-05367 RGK(MAAx)** |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| COUNTY OF LOS ANGELES; SHERIFF DEPUTY BADGE NUMBER 404532; And DOES 1 through 10, | *[Filed concurrently with Dec. of Michael Gray; Dec. of Molshree Gupta; Dec. of Sgt. Travis Kelly; Dec. of Sgt. Keith Greene; Notice of Lodging; Separate Statement; and [Proposed] Order]* |
| Defendants. | **Date:     June 26, 2023**<br>**Time:     9:00 a.m.**<br>**Crtrm:    850** |
| | Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023 |
| | Assigned to:<br>Hon. R. Gary Klausner, District Judge<br>Courtroom 850 |

1

**TO THIS HONORABLE COURT AND TO ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that on June 26, 2023 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 850 of the above captioned court, Defendants COUNTY OF LOS ANGELES and SERGEANT TRAVIS KELLY (hereinafter "Defendants") will, and hereby doe, move this Court for an order granting Partial Summary Judgment or, pursuant to Federal Rule of Civil Procedure Rule 56 on the following grounds:

1. Plaintiff Joshua Assiff's ("Plaintiff") first cause of action for violation of federal civil rights under 42 U.S.C. § 1983 against Defendant Kelly for unlawful arrest has no merit because no reasonable jury could find an absence of probable cause based on the undisputed facts.

2. Plaintiff's second cause of action for violation of federal civil rights under 42 U.S.C. § 1983 has no merit because Defendant County neither knowingly nor intentionally promulgated, maintained, applied, enforced, and continued policies and custom which caused the alleged constitutional deprivation. Under section 1983, liability cannot attach a governmental entity unless and until the plaintiff has established the governmental entity had a custom, policy, or practice which caused Plaintiff to suffer a constitutional injury. Moreover, the undisputed evidence shows that Deputy Travis Kelly received proper training and supervision in accordance to Defendant County's policies.

3. Plaintiff's claim for punitive damages against Defendant Kelly has no merit because no reasonable jury could find that he acted with the intent to use excessive force, or with malice, oppression or reckless disregard of Plaintiff's constitutional rights.

/ / /

/ / /

/ / /

2

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Separate Statement of Undisputed Material Facts, Declaration of Defendant Sergeant Travis Kelly, Declaration of Sergeant Keith Greene, Declaration of Michael Gray, Declaration of Molshree Gupta, Esq., all admitted exhibits, the records and files herein, and upon such other oral and documentary evidence as may be presented and admitted at the time of the hearing on this motion.

Dated: May 24, 2023                    KJAR, MCKENNA & STOCKALPER, LLP

By: _____
                                       PATRICK E. STOCKALPER
                                       MOLSHREE GUPTA
                                       Attorneys for Defendants,
                                       COUNTY OF LOS ANGELES and DEPUTY
                                       TRAVIS KELLY

**DEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………4

TABLE OF AUTHORITIES……………………………………………………….........5

I.  INTRODUCTION .................................................................................... 7

II.  STATEMENT OF FACTS ....................................................................... 8

    A.  The Underlying Incident…………………………………………………8

    B.  Plaintiff's Allegations……………………….……………………….. 10

    C.  Defendant Kelly Had Probable Cause to Arrest Plaintiff on September 24, 2021………………………………………………………………..11

    D.  Defendant Kelly Was Never Assigned to Any Antelope Valley Station….12

    E.  The County Did Not Maintain Any Custom or Policy Which Caused Plaintiff's Alleged Injury …………………………………………………13

    F.  Defendant Kelly Did Not Act With Malice, Oppression or Reckless Disregard………………………………………………………………..14

III.  LEGAL STANDARD ON SUMMARY JUDGMENT .......................................14

IV.  DISCUSSION..................................................................................15

    A. Defendant Kelly Is Entitled to Summary Judgment on Plaintiff's Claim for Unlawful Arrest Because No Reasonable Jury Could Find an Absence of Probable Cause Based on the Undisputed Facts………………………………15

        i.  There Was Probable Cause to Arrest Plaintiff for Obstructing, Resisting and/or Battering an Officer………………………………...16

        ii.  Defendant Kelly is Shielded from Liability by the Doctrine of Qualified Immunity………………………………………………17

    B.  Plaintiff Cannot Prevail on the *Monell* Claim………………………….19

    C.  The Prayer for Punitive Damages Should Be Stricken……………………22

V.  CONCLUSION ..................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248 ...........................................14

*Ashcroft v. al-Kidd* (2011) 563 U.S. 731 ...........................................................17

*Barry v. Fowler* (9th Cir. 1990) 902 F.2d 770.......................................................16

*Berry v. Baca* (9th Cir. 2004) 379 F.3d 764 ........................................................19

*Brosseau v. Haugen* (2004) 543 U.S. 194 ...........................................................17

*Burt v. City of Santa Barbara*, No. CV 16-07340-AG (JDE), 2017 WL 6334017 ...........15

