1  PATRICK E. STOCKALPER, SBN 156954
   MOLSHREE GUPTA, SBN 275101
2  KJAR, MCKENNA & STOCKALPER, LLP
   841 Apollo Street, Suite 100
3  El Segundo, California 90245
   Telephone (424) 217-3026
4  Facsimile (424) 367-0400
   pstockalper@kmslegal.com
5  mgupta@kmslegal.com

6  Attorneys for Defendants,
   **COUNTY OF LOS ANGELES and DEPUTY TRAVIS KELLY**
7  *(Defendants is exempt from filing fees pursuant to Government Code § 6103)*

8

9               **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11 | JOSHUA ASSIFF,                          | **Case No.: 2:22-cv-05367 RGK(MAAx)**
12 |
13 |               Plaintiffs,               | **DECLARATION OF MICHAEL B. GRAY**
14 |         v.                              |
15 |                                         | *(Filed Concurrently with Defendants' Motion for Partial Summary Judgment)*
   | COUNTY OF LOS ANGELES;                   |
16 | SHERIFF DEPUTY BADGE                     |
17 | NUMBER 404532; And DOES 1               | Date:       June 26, 2023
   | through 10,                              | Time:       9:00 a.m.
18 |                                          | Crtrm:      850
19 |               Defendants.                |
20 |                                          | Action Filed: August 3, 2022
   |                                          | Pretrial Conference: July 10, 2023
21 |                                          | Trial Date: July 25, 2023
22 |                                          |
23 |                                          | Assigned to:
   |                                          | Hon. R. Gary Klausner, District Judge
24 |                                          | Courtroom 850
25 |                                          |
   |                                          | All Discovery Matters Referred to:
26 |                                          | Hon. Maria A. Audero, District Judge
27
28

1

Declaration of Michael B. Gray

**DECLARATION OF MICHAEL B. GRAY**

I, MICHAEL B. GRAY, declare:

1.     I am a retired deputy sheriff (effective 02-05-2001), attaining the rank of Deputy Sheriff/Detective for the County of Los Angeles, California, Sheriff's Department. I started in my career as a deputy sheriff in 1984 and worked in that field until retirement. I held the rank of Deputy Sheriff for seventeen years. The assignments that I have worked were Custody, Patrol Deputy, Traffic Enforcement Deputy, Field Training Officer (FTO), Station Detective, and Detective Division. For eleven (11) years of my active law enforcement career I was a detective investigating property crimes such as burglary and vehicle theft and crimes against persons including but not limited to; assaults, sexual assaults, child abuse, and robbery. I have personally written over 300 search warrants and participated in the service and execution of hundreds more. As a detective, I have conducted more than two thousand investigations covering almost every area of law enforcement and have conducted interviews of witnesses, victims, and suspects in the thousands. I have been a Field Training Officer, a Trainer of new Detectives and a classroom trainer for the Department and for the Training Center and have trained over one thousand – seven hundred (1,700) California law enforcement personnel in various aspects of investigations. I am a Trainer of Trainers, personally instructing over one hundred-seventy (170) California law enforcement trainers in the Commission on POST "Master Instructor Development Program" and over four hundred (400) California law enforcement trainers in the Commission on POST "Institute of Criminal Investigations Instructor Training Course." Many of the programs and training have a component of interview and interrogation and I am very experienced in *Monell* liability claims.

    a. In 2016, I performed civil rights work for the Federal Department of Justice – Civil Rights Division, as it relates to Use of Force training in an academy, Field Training Officer program and In-Service training, during a DOJ investigation of a major mid-west city police department and have produced reports on

2

1      observations and findings used in a final report to and by the Federal Department

2      of Justice.

3   b.  Since 2014, I have served as a police practices expert for both plaintiff and

4      defense cases and as a use of force / police practices expert witness I have been

5      retained on a range of cases including officer involved shootings, alleged

6      excessive force, patrol procedures, jail deaths and criminal investigations. I

7      have testified in State courts as an expert on investigations and narcotics cases

8      and in Federal courts as an expert witness in police practices.

