PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendants,
**COUNTY OF LOS ANGELES and DEPUTY TRAVIS KELLY**
*(Defendants is exempt from filing fees pursuant to Government Code § 6103)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ASSIFF,<br><br>                    Plaintiffs,<br><br>        v.<br><br>COUNTY OF LOS ANGELES;<br>SHERIFF DEPUTY BADGE<br>NUMBER 404532; And DOES 1<br>through 10,<br><br>                    Defendants. | **Case No.: 2:22-cv-05367 RGK(MAAx)**<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion for Partial Summary Judgment; Dec. of Michael Gray; Dec. of Molshree Gupta; Dec. of Sgt. Travis Kelly; Dec. of Sgt. Keith Greene; Notice of Lodging;[Proposed] Order]*<br><br>**Date:       June 26, 2023**<br>**Time:       9:00 a.m.**<br>**Crtrm:      850**<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br><br>Assigned to:<br>Hon. R. Gary Klausner, District Judge<br>Courtroom 850 |

1

**TO THIS HONORABLE COURT AND TO ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that Defendants COUNTY OF LOS ANGELES and SERGEANT TRAVIS KELLY (hereinafter "Defendants") present the following Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for an order granting Partial Summary Judgment or, pursuant to Federal Rule of Civil Procedure Rule 56.

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. On or about September 24, 2021, Plaintiff Joshua Assiff ("Plaintiff"), a 21-year-old black male, was pulled over and subsequently arrested by a male Caucasian motorcycle officer ("Defendant Kelly"). | Plaintiff's First Amended Complaint *[Dckt. #27]*, ¶¶ 9-11; Declaration of Michael Gray, ¶¶ 5(a). |
| 2. Defendant Kelly initiated the traffic stop at the intersection of Soledad Canyon Road and Sierra Highway because he observed a black GMC Terrain (driven by Plaintiff) make a right-hand turn without stopping for the steady circular red traffic signal (violation of California *Vehicle Code* section 21453(b)) and without yielding to pedestrians in the crosswalk (violation of California *Vehicle Code* section 21950(a)). | Declaration of Michael Gray, ¶¶ 5(b); Declaration of Travis Kelly, ¶¶ 4. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 3. The incident was captured on video by Defendant Kelly once he activated his non-department issued personal Body Worn Camera ("BWC") as he was dismounting his motorcycle at the outset of the traffic stop. | Declaration of Michael Gray, ¶¶ 5(c); Declaration of Travis Kelly, ¶¶ 5. |
| 4. From the beginning of the traffic stop, Plaintiff was argumentative with Sergeant Kelly about the reason for the traffic stop, and contradicted Defendant Kelly's statement that Plaintiff made a right-hand turn without stopping for the red traffic signal. | Declaration of Michael Gray, ¶¶ 5(d); Declaration of Travis Kelly, ¶¶ 6. |
| 5. While Plaintiff was speaking, Defendant Kelly could smell a strong odor of burnt marijuana emitting from his vehicle. | Declaration of Travis Kelly, ¶¶ 7. |
| 6. Due to Plaintiff's agitation, rapid speech, and odor of marijuana, Defendant Kelly believed Plaintiff may have been under the influence of marijuana. | Declaration of Travis Kelly, ¶¶ 7. |
| 7. Defendant Kelly requested Plaintiff's driver's license three times in the first approximately 45 seconds of the BWC. | Declaration of Michael Gray, ¶¶ 5(e); Declaration of Travis Kelly, ¶¶ 8. |
| 8. In response, Plaintiff continued arguing with Defendant Kelly and did not provide his driver's license. | Declaration of Michael Gray, ¶¶ 5(e); Declaration of Travis Kelly, ¶¶ 8. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 9. At the third request for Plaintiff's driver's license, Sergeant Kelly warned Plaintiff to "give me your driver's license or you're going to jail." | Declaration of Michael Gray, ¶¶ 5(e); Declaration of Travis Kelly, ¶¶ 8. |
| 10. In response to the third request for Plaintiff's driver's license, Plaintiff stated "let me grab my phone," and began to reach towards the center console of the vehicle with his right hand. | Declaration of Michael Gray, ¶¶ 5(f); Declaration of Travis Kelly, ¶¶ 9. |
| 11. Immediately thereafter, Defendant Kelly opened Plaintiff's driver's door and ordered Plaintiff to exit the vehicle.  Plaintiff responded "no I'm not." | Declaration of Michael Gray, ¶¶ 5(f); Declaration of Travis Kelly, ¶¶ 9 |
| 12. Between approximately 45 seconds and 1 minute and 20 seconds into the BWC footage, Defendant Kelly initiated physical contact with Plaintiff's left wrist to pull him out of the vehicle, which Plaintiff physically resisted by pulling his arm away; Defendant Kelly's report on the incident indicates that he felt Plaintiff kick him during this brief struggle. | Declaration of Michael Gray, ¶ 5(g); Declaration of Travis Kelly, ¶ 10. |
| 13. Defendant Kelly then stepped back slightly from Plaintiff, radioed for backup, and yelled out for assistance to Deputy Joshua Clark, who was in the same parking lot. | Declaration of Michael Gray, ¶ 5(h); Declaration of Travis Kelly, ¶ 11. |