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ....................................................15

*D.C. v. Wesby* (2018) 138 S. Ct. 577..................................................................15

*Gasho v. United States* (9th Cir. 1994) 39 F.3d 1420 .............................................16

*Gibson v. County of Washoe, Nev.* (9th Cir. 2002) 290 F.3d 1175 ...........................19

*Gillette v. Delmore* (9th Cir. 1992) 979 F.2d 1342................................................20

*Harlow v. Fitzgerald* (1981)457 U.S. 800 ............................................................17

*Hunter v. Bryant* (1991) 502 U.S. 224 ................................................................17

*Jeffers v. Gomez* (9th Cir.2001) 267 F.3d 895......................................................18

*Lytle v. Carl* (9th Cir. 2004) 382 F.3d 978 ..........................................................19

*Maryland v. Pringle* (2003) 540 U.S. 366 ...........................................................16

*Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433...................................................17

*McMillian v. Monroe Cty.* (1997) 520 U.S. 781 ...................................................19

*Monell v. Dep't of Social Services of City of N.Y.*
   (1978) 436 U.S. 658.............................................. 8, 9, 20, 21, 22, 25

*Monell v. City of Oklahoma v. Tuttle*, ("*Tuttle*") (1985) 471 U.S. 808............................20

*Muehler v. Mena* (2005) 544 U.S. 93 ..................................................................18

*Mullenix v. Luna* (2015) 577 U.S. 7 ...................................................................17

*Nat'l Ass'n of Optometrists & Opticians v. Harris* (9th Cir. 2012) 682 F.3d 1144 ...........14

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
   (9th Cir. 2000) 210 F.3d 1099 ..............................................................15

*Oviatt v. Pearce* (9th Cir. 1992) 954 F.2d 1470.....................................................19

*Pembaur v. City of Cincinnati* (1986) 475 U.S. 469................................................19

*Peng v. Mei Chin Penghu* (9th Cir. 2003) 335 F.3d 970..........................................15

*Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991) ...........................................17

*Saucier v. Katz* (2001) 533 U.S. 194 ..................................................................18

*Shafer v. Cnty. of Santa Barbara* (9th Cir. 2017) 868 F.3d 1110.................................18

*Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911 .......................................................20

*Wash. Mut. Inc. v. United States*, (9th Cir. 2011)636 F.3d 1207, 1216.........................14

**DEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

## <u>TABLE OF AUTHORITIES (Continued)</u>

**Statutes**

42 U.S.C. section 1983 ...................................................................................7, 15, 22

Penal Code section 69............................................................................ 10, 11, 16, 18

Penal Code section 243(b) .................................................................... 10, 11, 16, 18

Penal Code section 836............................................................................... 12, 17

Vehicle Code section 12951(b) ...............................................................11, 16

Vehicle Code section 21453(b) .................................................................. 8

Vehicle Code section 21950(a) .................................................................. 8

**Other Authorities**

9th Cir. Model Jury Instr. 5.5 (2022).................................................................23

**Rules**

Federal Rules of Civil Procedure Rule 56(a) ............................................8, 14

DEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Joshua Assiff's ("Plaintiff") First Amended Complaint alleges two causes of action against Defendants SERGEANT TRAVIS KELLY ("Defendant Kelly") and COUNTY OF LOS ANGELES ("Defendant County"). The first Cause of Action is for violations under 42 U.S.C. section 1983 against Defendant Deputy for arresting Plaintiff without probable cause and the use of excess force in violation of the Fourth and Fourteenth Amendment to the United States Constitution. The second Cause of Act is for violations under 42 U.S.C. section 1983 against Defendant County for allegedly knowingly and intentionally maintaining an unlawful custom and practice in violation of the Fourth and Fourteenth Amendment to the United States Constitution (*Monell* claim). Defendant County moves for summary judgment on Plaintiff's second Cause of Action because Plaintiff's *Monell* claims are without merit.

The undisputed evidence unequivocally establishes that Deputy did not violate Plaintiff's constitutional rights. Moreover, Plaintiffs have not set forth any evidence of an unconstitutional custom, policy, or practice of the County of Los Angeles' Sheriff Department that was the "moving force" behind Plaintiff's alleged constitutional violation. Plaintiff's only supporting evidence in support of his *Monell* claim is a Department of Justice, Civil Rights Division study that reviewed the Los Angeles County Sheriff Department ("LASD") stations only in Antelope Valley and neither reviewed nor made any findings regarding LASD stations in Santa Clarita Valley, which was Defendant Kelly's assigned station and the relevant station in Plaintiff's case. Plaintiff cannot maintain the second Cause of Action for violations under 42 U.S.C. section 1983 that County of Los Angeles knowingly, intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendment respectively to the United States Constitution, allegedly causing Plaintiff harm.

Therefore, for each of the reasons set forth, the claim for unlawful arrest and the

7

*Monell* claim must be dismissed pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56(a).