9   c.  From 2019 – 2021 I served on the San Diego County Citizens Law

10     Enforcement Review Board (CLERB) which has jurisdiction over San Diego

11     County Peace Officers to conduct impartial and independent reviews and

12     render decisions on all manner of citizen complaints including jail deaths and

13     Officer Involved Shootings, along with other complaints on Use of Force. I

14     have reviewed policy and procedures in the County of San Diego making

15     policy change recommendations to the San Diego County Sheriff's

16     Department.

17  d.  During my time as a patrol deputy for the LASD, I was assigned to a traffic

18     unit, enforcing traffic laws and investigating traffic collisions. During my time

19     working this assignment I wrote over 3,500 traffic citations for a variety of

20     violations of the California Vehicle Code.

21  e.  Currently I am the Executive Director of the Intergovernmental Training and

22     Develop Center (ITDC) in San Diego, CA (a government training center,

23     training over 4,000 law enforcement personnel annually in over 75 California

24     POST certified courses). As the Executive Director of the ITDC, I am active as

25     an executive, administrator, instructor, developer, author and consultant and

26     have responsibility for the oversight and administration of the ITDC including

27     the oversight of over three hundred fifty (350) instructors who teach in 77

28     different POST certified courses that the ITDC operates. I oversee over fifteen

Declaration of Michael B. Gray

1    Commission on POST Institute of Criminal Investigation (ICI) courses, in

2    which over two thousand (2,000) law enforcement investigators are trained

3    each year, all of which discuss in some form or fashion the laws of arrest and

4    interview and interrogation with current updated laws.

5    2.    A true and correct copy of my curriculum vitae, which more completely sets

6    forth my education, training, experience, and qualifications, is attached to this Declaration

7    as **Exhibit C**.

8    3.    I was retained by the law firm of Kjar, McKenna & Stockalper, LLP for the

9    purpose of providing my opinions as to whether the defendants were the legal cause of

10    Plaintiff's injuries.

11    4.    In forming my opinions set forth in this Declaration, I reviewed and relied on

12    the following documents:

13    a.  First Amended Complaint for Damages;

14    b.    Plaintiff's response to RFA#1 by Def COLA;

15    c.    Plaintiff's response to RFA #2 by Def Travis Kelly;

16    d.    Plaintiff's response to RFA #2 by Sgt Travis Kelly;

17    e.    Plaintiff's response to SROGS #1 by Def. COLA;

18    f.    Plaintiff's response to SROGS #1 by Def Travis Kelly;

19    g.    Medical treatment report by Payam Yermian, D.C.;

20    h.    Body worn camera video dated 09/24/2021;

21    i.    Document production from County of LA, numbered page

22    COUNTY000001 to COUNTY0000119 which includes;

23    j.    Arrested person's children form;

24    k.    Arrestee Medical Screening form;

25    l.    Bail form;

26    m.    Booking and property record form;

27    n.    CLETS printout;

28    o.    LA County Consolidated Criminal History Reporting System    printout;

4

1    p.    Henry Mayo Newhall Hospital medical clearance form;

2    q.    LASD Preliminary field medical screening;

3    r.    Probable Cause Determination (Declaration);

4    s.    Release of vehicle hold;

5    t.    Assiff, Joshua release form;

6    u.    LASD Station Jail inmate classification questionnaire;

7    v.    CHP 180 vehicle report;

8    w.    Registration printouts for a 2021 GMC SUV;

9    x.    LASD voluntary delayed release form;

10    y.    LASD Crime Analysis Supplemental form;

11    z.    LASD Internal Affairs Bureau – Mandatory Notification form;

12    aa.    Deputy daily worksheet, 09/24/2021, Unit 65 SCT, Gallegos, Garrett;

13    bb.    Deputy daily worksheet, 09/24/2021, Unit 60M4 SCT, Clark,

14    Joshua;

15    cc.    Deputy daily worksheet, 09/24/2021, Unit 60MS, Kelly, Travis;

16    dd.    County of Los Angeles Sheriff's Department Incident report 09/24/2021,

17    URN#921-13126-0628-058;

18    ee.    LASD Santa Clarita Station AM Shift In-Service;

19    ff.    County of Los Angeles Sheriff's Department Supplemental report

20    09/24/2021, URN#921-13126-0628-058 by Clark, J.;