4

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 14. Plaintiff began to video record the incident on his cellphone. | Declaration of Michael Gray, ¶ 5(h); Declaration of Travis Kelly, ¶ 11. |
| 15. Defendant Kelly then ordered Plaintiff to exit the vehicle several times, and warned about the use of pepper spray if Plaintiff failed to comply. | Declaration of Michael Gray, ¶ 5(i); Declaration of Travis Kelly, ¶ 12. |
| 16. Around 1 minute and 20 seconds into the BWC footage, Defendant Kelly deployed his pepper-spray against Plaintiff in a 1-2 second burst, and initiated second physical contact with Plaintiff to pull him out of the vehicle. | Declaration of Michael Gray, ¶¶ 5(j); Declaration of Travis Kelly, ¶¶ 13. |
| 17. At about 1 minute and 25 seconds into the BWC footage, a second Deputy (identified as Deputy Joshua Clark) can be seen attempting to aid Defendant Kelly with Plaintiff to pull him out of the vehicle. | Declaration of Michael Gray, ¶¶ 5(k); Declaration of Travis Kelly, ¶¶ 14. |
| 18. Defendant Kelly reported that he saw Plaintiff punch Deputy Clark in the chest, and he punched Plaintiff in the face with his left fist. | Declaration of Michael Gray, ¶¶ 5(k); Declaration of Travis Kelly, ¶¶ 14. |
| 19. The physical struggle between the two Deputies and Plaintiff continued for about 55 seconds while plaintiff was still seated in the driver's seat of his vehicle actively resisting. | Declaration of Michael Gray, ¶¶ 5(k). |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 20. At about 2 minutes and 20 seconds, a third Deputy (Deputy Garrett Gallegos) arrived on the scene. | Declaration of Michael Gray, ¶¶ 5(l); Declaration of Travis Kelly, ¶¶ 15. |
| 21. Shortly thereafter, Deputy Gallegos deployed his Taser to Plaintiff's back through direct contact. | Declaration of Michael Gray, ¶¶ 5(l); Declaration of Travis Kelly, ¶¶ 15. |
| 22. At about 2 minutes and 27 seconds, the three Deputies were able to bring Plaintiff out of his vehicle and to the ground next to it. | Declaration of Michael Gray, ¶¶ 5(m); Declaration of Travis Kelly, ¶¶ 15. |
| 23. Once on the ground, Plaintiff continued kicking and pulling his arms away despite commands to get onto his stomach and stop resisting. | Declaration of Michael Gray, ¶¶ 5(m); Declaration of Travis Kelly, ¶¶ 15. |
| 24. At about 2 minutes and 36 seconds, Deputy Gallegos again deployed his Taser to Plaintiff in an attempt to gain compliance. | Declaration of Michael Gray, ¶¶ 5(n); Declaration of Travis Kelly, ¶¶ 16. |
| 25. Defendant Kelly ordered Plaintiff to roll onto his stomach and place his hands behind his back, and warned that the Taser would be used again if he did not comply. | Declaration of Michael Gray, ¶¶ 5(o); Declaration of Travis Kelly, ¶¶ 17. |
| 26. Plaintiff then rolled onto his stomach, stopped resisting and was placed in handcuffs. | Declaration of Michael Gray, ¶¶ 5(o); Declaration of Travis Kelly, ¶¶ 17. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 27. Based on the foregoing, Defendant Kelly believed there was probable cause to arrest Plaintiff for violation of California *Penal Code* sections 69 (resisting an officer) and 243(b) (battery against the person of an officer). | Declaration of Michael Gray, ¶¶ 5(o); Declaration of Travis Kelly, ¶¶ 18. |
| 28. On September 25, 2021, a judicial officer of the State of California found that there was probable cause for Plaintiff's subject arrest for California *Penal Code* sections 69 (resisting an officer) and 243(b) (battery against the person of an officer). | Declaration of Michael Gray, ¶¶ 5(p). |
| 29. Based upon his education, training, experience, and review of materials to date, Defendants' disclosed expert, Michael Gray, opines that there was probable cause for Plaintiff's arrests. | Declaration of Michael Gray, ¶ 6. |
| 30. Plaintiff alleges that he was pulled over and subsequently arrested for no apparent reason and without probable cause. | First Amended Complaint *[Dckt. #27]* , ¶¶ 9-11. |
| 31. Plaintiff further alleges that he was tasered, choked, pepper sprayed, beaten, and arrested, all in violation of his constitutional rights. | First Amended Complaint *[Dckt. #27]* , ¶¶ 1, 9-12. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 32. As to Defendant Kelly, Plaintiff alleges that he "acting under color or law or color of authority, deprived Plaintiff of his rights, privileges, or immunities secured by the State and Federal Constitutions, by arresting Plaintiff without probable cause and with use of excess force in violation of the Fourth and Fourteenth Amendment to the United States Constitution." | First Amended Complaint *[Dckt. #27]* , ¶ 15. |
| 33. Defendant Kelly's BWC footage indicates that Plaintiff both verbally and physically resisted Defendant Kelly's detention; specifically, Plaintiff verbally argued with Sergeant Kelly regarding the legality of the traffic stop, he declined to provide his driver's license when requested (three times) (a violation of California Vehicle Code 12951(b), a misdemeanor) and, even after he was warned that failure to do so would result in an arrest, he refused to exit the vehicle despite being ordered to do so several times. | Declaration of Michael Gray, ¶¶ 6(a). |