## II.    STATEMENT OF FACTS

Plaintiff alleges that, on or about September 24, 2021, he, a 21-year-old black male, was pulled over and subsequently arrested by a male Caucasian motorcycle officer ("Defendant Kelly") for no apparent reason and without probable cause. (Fact Nos. 1, 30; First Amended Complaint, ¶¶ 9-11.) He further alleges that he was tasered, choked, pepper sprayed and beaten, all in violation of his constitutional rights. (Fact No. 31; First Amended First Amended Complaint , ¶¶ 1, 12.)

### A.    The Underlying Incident

Defendant Kelly initiated the traffic stop at the intersection of Soledad Canyon Road and Sierra Highway because he observed a black GMC Terrain (driven by Plaintiff) make a right-hand turn without stopping for the steady circular red traffic signal (violation of California *Vehicle Code* section 21453(b)) and without yielding to pedestrians in the crosswalk (violation of California *Vehicle Code* section 21950(a)). (Fact No. 2.)  The incident was captured on video by Defendant Kelly once he activated his non-department issued personal Body Worn Camera ("BWC") as he was dismounting his motorcycle at the outset of the traffic stop.  (Fact No. 3.)  From the beginning of the traffic stop, Plaintiff was argumentative with Defendant Kelly about the reason for the traffic stop, and contradicted Defendant Kelly's statement that Plaintiff made a right-hand turn without stopping for the red traffic signal.  (Fact No. 4.)  While Plaintiff was speaking, Defendant Kelly could smell a strong odor of burnt marijuana emitting from his vehicle.  (Fact No. 5.)  Due to Plaintiff's agitation, rapid speech, and odor of marijuana, Defendant Kelly believed Plaintiff may have been under the influence of marijuana.  (Fact No. 6.)

Defendant Kelly requested Plaintiff's driver's license three times in the first approximately 45 seconds of the BWC.  (Fact No. 7.)  In response, Plaintiff continued arguing with Sergeant Kelly and did not provide his driver's license.  (Fact No. 8.)  At

the third request for Plaintiff's driver's license, Sergeant Kelly warned Plaintiff to "give me your driver's license or you're going to jail."  (Fact No. 9.)  In response to the third request for Plaintiff's driver's license, Plaintiff stated "let me grab my phone," and began to reach towards the center console of the vehicle with his right hand.  (Fact No. 10.) Immediately thereafter, Defendant Kelly opened Plaintiff's driver's door and ordered Plaintiff to exit the vehicle.  (Fact No. 11.)  Plaintiff responded "no I'm not."  (Fact No. 11.)

Between approximately 45 seconds and 1 minute and 20 seconds into the BWC footage, Defendant Kelly initiated physical contact with Plaintiff's left wrist to pull him out of the vehicle, which Plaintiff physically resisted by pulling his arm away; Defendant Kelly's report on the incident indicates that he felt Plaintiff kick him during this brief struggle.  (Fact No. 12.)  Defendant Kelly then stepped back slightly from Plaintiff, radioed for backup, and yelled out for  assistance to Deputy Joshua Clark, who was in the same parking lot.  (Fact No. 13.)  Plaintiff began to video record the incident on his cellphone.  (Fact No. 14.)  Defendant Kelly then ordered Plaintiff to exit the vehicle several times, and warned about the use of pepper spray if Plaintiff failed to comply. (Fact No. 15.)  Around 1 minute and 20 seconds into the BWC footage, Sergeant Kelly deployed his pepper-spray against Plaintiff in a 1-2 second burst, and initiated second physical contact with Plaintiff to pull him out of the vehicle.  (Fact No. 16.)

At about 1 minute and 25 seconds into the BWC footage, a second Deputy (identified as Deputy Joshua Clark) can be seen attempting to aid Defendant Kelly with Plaintiff to pull him out of the vehicle.  (Fact No. 17.)  Defendant Kelly reported that he saw Plaintiff punch Deputy Clark in the chest, and he punched Plaintiff in the face with his left fist.  (Fact No. 18.)  The physical struggle between the two Deputies and Plaintiff continued for about 55 seconds while plaintiff was still seated in the driver's seat of his vehicle actively resisting.  (Fact No. 19.)

At about 2 minutes and 20 seconds, a third Deputy (Deputy Garrett Gallegos) arrived on the scene.  (Fact No. 20.)  Shortly thereafter, Deputy Gallegos deployed his

Taser to Plaintiff's back through direct contact.  (Fact No. 21.)  At about 2 minutes and 27 seconds, the three Deputies were able to bring Plaintiff out of his vehicle and to the ground next to it.  (Fact No. 22.)  Once on the ground, Plaintiff continued kicking and pulling his arms away despite commands to get onto his stomach and stop resisting. (Fact No. 23.)  At about 2 minutes and 36 seconds, Deputy Gallegos again deployed his Taser to Plaintiff in an attempt to gain compliance.  ((Fact No. 24.)