21    gg.    County of Los Angeles Sheriff's Department Supplemental report

22    09/24/2021, URN#921-13126-0628-058 by Deputy Cohen;

23    hh.    County of Los Angeles Sheriff's Department Supplemental report

24    09/24/2021, URN#921-13126-0628-058 by Deputy Gallegos;

25    ii.    County of Los Angeles Sheriff's Department Supplemental report

26    09/24/2021, URN#921-13126-0628-058 by Detective R.  De La Maza;

27    jj.    Taser evidence report, 09/24/2021;

28    kk.    Unit history report for shift date 09/24/2021, Unit 60MS;

Declaration of Michael B. Gray

1    ll.    LASD Watch Commander's Use of Force Review and Incident Analysis;

2    mm.   LASD Supervisor's Report on Use of Force;

3    nn.    LASD Unit Commander's Use of Force Review and Incident Analysis;

4    oo.    North Patrol Division Force Review Checklist.

5

6    5.    Based on my review and analysis of the record indicated above, I understand

7    that this case involves the following facts:

8    a.  Plaintiff alleges that, on or about September 24, 2021, he, a 21-year-old (black

9        or mixed-race male), was pulled over and subsequently arrested by a male

10       Caucasian motorcycle officer for no apparent reason and without probable

11       cause.  He further alleges that he was tasered, choked, pepper sprayed and

12       beaten, all in violation of his constitutional rights.

13   b.  The subject Deputy ("Sergeant Kelly") initiated the traffic stop at the

14       intersection of Soledad Canyon Road and Sierra Highway because he observed

15       a black GMC Terrain (driven by Plaintiff Assif) make a right-hand turn without

16       stopping for the steady circular red traffic signal (violation of California *Vehicle*

17       *Code* section 21453(b)) and without yielding to pedestrians in the crosswalk

18       (violation of California *Vehicle Code* section 21950(a)).

19   c.  The incident was captured on video by Sergeant Kelly once he activated his

20       non-department issued personal Body Worn Camera ("BWC") as he was

21       dismounting his motorcycle at the outset of the traffic stop.

22   d.  From the beginning of the traffic stop, Plaintiff was argumentative with

23       Sergeant Kelly about the reason for the traffic stop, and contradicted Sergeant

24       Kelly's statement that Plaintiff made a right-hand turn without stopping for

25       the red traffic signal.

26   e.  Sergeant Kelly requested Plaintiff's driver's license three times in the first

27       approximately 45 seconds of the BWC.  In response, Plaintiff continued

28       arguing with Sergeant Kelly and did not provide his driver's license.  At the

Declaration of Michael B. Gray

1    third request for Plaintiff's driver's license, Sergeant Kelly warned Plaintiff to

2    "give me your driver's license or you're going to jail."

3    f.  In response to the third request for Plaintiff's driver's license, Plaintiff stated

4    "let me grab my phone," and began to reach towards the center console of the

5    vehicle with his right hand.  Immediately thereafter, Sergeant Kelly opened

6    Plaintiff's driver's door and ordered Plaintiff to exit the vehicle.  Plaintiff

7    responded "no I'm not."

8    g.  Sergeant Kelly made physical contact with Plaintiff's left wrist for a brief

9    moment to pull him out of the vehicle, but Plaintiff pulled his left arm away.

10   Sergeant Kelly's report on the incident indicates that he felt Plaintiff kick him

11   during this brief struggle.

12   h.  Sergeant Kelly stepped back slightly from Plaintiff and radioed for backup; he

13   also yelled out "Josh," presumably to another Deputy in the same parking lot.

14   Plaintiff began to video record the incident on his cellphone.

15   i.  Sergeant Kelly again ordered Plaintiff to exit his vehicle multiple times, and

16   warned Plaintiff that he would be pepper sprayed for failing to comply.

17   Plaintiff continues to video record Sergeant Kelly and continues his refusal to

18   comply with Kelly's verbal commands.  Plaintiff and Sergeant Kelly

19   continued to verbally argue for a few seconds after Sergeant Kelly warned

20   about the use of pepper spray, and Plaintiff demanded a supervisor respond to

21   the scene.