8

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 34. Citizens are aware (California DMV Handbook and CVC 12951(b)) that when stopped by law enforcement they must produce a driver's license, proof of insurance and vehicle registration and if told to exit a vehicle they must comply. Citizens are generally aware they do have a First Amendment right to record interactions with law enforcement but do not have a right to interfere with the officer's lawful duties or commands. | Declaration of Michael Gray, ¶¶ 6(a). |
| 35.  Plaintiff was warned that failure to do so would result in him being pepper sprayed, and he physically resisted and fought Defendant Kelly's attempts to remove him from his vehicle to effectuate an arrest a violation of *Penal Code* Section 148. | Declaration of Michael Gray, ¶¶ 6(a). |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 36.  Collectively, this series of failures to comply and the escalation from passive to aggressive resistance on the Plaintiff's behalf provided Defendant Kelly with the probable cause to lawfully arrest Plaintiff pursuant to California Penal Code section 836—which allows a peace officer to arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. | Declaration of Michael Gray, ¶¶ 6(b). |
| 37.  Based on Plaintiff's aforementioned conduct, Defendant Kelly's conduct was objectively reasonable under the circumstances and is compliant with law enforcement training, policies, and procedures. | Declaration of Michael Gray, ¶¶ 6(c). |
| 38.  Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. | Declaration of Michael Gray, ¶¶ 6(d). |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 39.  Defendant Kelly's conduct was not excessive force and, instead, was an appropriate degree of force, that is objectively reasonable, in light of Plaintiff's continued resistance and failure to comply with Defendant Kelly's reasonable orders. | Declaration of Michael Gray, ¶¶ 6(d). |
| 40. As to the County, Plaintiff alleges in a conclusory manner that the "County knowingly and intentionally promulgated, maintained, applied, enforced, and continued policies, customs, practices and usages… include[ing], without limitation, the employment of motorcycle and other officers to make unnecessary and unwarranted traffic stops to bully and harass African American drivers. This would include among other things, the initiation of frivolous traffic stops, arrest without probably cause, and the use of excessive force to effectuate the arrest." | First Amended Complaint *[Dckt. #27]*, ¶ 21. |