Defendant Kelly ordered Plaintiff to roll onto his stomach and place his hands behind his back, and warned that the Taser would be used again if he did not comply. (Fact No. 25.)    Plaintiff then rolled onto his stomach, stopped resisting and was placed in handcuffs.  (Fact No. 26.)    Based on the foregoing, Defendant Kelly believed there was probable cause to arrest Plaintiff for violation of California *Penal Code* sections 69 (resisting an officer) and 243(b) (battery against the person of an officer).  (Fact No. 27.)

## B.    Plaintiff's Allegations

As to Defendant Kelly, Plaintiff alleges that he "acting under color or law or color of authority, deprived Plaintiff of his rights, privileges, or immunities secured by the State and Federal Constitutions, by arresting Plaintiff without probable cause and with use of excess force in violation of the Fourth and Fourteenth Amendment to the United States Constitution." (Fact No. 32; First Amended Complaint, ¶ 15.)

As to the County, Plaintiff alleges in a conclusory manner that the "County knowingly and intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages… include[ing], without limitation, the employment of motorcycle and other officers to make unnecessary and unwarranted traffic stops to bully and harass African American drivers. This would include among other things, the initiation of frivolous traffic stops, arrest without probably cause, and the use of excessive force to effectuate the arrest." (Fact No. 40; First Amended Complaint, ¶ 21.)  Plaintiff cites to a 2013 Department of Justice, Civil Rights Division's review of LASD's Antelope Valley stations which eventually led to a legal settlement with federal authorities. (Fact No. 41; First Amended Complaint, ¶ 21.)  Plaintiff alleges

10

the Department of Justice's findings regarding racial profiling and discriminatory traffic stops in Antelope Valley are persistent and ongoing recognized by the Department of Justice, Civil Rights Division. (Fact No. 41; First Amended Complaint, ¶ 21.) However, the legal settlement and findings do not mention nor provide findings as to LASD Santa Clarita Valley station. (Fact No. 42.)

### C.    Defendant Kelly Had Probable Cause to Arrest Plaintiff on September 24, 2021

As discussed above, Defendant Kelly believed there was probable cause to arrest Plaintiff for violation of California Penal Code sections 69 (resisting an officer) and 243(b) (battery against the person of an officer).    (Fact No. 27.)        Moreover, on September 25, 2021, a judicial officer of the State of California found that there was probable cause for Plaintiff's subject arrest for California *Penal Code* sections 69 (resisting an officer) and 243(b) (battery against the person of an officer).  (Fact No. 28.)

Finally, based upon his education, training, experience, and review of materials to date, Defendants' disclosed expert, Michael Gray, opines that there was probable cause for Plaintiff's arrests.  (Fact No. 29.)  Defendant Kelly's BWC footage indicates that Plaintiff both verbally and physically resisted Defendant Kelly's detention; specifically, Plaintiff verbally argued with Sergeant Kelly regarding the legality of the traffic stop, he declined to provide his driver's license when requested (three times) (a violation of California Vehicle Code 12951(b), a misdemeanor) and, even after he was warned that failure to do so would result in an arrest, he refused to exit the vehicle despite being ordered to do so several times.  (Fact No. 33.)  Citizens are aware (California DMV Handbook and CVC 12951(b)) that when stopped by law enforcement they must produce a driver's license, proof of insurance and vehicle registration and if told to exit a vehicle they must comply.  (Fact No. 34.)  Citizens are generally aware they do have a First Amendment right to record interactions with law enforcement but do not have a right to interfere with the officer's lawful duties or commands.  (Fact No. 34.)

Plaintiff was warned that failure to do so would result in him being pepper

sprayed, and he physically resisted and fought Defendant Kelly's attempts to remove him from his vehicle to effectuate an arrest a violation of Penal Code Section 148.  (Fact No. 35.)  Collectively, this series of failures to comply and the escalation from passive to aggressive resistance on the Plaintiff's behalf provided Defendant Kelly with the probable cause to lawfully arrest Plaintiff pursuant to California *Penal Code* section 836—which allows a peace officer to arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence.  (Fact No. 36.)

Based on Plaintiff's aforementioned conduct, Defendant Kelly's conduct was objectively reasonable under the circumstances and is compliant with law enforcement training, policies, and procedures.   (Fact No. 37.)    Moreover, Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  (Fact No. 38.)  Defendant Kelly's conduct was not excessive force and, instead, was an appropriate degree of force, that is objectively reasonable, in light of Plaintiff's continued resistance and failure to comply with Defendant Kelly's reasonable orders.  (Fact No. 39.)