22   j.  Around 1 minute and 20 seconds into the BWC footage, Sergeant Kelly

23   deployed his pepper-spray against Plaintiff in a 1-2 second burst, and initiated

24   second physical contact with Plaintiff to pull him out of the vehicle.  As they

25   struggled, Sergeant Kelly radioed that he was involved in a fight.

26   k.  At about 1 minute and 25 seconds into the BWC footage, a second Deputy

27   (identified as Deputy Joshua Clark) can be seen attempting to aid Sergeant

28   Kelly with Plaintiff to pull him out of the vehicle.  Sergeant Kelly reported

7

1  that he saw Plaintiff Assiff punch Deputy Clark in the chest, and punched

2  Plaintiff in the face with his left fist.  The physical struggle between the two

3  Deputies and Plaintiff continued for about 55 seconds.

4  l.  At about 2 minutes and 20 seconds, a third Deputy (Deputy Garrett Gallegos)

5  arrived on the scene.  At this time, Sergeant Kelly and Deputy Clark were

6  continuing to struggle with Plaintiff who was still seated in the driver's seat of

7  his vehicle actively resisting.  Shortly thereafter, Deputy Gallegos deployed

8  his Taser to Plaintiff's back through direct contact.

9  m.  At about 2 minutes and 27 seconds, the three Deputies were able to bring

10  Plaintiff out of his vehicle and to the ground next to it.  Once on the ground,

11  Plaintiff continued kicking and pulling his arms away despite commands to

12  get onto his stomach and stop resisting.

13  n.  Sergeant Kelly said that he punched Plaintiff twice in the stomach to get him

14  to comply.  At about 2 minutes and 36 seconds, Deputy Gallegos again

15  deployed his Taser to Plaintiff in an attempt to gain compliance.

16  o.  Sergeant Kelly ordered Plaintiff to roll onto his stomach and place his hands

17  behind his back, and warned that the Taser would be used again if he did not

18  comply.  Plaintiff then rolled onto his stomach, stopped resisting and was

19  placed in handcuffs.

20  p.  On September 25, 2021, a judicial officer of the State of California found that

21  there was probable cause for Plaintiff's subject arrest for California *Penal*

22  *Code* sections 69 (resisting an officer) and 243(b) (battery against the person

23  of an officer). (See **Exhibits "D", "D1", and "D2"**.)

24  q.  As to Sergeant Kelly, Plaintiff alleges that he "acting under color or law or

25  color of authority, deprived Plaintiff of his rights, privileges, or immunities

26  secured by the State and Federal Constitutions, by arresting Plaintiff without

27  probable cause and with use of excess force in violation of the Fourth and

28

8

1    Fourteenth Amendment to the United States Constitution." (First Amended

2    Complaint, ¶ 15.)

3    r.    As to the County, Plaintiff alleges in a conclusory manner that the "County

4    knowingly and intentionally promulgated, maintained, applied, enforced, and

5    continued policies, customs, practices and usages… include[ing], without

6    limitation, the employment of motorcycle and other officers to make

7    unnecessary and unwarranted traffic stops to bully and harass African

8    American drivers. This would include among other things, the initiation of

9    frivolous traffic stops, arrest without probably cause, and the use of excessive

10   force to effectuate the arrest."

11   6.    It is my expert opinion, based on my education, training, experience, and review

12   of materials to date, the force used during the incident was reasonable and appropriate

13   under the circumstances; there was probable cause for Plaintiff's arrests; the County of

14   Los Angeles responded appropriately to the incident, and; no pattern of unconstitutional

15   acts by Sergeant Kelly or the County of Los Angeles exist that caused Plaintiff injury.