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 41. Plaintiff cites to a 2013 Department of Justice, Civil Rights Division's review of LASD's Antelope Valley stations which eventually led to a legal settlement with federal authorities.  Plaintiff alleges the Department of Justice's findings regarding racial profiling and discriminatory traffic stops in Antelope Valley are persistent and ongoing recognized by the Department of Justice, Civil Rights Division. | First Amended Complaint *[Dckt. #27]* , ¶ 21. |
| 42. However, the legal settlement and findings do not mention nor provide findings as to LASD Santa Clarita Valley station. | First Amended Complaint *[Dckt. #27]* , ¶ 21; see also **Exhibit E,** at pp. 127-184 . |
| 43. On or about September 24, 2021, Defendant Kelly was assigned to LASD Santa Clarita Valley station.  At no point has Defendant Kelly been assigned to nor worked with LASD Antelope Valley stations, including LASD Lancaster and Palmdale stations. | Declaration of Sergeant Keith Greene, ¶ 15; Declaration of Travis Kelly, ¶ 25. |

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 44. Moreover, the DOJ's failure to include, mention, or review LASD Santa Clarita Valley station in their study in fact suggests no pervasive, continuous, or known unconstitutional policies or practices existed or allowed for Plaintiff's alleged constitutional violation. | First Amended Complaint *[Dckt. #27]*, ¶ 21. |
| 45. Plaintiff has failed to provide any evidence or identify any specific policies or customs that LASD Santa Clarita Valley, Deputy's assigned station which had jurisdiction over Defendant Kelly, held or allowed which caused Plaintiff's alleged constitutional violation. | Declaration of Molshree Gupta , ¶¶ 13, 14; see also **Exhibit G**. |
| 46. The County of Los Angeles neither promulgates, maintains, nor enforces customs or policies that allowed for nor caused Plaintiff injury. | Declaration of Michael Gray, ¶¶ 6(e). |
| 47. The County of Los Angeles and its Sheriff's Department take steps to ensure that its deputies act lawfully and do not violate civil rights when enforcing the law. | Declaration of Sergeant Keith Greene, ¶ 4. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 48. There does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation in September 2021, within the LASD, nor does the LASD condone, a custom, practice or policy of conducting unreasonable searches and seizures. | Declaration of Sergeant Keith Greene, ¶ 5. |
| 49. There has never existed any policy, custom, or practice of random stopping of citizens without cause, nor has there ever been any policy, custom, or practice of racial profiling or discriminating against citizens based on their race or ethnicity. | Declaration of Sergeant Keith Greene, ¶ 6. |
| 50. There does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation, within the LASD, nor does the LASD condone, a custom, practice or policy of permitting the use of excessive force against any person. | Declaration of Sergeant Keith Greene, ¶ 7. |
| 51. There does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation, within the LASD, nor does the LASD condone, a custom, practice or policy of permitting unlawful arrests. | Declaration of Sergeant Keith Greene, ¶ 8. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 52. There does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation, within the LASD, nor does the LASD condone, a custom, practice or policy of retaliating against citizens based on their exercise of First Amendment rights. | Declaration of Sergeant Keith Greene, ¶ 9. |
| 53. There does not exist at the LASD, nor did there exist at the time of the events underlying this action, a custom, practice or policy of employing and retaining as deputies and other personnel who the County of Los Angeles knew or reasonably should have known had dangerous propensities for abusing their authority and/or for mistreating citizens by failing to follow written LASD policies, including by conducting unreasonable searches and seizures or using excessive force. | Declaration of Sergeant Keith Greene, ¶ 10. |