### D.    Defendant Kelly Was Never Assigned to Any Antelope Valley Station

On or about September 24, 2021, Defendant Kelly was assigned and employed with LASD Santa Clarita Valley station. (Fact No. 43.) At no point has Defendant Kelly been assigned to nor worked with LASD Antelope Valley stations, including LASD Lancaster and Palmdale stations, i.e. the stations reviewed and involved in the legal settlement with the Department of Justice. (Fact No. 43.) Moreover, the DOJ's failure to include, mention, or review LASD Santa Clarita Valley station in their study in fact suggests no pervasive, continuous, or known unconstitutional policies or practices existed or allowed for Plaintiff's alleged constitutional violation. (Fact No. 44.)

/ / /

/ / /

**E.    The County Did Not Maintain Any Custom or Policy Which Caused Plaintiff's Alleged Injury**

Plaintiff has failed to provide any evidence or identify any specific policies or customs that LASD Santa Clarita Valley, Deputy's assigned station which had jurisdiction over Defendant Kelly, held or allowed which caused Plaintiff's alleged constitutional violation.  (Fact Nos. 45, 74.)  The County neither promulgates, maintains, nor enforces customs or policies that allowed for nor caused Plaintiff injury.  (Fact No. 46.)  To the contrary, Defendants' evidence shows that: 1) the County and the LASD maintained and strictly enforced policies and procedures regarding the use of force during traffic stop, (Fact No. 59); 2) the County, and the LASD, continue to promote, train, and enforce their policies and procedures regarding lawful and professional engagement with the public, (Fact Nos. 37, 60-62); 3) Defendant Kelly received all mandatory LASD training concerning how to conduct traffic stops and how to appropriately respond to both passive and active resistance from motorists while conducting traffic stops, (Fact No. 61); 5) Defendant Kelly also received LASD training concerning de-escalation procedures to be used during traffic stops, (Fact No. 62); and 6) the County's and LASD's responses to any prior personnel incidents were appropriately, timely and adequately addressed, (Fact Nos. 63-67).

Specifically, the County of Los Angeles and its Sheriff's Department take steps to ensure that its deputies act lawfully and do not violate civil rights when enforcing the law.  (Fact Nos. 47-57.)  On or about September 24, 2021, the County and LASD maintained and strictly enforced policies and procedures regarding traffic stops, as well as the use of force, including de-escalation procedures.  (Fact Nos. 59, 60.)  During his employment with LASD, Defendant Kelly received all required LASD training concerning how to conduct traffic stops and how to appropriately respond to passive and active resistance from motorists while conducting traffic stops.  (Fact No. 61.)  Further, Defendant Kelly received LASD training concerning de-escalation procedures that may be used while conducting these traffic stops.  (Fact No. 62.)

13

As such, there is no evidence to indicate that the LASD has a custom or practice of violating the civil rights of citizens.  (Fact No. 58.)

### F.      Defendant Kelly Did Not Act With Malice, Oppression or Reckless Disregard

Defendant Kelly did not intend to use unreasonable or excessive force against Plaintiff at any point during the incident.  (Fact No. 68.)  At no point during his encounter with Plaintiff did Defendant Kelly ever retaliate against him for anything he said or did to Defendant Kelly or other LASD deputies, nor did Defendant Kelly ever retaliate against Plaintiff for recording the incident.  (Fact No. 69.)  At no point during Defendant Kelly's encounter with Plaintiff were his actions due to racial animus or discriminatory motive.  (Fact No. 70.)  Nor at any point during the encounter with Plaintiff did Defendant Kelly witness any other LASD deputy act out of racial animus or discriminatory motive, or otherwise conduct themselves unlawfully or unreasonably. (Fact No. 71.)  Defendant Kelly did not racially profile Plaintiff in initiating the traffic stop.  (Fact No. 72.)  Furthermore, at no point during his interaction with Plaintiff did Defendant Kelly act with malice, oppression or in reckless disregard of Plaintiff's rights, nor did Defendant Kelly observe any other deputy act in such manner toward Plaintiff. (Fact No. 73.)

## III.   <u>LEGAL STANDARD ON SUMMARY JUDGMENT</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine

14

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party meets its initial burden of production by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show [ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp.*, 477 U.S. at 322). If no genuine issue of material fact exists, then summary judgment should be granted. *Celotex Corp.*, 477 U.S. at 323-24.

## IV.  DISCUSSION

### A. Defendant Kelly Is Entitled to Summary Judgment On Plaintiff's Claim For Unlawful Arrest Because No Reasonable Jury Could Find An Absence Of Probable Cause Based On The Undisputed Facts

Defendant Kelly is entitled to summary judgment on Plaintiff's first cause of action under 42 U.S.C. § 1983 for unlawful arrest because no reasonable juror could find the absence of probable cause to arrest Plaintiff for resisting/obstructing and battering Defendant Kelly.

Probable cause to arrest is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Burt v. City of Santa Barbara*, No. CV 16-07340-AG (JDE), 2017 WL 6334017, at *4 (C.D. Cal. Oct. 2, 2017), report and recommendation adopted, No. CV 16-07340-AG (JDE), 2017 WL 6343555 (C.D. Cal. Nov. 30, 2017), aff'd, 745 F. App'x 680 (9th Cir. 2018). Where the only disputes involve what inferences properly may be drawn from historical material facts, it is appropriate for the court to decide whether probable cause existed at the time of the arrest. *Peng v. Mei Chin Penghu* (9th Cir. 2003) 335 F.3d 970, 979–80.