16   a.    Review of Kelly's BWC footage indicates that Plaintiff Assiff both verbally and

17   physically resisted Sergeant Kelly's detention; specifically, Assiff verbally

18   argued with Sergeant Kelly regarding the legality of the traffic stop, he declined

19   to provide his driver's license when requested (three times) (a violation of

20   California Vehicle Code 12951(b), a misdemeanor) and, even after he was

21   warned that failure to do so would result in an arrest, he refused to exit the

22   vehicle despite being ordered to do so several times. Citizens are aware

23   (California DMV Handbook and CVC 12951(b)) that when stopped by law

24   enforcement they must produce a driver's license, proof of insurance and vehicle

25   registration and if told to exit a vehicle they must comply. Citizens are generally

26   aware they do have a First Amendment right to record interactions with law

27   enforcement but do not have a right to interfere with the officer's lawful duties

28   or commands. Plaintiff was warned that failure to do so would result in him being

Declaration of Michael B. Gray

1  pepper sprayed, and he physically resisted and fought Sergeant Kelly's attempts

2  to remove him from his vehicle to effectuate an arrest a violation of Penal Code

3  Section 148.

4  b. Collectively, this series of failures to comply and the escalation from passive to

5  aggressive resistance on the Plaintiff's behalf provided Sergeant Kelly with the

6  probable cause to lawfully arrest Plaintiff pursuant to California Penal Code

7  section 836—which allows a peace officer to arrest a person without a warrant

8  if the officer has probable cause to believe that the person to be arrested has

9  committed a public offense in the officer's presence.

10  c. Based on the aforementioned conduct, Sergeant Kelly's conduct appears

11  objectively reasonable under the circumstances and is compliant with law

12  enforcement training, policies, and procedures.

13  d. The Fourth Amendment jurisprudence has long recognized that the right to make

14  an arrest or investigatory stop necessarily carries with it the right to use some

15  degree of physical coercion or threat thereof to effect it. Based on my review of

16  the incident footage, my opinion is that Sergeant Kelly's conduct was not

17  excessive force and, instead, appears to be an appropriate degree of force, that is

18  objectively reasonable, in light of Plaintiff's continued resistance and failure to

19  comply with Sergeant Kelly's reasonable orders.

20  e. It is my opinion that The County of Los Angeles neither promulgates, maintains,

21  nor enforces customs or policies that allowed for nor caused Plaintiff injury.

22  Nothing in Sergeant Kelly's personnel history presented as concerns that would

23  give Defendant County of Los Angeles the impression that Sergeant Kelly is

24  either unfit for duty or dismissive of relevant policies and procedures.

25  f. It is my opinion that supervisor and management personnel of the LASD, who

26  supervise and manage Sergeant Kelly for The County of Los Angeles,

27  responded appropriately in the review and handling of this incident,

28

10

Declaration of Michael B. Gray

1   specifically shown in Sergeant Kelly's superiors review and follow up report of

2   the incident.

3   g.  I have found nothing to indicate that the LASD has a custom or practice of

4   violating the civil rights of citizens. The LASD has a very comprehensive Use

5   of Force manual that gives thorough and specific details on the use of force and

6   the reporting of such use of force.  There is nothing in the record(s) reviewed

7   that would indicate that the LASD failed to properly supervise Sergeant Kelly

8   and it is my opinion the reporting process and follow up investigation was

9   proper, thorough and followed LASD policies and procedures.

10

11   I declare under penalty of perjury, under the laws of California, that the forgoing is

12   true and correct.

13

14   Executed this 24th Day of May, 2023 at Encinitas, California.

15

16

17

18   By_____

19   MICHAEL B. GRAY

20

21

22

23

24

25

26

27

28

11

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On May 24, 2023, I served the foregoing document described as **DECLARATION OF MICHAEL B. GRAY** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

**By Mail**  I caused such envelope(s) to be deposited in the mail at El Segundo, California.  The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX   **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List.  My email address is mnixon@kmslegal.com.

**By Personal Service** I caused such document to be Personally Served on the parties listed in the Service List.

XX   **State**  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2023, at El Segundo, California.

_____
Maria Nixon

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SERVICE LIST

## Assiff, Joshua vs. County of Los Angeles, et al.
Central District- Case No.: 2:22-cv-05367 RGK(MAAx)

| | |
|---|---|
| Thomas M. Ferlauto, Esq. Law Office of Thomas M. Ferlauto, APC 25201 Paseo de Alicia, Ste. 270 Laguna Hills, CA 92653 EM: tmf@lawofficetmf.com | Attorney for Plaintiff, **JOSHUA ASSIFF** |