15

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 54. There does not exist at the LASD, nor did there exist at the time of the events underlying this action, a custom, practice or policy of inadequately supervising, training, controlling, assigning, and disciplining deputies and other personnel including who the County of Los Angeles allegedly knew, or in the exercise of reasonable care, should have known had a propensity for abusing their authority and/or for mistreating citizens by failing to follow written LASD policies, including by conducting unreasonable searches and seizures or using excessive force. | Declaration of Sergeant Keith Greene, ¶ 11. |
| 55. There does not exist at the LASD, nor did there exist at the time of the events underlying this action, a custom, practice or policy of maintaining inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling alleged intentional misconduct by deputies of the LASD. | Declaration of Sergeant Keith Greene, ¶ 12. |
| 56. There does not exist at the LASD, nor did there exist at the time of the events underlying this action, a custom, practice or policy of failing to discipline County of Los Angeles deputies' misconduct. | Declaration of Sergeant Keith Greene, ¶ 13. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 57. There does not exist at the LASD, nor did there exist at the time of the events underlying this action, a custom, practice or policy of ratifying any alleged intentional misconduct of deputies of the LASD. | Declaration of Sergeant Keith Greene, ¶¶ 14. |
| 58. As such, there is no evidence to indicate that the LASD has a custom or practice of violating the civil rights of citizens. | Declaration of Michael Gray, ¶¶ 6(g). |
| 59. The LASD has a very comprehensive Use of Force manual that gives thorough and specific details on the use of force and the reporting of such use of force. | Declaration of Michael Gray, ¶¶ 6(g); *see also* **Exhibit E** at pp. 11-125. |
| 60. Defendant Kelly knew that the County and LASD maintained and strictly enforced policies and procedures regarding traffic stops, as well as the use of force, including de-escalation procedures. | Declaration of Travis Kelly, ¶ 23; ; *see also* **Exhibit E** at pp. 11-125. |
| 61. Defendant Kelly received all required LASD training concerning how to conduct traffic stops and how to appropriately respond to passive and active resistance from motorists while conducting traffic stops. | Declaration of Travis Kelly, ¶ 24. |
| 62. Further, Defendant Kelly received LASD training concerning de-escalation procedures that may be used while conducting these traffic stops. | Declaration of Travis Kelly, ¶ 24. |

17

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 63.  Nothing in Defendant Kelly's personnel history presented as concerns that would give Defendant County of Los Angeles the impression that Defendant Kelly is either unfit for duty or dismissive of relevant policies and procedures. | Declaration of Michael Gray, ¶¶ 6(e). |
| 64.  Supervisor and management personnel of the LASD, who supervise and manage Defendant Kelly for The County of Los Angeles, responded appropriately in the review and handling of this incident, specifically shown in Defendant Kelly's superiors review and follow up report of the incident. | Declaration of Michael Gray, ¶¶ 6(f). |
| 65. Based upon his education, training, experience, and review of materials to date, Defendants' disclosed expert, Michael Gray, opines that the County of Los Angeles responded appropriately to the incident, and; no pattern of unconstitutional acts by Defendant Kelly or the County of Los Angeles exist that caused Plaintiff injury. | Declaration of Michael Gray, ¶ 6. |
| 66. There is nothing in the record(s) reviewed that would indicate that the LASD failed to properly supervise Defendant Kelly. | Declaration of Michael Gray, ¶¶ 6(g). |