Probable cause to arrest is not a high bar. *D.C. v. Wesby* (2018) 138 S. Ct. 577. To

15

determine whether an officer had probable cause to arrest an individual, the courts examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to "probable cause." *Maryland v. Pringle* (2003) 540 U.S. 366, 371. "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed ... an offense." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir.1990) (internal quotation marks omitted). The standard of proof for probable cause is *less* than proof beyond a reasonable doubt; *less* than a preponderance of the evidence; and *less* than a prima facie showing. *Id.* "Because probable cause must be evaluated from the perspective of prudent men, not legal technicians, an officer need not have probable cause for every element of the offense." *Gasho v. United States* (9th Cir. 1994) 39 F.3d 1420, 1428 (Internal citations and quotations omitted).

### i. *There Was Probable Cause To Arrest Plaintiff for Obstructing, Resisting and/or Battering an Officer*

The undisputed historical material facts known to Defendant Kelly at the time of Plaintiff's arrest were sufficient to warrant any prudent person to believe that Plaintiff violated California *Penal Code* sections 69 (obstructing or resisting an officer) and 243(b) (battery against an officer).

During the subject incident, Plaintiff both verbally and physically resisted Defendant Kelly's detention. (Fact Nos. 33-35.) Specifically, Plaintiff verbally argued with Defendant Kelly regarding the legality of the traffic stop, he declined to provide his driver's license when requested (three times) (a violation of California *Vehicle Code* 12951(b), a misdemeanor) and, even after he was warned that failure to do so would result in an arrest. (Fact Nos. 33-35.) Plaintiff also declined to exit the vehicle despite being ordered to do so several times, even after he was warned that failure to do so would result in him being pepper sprayed. (Fact Nos. 33-35.) Finally, Plaintiff physically resisted and fought Defendant Kelly's attempts to remove him from his

16

vehicle to effectuate a detention.  (Fact Nos. 33-35.)

Collectively, this series of failures by Plaintiff to comply with Defendant Kelly's commands and the escalation from passive to active (and aggressive) resistance on Plaintiff's behalf provided Defendant Kelly with the probable cause to lawfully arrest Plaintiff pursuant to California *Penal Code* section 836—which allows a peace officer to arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested has committed a felony.  (Fact No. 36.)

### ii. *Defendant Kelly Is Shielded From Liability By The Doctrine Of Qualified Immunity*

Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages from mistakes unless their conduct violates "clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1981); *Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991).  Qualified immunity gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant* (1991) 502 U.S. 224, 229.  Once the official pleads qualified immunity, the burden is on the plaintiff to prove two elements: (1) that a constitutional right was violated; and (2) that the right was clearly established at the time of the alleged misconduct.  See *Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433, 440.

Under the second prong of the qualified immunity analysis, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna* (2015) 577 U.S. 7, 12 (internal quotation marks omitted).  Such clarity can only be established by "existing precedent" that has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd* (2011) 563 U.S. 731, 741. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen* (2004) 543 U.S. 194, 198.

As such, "officials can have reasonable, but mistaken, beliefs . . . and in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz* (2001) 533 U.S. 194, 205. Particularly, in tense situations, officials are afforded "broad discretion" and "immunity even when [they] make mistakes." *Jeffers v. Gomez* (9th Cir.2001) 267 F.3d 895, 909. Moreover, "[i]t is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara* (9th Cir. 2017) 868 F.3d 1110, 1118.

Defendant Kelly is entitled to qualified immunity as to Plaintiff's claim for unlawful arrest. As discussed above, probable cause existed to arrest Plaintiff. It was reasonable for Defendant Kelly to believe that the initial stop of Plaintiff was justified; as such, it was reasonable for him to use at least some degree of coercion and exercise some degree of control over Plaintiff's conduct. See *Muehler v. Mena* (2005) 544 U.S. 93, 93 ("Inherent in [the] authorization to detain is the authority to use reasonable force to effectuate the detention."). Further, based on Defendant Kelly's observations at the scene, Plaintiff responded to his reasonable orders by resisting and disobeying the lawful commands.

Moreover, Defendant Kelly both experienced and observed not only Plaintiff's physical resistance and obstruction, but also Plaintiff's battery on both himself and Deputy Clark. To wit: Defendant Kelly felt Plaintiff pull his left wrist away from Defendant Kelly's grasp and also felt Plaintiff kick Defendant Kelly during the initial physical contact; Defendant Kelly also observed Plaintiff struggle with deputies for a long time, and punch Deputy Clark during the second physical contact.