18

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 67. The reporting process and follow up investigation was proper, thorough and followed LASD policies and procedures. | Declaration of Michael Gray, ¶¶ 6(g). |
| 68. Defendant Kelly did not intend to use unreasonable or excessive force against Plaintiff at any point during the incident. | Declaration of Travis Kelly, ¶ 19. |
| 69. At no point during his encounter with Plaintiff did Defendant Kelly ever retaliate against Plaintiff for anything he said or did to Defendant Kelly or other LASD deputies, nor did I ever retaliate against Plaintiff for recording the incident. | Declaration of Travis Kelly, ¶ 20. |
| 70. At no point during his encounter with Plaintiff were Defendant Kelly's actions due to racial animus or discriminatory motive. | Declaration of Travis Kelly, ¶ 21. |
| 71. Nor at any point during the encounter with Plaintiff did Defendant Kelly witness any other LASD deputy act out of racial animus or discriminatory motive, or otherwise conduct themselves unlawfully or unreasonably. | Declaration of Travis Kelly, ¶ 21. |
| 72. Defendant Kelly did not racially profile Plaintiff in initiating the traffic stop. | Declaration of Travis Kelly, ¶ 21. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 73.  Furthermore, at no point during my interaction with Plaintiff did Defendant Kelly act with malice, oppression or in reckless disregard of Plaintiff's rights, nor did Defendant Kelly observe any other deputy act in such manner toward Plaintiff. | Declaration of Travis Kelly, ¶ 22. |
| 74.  On May 10, 2023, Plaintiff made an expert disclosure which attached an expert report which provided no facts, opinions or conclusions with respect to either Plaintiff's claims or allegations regarding unlawful arrest, Monell liability or punitive damages. | Declaration of Molshree Gupta , ¶ 14; see also **Exhibit G**. |

## CONCLUSIONS OF LAW

1.      Defendant Kelly is entitled to judgment in his favor as to the Plaintiff's claim for unlawful arrest which is brought pursuant to 42 U.S.C. § 1983, where the indisputable facts establish that Defendant Kelly had reasonable suspicion for the traffic stop and probable cause existed to arrest Plaintiff.

2.      Defendant County is entitled to judgment in its favor as to the Plaintiff's Second Cause of Action for municipal (*Monell*) liability brought pursuant to 42 U.S.C. § 1983 where there is no evidence that a custom, practice or policy of the County of Los Angeles led to a violation of Plaintiff's constitutional rights.

3.      As to Plaintiff's claims under 42 U.S.C. § 1983, summary judgment in favor of Defendant Kelly is appropriate where he is shielded from liability by the doctrine of qualified immunity.

/ / /

4.     As to Plaintiff's request for punitive damages, summary judgment in favor of Defendant Kelly is appropriate where the uncontroverted evidence does not support a finding that his conduct was intended to cause Plaintiff any constitutional deprivation, or was otherwise malicious, oppressive or in reckless disregard of Plaintiff's constitutional rights.

Dated: May 24, 2023                    KJAR, MCKENNA & STOCKALPER, LLP

By: _____
PATRICK E. STOCKALPER
MOLSHREE GUPTA
Attorneys for Defendants,
COUNTY OF LOS ANGELES and DEPUTY
TRAVIS KELLY

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On May 24, 2023, I served the foregoing document described as **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

**By Mail**  I caused such envelope(s) to be deposited in the mail at El Segundo, California.  The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX   **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List.  My email address is mnixon@kmslegal.com.

**By Personal Service** I caused such document to be Personally Served on the parties listed in the Service List.

XX   **State**  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2023, at El Segundo, California.

_____
Maria Nixon

22

## **SERVICE LIST**

### **Assiff, Joshua vs. County of Los Angeles, et al.**
Central District- Case No.: 2:22-cv-05367 RGK(MAAx)

| | |
|---|---|
| Thomas M. Ferlauto, Esq.<br>Law Office of Thomas M. Ferlauto, APC<br>25201 Paseo de Alicia, Ste. 270<br>Laguna Hills, CA 92653<br>EM: tmf@lawofficetmf.com | Attorney for Plaintiff,<br>**JOSHUA ASSIFF** |

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**