As such, Defendant Kelly is entitled to qualified immunity as there is no set of facts that would demonstrate that his arrest of Plaintiff on September 24, 2021 under California *Penal Code* sections 69 (resisting an officer) and 243(b) (battery against the person of an officer) was without probable cause under the totality of circumstances.

/ / /

/ / /

**DEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

### B. Plaintiff Cannot Prevail on the *Monell* Claim

In *Monell v. Dep't of Social Services of City of N.Y.* (1978) 436 U.S. 658, the Supreme Court held, "the doctrine of respondeat superior is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Id.* at 663; *McMillian v. Monroe Cty.* (1997) 520 U.S. 781. Therefore, regardless of whether their deputies "violated" plaintiff's civil rights, the County cannot be held vicariously liable under 42 U.S.C. § 1983 as a matter of law. *Monell*, 436 U.S. at 693. The Supreme Court explained, "municipal liability under § 1983 attaches where – and only where – a *deliberate choice to follow a course of action* is made from among various alternatives by the official(s) responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati* (1986) 475 U.S. 469, 483-84. As such, liability under *Monell* may attach when an employee acts pursuant to an expressly adopted official policy. *Lytle v. Carl* (9th Cir. 2004) 382 F.3d 978, 981; see also *Gibson v. County of Washoe, Nev.* (9th Cir. 2002) 290 F.3d 1175, 1185, cert. denied, 537 U.S. 1106 (2003).

Therefore, to prevail on their section 1983 claims, Plaintiff bears the burden of proving each of the following elements: (1) Plaintiff possessed a constitutional right of which the Plaintiff was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the Plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Here, the County, and its departments, cannot be held liable under 42 U.S.C. § 1983 because there is no evidence establishing that County maintained a custom, practice, or policy that was the moving force behind the alleged violations of Plaintiff's constitutional rights.

It is a plaintiff's burden to show that a municipality instituted and maintains a policy that caused him to suffer a violation. *Berry v. Baca* (9th Cir. 2004) 379 F.3d 764, 767. To meet that burden, plaintiff must prove "the existence of a widespread practice that…is so permanent and well settled as to constitute a 'custom or usage' with the force

of law." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). However, liability for an improper custom may not be predicated on isolated or sporadic incidents and the custom must be so persistent and widespread that it constitutes a permanent and well-settled policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Because Plaintiff cannot identify a single unconstitutional policy, practice, custom or usage the of County nor of the relevant LASD that was the cause in fact of any deprivation of Plaintiff's constitutional rights, Plaintiff's *Monell* claim against County fails.

On or about September 24, 2021, the County and LASD maintained and strictly enforced policies and procedures regarding traffic stops, as well as the use of force, including de-escalation procedures. (Fact Nos. 58-60.) Defendant Kelly received all required LASD training concerning how to conduct traffic stops and how to appropriately respond to passive and active resistance from motorists while conducting traffic stops. (Fact Nos. 61-62.) Further, Deputy received LASD training concerning de-escalation procedures that may be used while conducting these traffic stops. (Fact Nos. 61-62.)

Evidence of a single alleged constitutional violation cannot establish a custom, policy, or practice under *Monell*. *City of Oklahoma v. Tuttle*, ("*Tuttle*") (1985) 471 U.S. 808, 823-24 (plurality). In *Tuttle*, the Court stated: "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of an incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker. Otherwise, the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation."

Contrary to Plaintiff's allegations that the County knowingly and intentionally

promulgated, maintained, applied, enforced, and continued policies, customs, practices, and usages in violation Plaintiff's constitutional rights, the County did not maintain any policies, practices or customs of racial profiling or discrimination, conducting unreasonable searches and seizures, using excessive force, permitting unlawful arrests, or retaliating.  (Fact Nos. 47-57.)  Rather, the County continues to promote, train, and enforce their policies and procedures regarding lawful and professional engagement with the public. (Fact Nos. 58-62.) Plaintiff's *Monell* claims against County fail because Defendant Kelly's personnel history does not portray behavior or conduct that would indicate Deputy knowingly or intentionally applies or enforces policies or procedures that violate individuals' constitutional rights. (Fact No. 63.)   Moreover, County successfully and appropriately assessed and responded to all matters in Deputy's personnel history. (Fact Nos. 64-67.)  County of Los Angeles or LASD's responses to any prior personnel incidents involving Deputy appropriately, timely, and adequately addressed which proves no existing, unconstitutional municipal policy or practice existed that would support a *Monell* claim. (Fact Nos. 64-67.)

Plaintiff's *Monell* claim against County and LASD also fails because Plaintiff's only supporting evidence in support of his *Monell* claim is the Department of Justice, Civil Rights Division's study that only reviewed LASD Antelope Valley stations. (Fact Nos. 40, 41.)   Plaintiff asserts this *Monell* claim based on LASD's history of racial profiling and discriminatory traffic stops in Antelope Valley stations and only cites to the 2013 Department of Justice, Civil Rights Division's review of LASD's Antelope Valley stations that eventually led to a legal settlement with federal authorities. (Fact Nos. 40, 41; *First Amended Complaint, Exhibit X, ¶ 21 at p. 6.)*  The 2013 DOJ's study and findings neither reviewed nor made any findings regarding LASD stations in Santa Clarita Valley, the relevant LASD station in this matter.  *(Fact No. 42; First Amended Complaint, Exhibit X, ¶ 21 at p. 6.)*

On the date of the subject incident, Defendant Kelly was assigned and employed with LASD Santa Clarita Valley station. (Fact No. 43.) At no point has Defendant Kelly

been assigned to nor worked with LASD Antelope Valley stations, including LASD Lancaster and Palmdale stations, i.e. the stations reviewed and involved in the legal settlement with the Department of Justice. (Fact No. 43) Moreover, the DOJ's failure to include, mention, or review LASD Santa Clarita Valley station in their study in fact suggests no pervasive, continuous, or known unconstitutional policies or practices existed or allowed for Plaintiff's alleged constitutional violation. (Fact No. 44.) Further, Plaintiff has failed to provide any evidence or identify any specific policies or customs that LASD Santa Clarita Valley, Deputy's assigned station which had jurisdiction over Defendant Kelly, held or allowed which caused Plaintiff's alleged constitutional violation.  (Fact No. 45.)

Therefore, the County of Los Angeles cannot be held liable for any alleged misconduct on their behalf. As such, Defendant County of Los Angeles is entitled to summary judgment on Plaintiff's second cause of action for violations pursuant to 42 U.S.C. § 1983.

## C. The Prayer For Punitive Damages Should Be Stricken

Plaintiff's FAC sought punitive damages claiming that the deputies' actions were "wanton, willful, deliberate, and in conscious disregard of the rights and feelings of Plaintiff, was undertaken with the intent to cause Plaintiff injury and constitutes malice, actual, express and implied."  (FAC, ¶¶ 18, 25.)   This Court struck Plaintiff's prayer for punitive damages against the County in its February 16, 2023 Order.  (See Docket #35.)

Moreover, the uncontroverted evidence does not support a finding that the conduct of Defendant Kelly warrants punitive damages. In this regard, the Ninth Circuit Model Jury Instructions explain:

> You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of

the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff..

9th Cir. Model Jury Instr. 5.5 (2022).

There is no evidence that Defendant Kelly acted with malice, oppression or in reckless disregard of Plaintiff's rights.  Rather, the evidence demonstrates that he acted reasonably and within the confines of the Constitution.  As detailed above, Defendant Kelly acted reasonably based on her observations of a fast-evolving situation and considering Plaintiff's resistive and aggressive actions. Moreover, Plaintiff can offer no evidence that Defendant Kelly maliciously retaliated against them or acted deliberately to deny him of his rights.  To the contrary, Defendant Kelly acted reasonably in acting to gain control of a noncompliant Plaintiff, who kicked Defendant Kelly and punched his colleague, Deputy Clark.  There is no evidence that Defendant Kelly deployed anything beyond the force required to overcome Plaintiff's resistance and noncompliance, nor is there any evidence that he acted maliciously.

Accordingly, based on all of these facts, Plaintiff is not entitled to punitive damages against Defendant Kelly.

/ / /

/ / /

/ / /

23

## V.    <u>CONCLUSION</u>

Plaintiffs have not provided sufficient evidence nor identified any policies or procedures capable of supporting *Monell* liability against the County of Los Angeles. When the facts and evidence of this case are viewed in a light most favorable to the Plaintiff, Defendant County is free of *Monell* liability. As such, Defendant County is entitled to summary judgment on Plaintiff's second cause of action for violations pursuant to 42 U.S.C. § 1983.

Dated: May 24, 2023                    KJAR, MCKENNA & STOCKALPER, LLP


By: _____
PATRICK E. STOCKALPER
MOLSHREE GUPTA
Attorneys for Defendants,
COUNTY OF LOS ANGELES and DEPUTY
TRAVIS KELLY

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On May 24, 2023, I served the foregoing document described as **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

**By Mail**  I caused such envelope(s) to be deposited in the mail at El Segundo, California.  The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX    **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List.  My email address is mnixon@kmslegal.com.

**By Personal Service** I caused such document to be Personally Served on the parties listed in the Service List.

XX    **State**  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2023, at El Segundo, California.

_____
Maria Nixon

25

## SERVICE LIST

### Assiff, Joshua vs. County of Los Angeles, et al.
Central District- Case No.: 2:22-cv-05367 RGK(MAAx)

| | |
|---|---|
| Thomas M. Ferlauto, Esq.<br>Law Office of Thomas M. Ferlauto, APC<br>25201 Paseo de Alicia, Ste. 270<br>Laguna Hills, CA 92653<br>EM: tmf@lawofficetmf.com | Attorney for Plaintiff,<br>**JOSHUA ASSIFF** |

**DEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**