# EXHIBIT B

THOMAS M. FERLAUTO (SBN 155503)
LAW OFFICE OF THOMAS M. FERLAUTO, APC
25201 Paseo de Alicia, Suite 270
Laguna Hills, California 92653
Telephone: 949-334-8650
Fax: 949-334-8691
Email: TMF@lawofficeTMF.com

Attorney for Plaintiff, JOSHUA ASSIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA ASSIFF,** | **Case No. 2:22-cv-05367 RGK (MAAx)** |
| **Plaintiff,** | **DISCLOSURE OF EXPERT TESTIMONY** |
| **v.** | |
| **COUNTY OF LOS ANGELES; SHERIFF DEPUTY BADGE NUMBER 404532; And DOES 1 through 10,** | |
| **Defendants.** | |

TO ALL PARTIES IN THIS ACTION AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Federal Rules of Civil Procedure, Rule 26(a)(2), Plaintiff, JOSHUA ASSIF (hereinafter "Plaintiff") hereby discloses the identity of witnesses it may use at trial to present evidence under Federal Rule of Evidence, Rules 702, 703, or 705.

The following is a list of the witnesses retained or specially employed to provide expert testimony in this case or whose duties as the party's employee regularly involve giving expert testimony:

1.     Jeffrey J. Nobel (Mr. Nobel's expert report is attached hereto as **Exhibit 1**)

The following is a list of the witnesses who were NOT retained or specially employed to provide expert testimony in the case or whose duties as the party's employee do NOT regularly involve giving expert testimony:

1.     Darrin D. Privett, M.D. 23845 McBean Pkwy, Valencia, CA 91355, 661-253-800. Dr. Privett examined Plaintiff on September 24, 2021 after the incident and is expected to testify that Plaintiff suffered physical injuries as a result of the incident and further testify concerning his diagnosis and prognosis of Plaintiff's physical injuries.

2.     Rafael A. Rosado-Cosme, MD, MHA, FAAFP, 27107 Tourney Rd., Santa Clarita, CA 91355, (888) 778-5000.   Dr. Rosado-Cosme examined Plaintiff on September 28, 2021 after the incident and is expected to testify that Plaintiff suffered physical injuries as a result of the incident and further testify concerning his diagnosis and prognosis of Plaintiff's physical injuries.

3.     Payam Yermian, D.C. 3200 Santa Monica Blvd., Suite 101, Santa Monica, CA 90404, 310-828-8808. Dr. Yermian examined and treated Plaintiff after the incident and is expected to testify that Plaintiff suffered physical injuries as a result of the incident and further testify concerning his diagnosis and prognosis of Plaintiff's physical injuries.

4.     Sergeant Keith R. Greene #464259 Los Angeles County Sheriff's Department.  This law enforcement officer, an employee of the County,  reviewed the evidence of the incident and issued a finding concerning the use of force.

5.    Captain Justin R. Diez #485013 Los Angeles County Sheriff's Department.  This law enforcement officer, an employee of the County,  reviewed the evidence of the incident and issued a finding concerning the use of force.

6.    Lieutenant Rodney Loughridge Los Angeles County Sheriff's Department.  This law enforcement officer, an employee of the County,  reviewed the evidence of the incident and issued a finding concerning the use of force.

7.    Christopher J. Reed #260198 Los Angeles County Sheriff's Department. This law enforcement officer, an employee of the County,  reviewed the evidence of the incident and issued a finding concerning the use of force.


DATED: May 10, 2023                    Law Office of Thomas M. Ferlauto, APC


By: _____
      Thomas M. Ferlauto
      Attorney For:  Plaintiff,
      JOSHUA ASSIFF

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOSHUA ASSIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-05367 RGK (MAAx) |
| | ) | |
| COUNTY OF LOS ANGELES; | ) | |
| SHERIFF DEPUTY BADGE NUMBER | ) | |
| 404532; and DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

**EXPERT REPORT OF JEFFREY J. NOBLE**

1.      My name is Jeffrey J. Noble, and I make this report at the request of defendant's counsel.

2.      I was a police officer in the City of Irvine for 28 years rising to the position of Deputy Chief of Police prior to my retirement.  I served as an interim Deputy Chief of Police at the Westminster Police Department for nine months.

   a.    I was a police officer for 28 years and retired in July 2012 as the Deputy Chief of Police with the Irvine Police Department, located in southern California.  As a Deputy Chief, I was directly responsible for all police operations including Patrol, Traffic, Criminal Investigations, Emergency Management, Crime Prevention, DARE, K9s, Training, and SWAT.  The City of Irvine encompasses over 70 square miles with a population of over 218,000.  I served in a wide range of assignments as an Officer, Senior Officer, Sergeant, Lieutenant, Commander and Deputy Chief, including Patrol, Traffic, Detective, SWAT, Training, Internal Affairs, Emergency Management and Crime Prevention.  The Irvine Police Department had over 200 police officers and over 100 civilian employees during my employment with the department.

   b.    In April 2014, I was hired by the Westminster, California Police Department as an interim Deputy Chief of Police.  My employment with the Westminster Police Department was by means of a temporary contract, and I was asked to review the department's Internal Affairs unit; department policies relating to Internal Affairs investigations, discipline and police officer conduct; conduct department

audits and inspections; and act as a liaison with a civilian oversight monitor who was hired during the same period.  My employment was at the request of the Chief of Police, was ratified by the City Council and was sought due to the arrest of a police officer for an off-duty criminal sexual assault, the arrest of an on-duty officer for extortion and a lawsuit filed by three Latino officers alleging discrimination and retaliation.  I concluded this interim position in January 2015. The Westminster Police Department had 87 police officers and 40 civilian employees during my temporary contracted employment.

c.      As a police supervisor and manager, I have extensive experience conducting internal administrative investigations on a wide range of issues including use of force, vehicle pursuits, officer misconduct, criminal interrogations and interviews, harassment and sexual assaults.

4.      I have a Juris Doctor degree, with honors, from Western State University College of Law and I am admitted to practice law in the State of California.  I have a Bachelor's degree in Criminal Justice with an emphasis on Administration from California State University at Long Beach.

5.      As a police consultant and expert witness, I have extensive experience on matters involving police investigative procedures, misconduct and corruption.  For example:

a.      In 2014, I was part of a Carnegie Institute of Peace Think Tank for addressing police use of force in developing countries.

b.      I have consulted with other police organizations on a wide range of police practices, procedures, including criminal and administrative investigations.  For instance, I was retained in 2004 as an expert to review and evaluate the internal investigation conducted by the San Francisco, California, Office of Community Complaints of the case widely known as "Fajitagate" involving the indictment of seven command staff members and three officers of the San Francisco Police Department.  In 2007 and again in 2009, I was retained by the City of Austin, Texas to review the police department's internal homicide and Internal Affairs investigation of two officer involved fatal shootings.

c.      I have been retained as both a defense and a plaintiff's expert in over 300 cases and have testified as an expert in state court in California, Washington, Tennessee, Connecticut, Minnesota, Illinois and New Mexico and in federal court in Illinois, Tennessee, Georgia, South Carolina, North Carolina, Virginia, Texas and California.

2

d.      I have prepared expert reports for cases in the states of California, Washington, Pennsylvania, Georgia, Illinois, Tennessee, Idaho, Arkansas, Texas, Colorado, New York, Oklahoma, Connecticut, Florida, New Mexico, Minnesota, Ohio, Kentucky, Louisiana, Indiana, Wisconsin, Virginia, Delaware, Oregon, Arizona, New Mexico, New Jersey, Mississippi, North Carolina, South Carolina, Wyoming, Kansas and Missouri.

e.      I have been retained in criminal cases involving allegations of criminal uses of force by police officers in the states of New Mexico, Delaware, Minnesota, Pennsylvania, California, Georgia, Washington, and Florida.

f.      I served as an independent policy advisor to the Large City Internal Affairs Project, which was funded by the United States Department of Justice.  This group consists of the 12 largest police agencies in the United States as well as a select group of independent policy advisors and academics.  The project was an effort to develop national best practices in internal investigations for police agencies.  I was the chair of a sub-committee whose efforts were focused on the investigation of allegations of officer misconduct.  Because of this project the COPS Office published a document entitled, "Standards and Guidelines for Internal Affairs: Recommendations from a Community of Practice."

g.      I have given presentations at the International Association of Chiefs of Police conference in 2004, 2009, 2012, and 2014; the national COPS conference on Internal Affairs issues and the Academy of Criminal Justices Sciences annual meeting on tactical reckless decision making in 2009; the American Psychological Association annual conference in 2013; and National Tactical Officers' Association annual conference in 2004.

h.      In 2013, I gave a presentation in Mexico at the request of the Mexican government on preventing corruption in police institutions.

i.      I have published 21 articles on policing which discussed the subject matters of: Internal Affairs, personnel issues, pursuits, use of force issues and investigative procedures.  Those articles are listed in my attached resume.

j.      I have published two chapters for policing textbooks on tactical recklessness and the code of silence.

k.      I have co-authored, along with Geoffrey Alpert, Ph.D., a textbook on police Internal Affairs investigations titled, "Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight."

3

l.      As evidence that the opinions in our book are accepted by other experts of police administrative investigations, my book was cited extensively in the COPS 2009 publication, "Building Trust Between the Police and the Citizens They Serve: An Internal Affairs Promising Practice Guide for Local Law Enforcement."

m.      In 2020, I co-authored a textbook, "Evaluating Police Uses of Force," with Seth Stoughton and Geoffrey Alpert.

6.      My experience, training and background are more fully described in my attached resume.

7.      My areas of expertise in policing include, but are not limited to: police use of force; pursuits; police administration; training; police operations; criminal investigations; interviews and interrogations; civil rights violations and investigations; internal/administrative investigations; criminal investigations; police discipline; citizen complaints; and police policies and procedures.

8.      I reviewed the following material in making my opinions:

- First Amended Complaint
- First Amended Complaint – Exhibit 1 – US DOJ June 28, 2013 Letter to Sheriff Baca Regarding a DOJ Investigation into the Antelope Valley Sheriff's Station
- First Amended Complaint – Exhibit 2 – An Analysis of Racial/Ethnic Disparities in Stops by Los Angeles County Sheriff's Deputies in the Antelope Valley
- BWC Video of Sergeant KELLY
- Cell Phone Video (Assiff 0030)
- Cell Phone Video (Assiff 0031)
- LASD Reports (COUNTY 00001-119)
- Defendant County of Los Angeles and Los Angeles County Sheriff's Department Responses to Plaintiff's Request for production, Set One
- Defendant County of Los Angeles and Los Angeles County Sheriff's Department Responses to Plaintiff's Request for Production, Set Two
- Deposition of Joshua Assiff
  - o      Exhibit A – Deposition Notice
  - o      Exhibit B – Copy of Driver's License
  - o      Exhibit C – Bodycam Recording
  - o      Exhibit D – Records of Payam Yermian, DC

9.      At this point in the development of this case, I do not know whether I will be using any demonstrative aids during my testimony.  Should I decide to use any such aid, I will ensure that they are made available for review, if requested, prior to their use.

4

10.    My professional charges for this litigation work is an hourly fee of $400 plus expenses including all travel time.  My fees for deposition and trial testimony are a flat rate of $2,500 for the first four hours and $600 per hour for every additional hour, plus travel time and expenses.

11.    If I am provided additional materials that changes, alter or amends my opinions, I will prepare a supplemental report.

12.    To ensure my methodology was reliable, my opinions are based on a comprehensive review of the provided materials that establishes my understanding of the facts of the case and on the professional and generally accepted principles and practices in policing as of the date of this incident.  "Generally accepted practices" refers to those protocols, techniques, and procedures that are widely known, acknowledged, and relied upon in the field.  A practice is generally accepted when well-educated, well-trained, and experienced professionals would agree that it is conventional, customary, and reasonably standard.  Generally accepted practices in policing reflect technical and specialized knowledge in the law enforcement field.  A practice can be generally accepted without necessarily being universally adopted or rising to the level of a long-established, empirically validated best practice.  Generally accepted practices may be, but are not necessarily, reflected in Department of Justice consent decrees, publications by professional associations (such as the International Association of Chiefs of Police, the Police Executive Research Forum, the National Police Foundation, etc.), in agency policies, and in reputable training materials.

13.    To identify and apply the applicable generally accepted practices in policing, I rely on my knowledge, skill, experience, training, and education in law enforcement.  This includes work in my field of study as a policing scholar and author; my knowledge of historical and contemporary law enforcement standards and methods; and the relevant professional and academic literature. I employ a similar methodology when I conduct professional evaluations of police officers or agencies as a consultant and when writing for reputable academic and professional publishers. The methodology I applied in this case is consistent with the methodology utilized by other experts in the field of law enforcement when analyzing incidents of this type.

14.    My use of terminology such as "excessive," "unreasonable," and "disproportionate," etc., is intended to and should be read as references to the professional and generally accepted standards in policing and is not intended and should not be interpreted as references to or the application of legal standards within the sole province of the factfinder or judge.

15.    The opinions that follow are made within a reasonable degree of certainty within the field of police practices based on over 35  years of professional law enforcement experience and scholarship.

**Summary of Incident**

16.    On September 24, 2021 at about 7:50 AM, Mr. Assiff was driving from his home to a teammate's home in order to carpool to basketball practice.  Mr. Assiff made a right-hand turn at the intersection of Soledad Canyon Road and Sierra Highway when he was stopped by Sergeant Kelly of the Los Angeles County Sheriff's Department (LASD).

17.    Sergeant Kelly was in uniform and driving a marked LASD motorcycle.  Sergeant Kelly was wearing a Body Worn Camera (BWC) that captured audio and video of the incident.

18.    Mr. Assiff said he did not believe that he failed to stop for a red traffic signal and was trying to speak to Sergeant Kelly.  Rather than trying to de-escalate the situation, Sergeant Kelly told Mr. Assiff to give him his driver's license or he would be going to jail 37 seconds after his initial contact.  Once Sergeant Kelly made his threat, Mr. Assiff became frightened, so he picked up his cell phone to record the incident.

19.    Sergeant Kelly did not tell Mr. Assiff that he was under arrest, but 7 seconds after his threat he reached into the vehicle and tried to pull Mr. Assiff out.  Mr. Assiff resisted by pulling away and Sergeant Kelly radioed for a back up officer.  Sergeant Kelly claimed that Mr. Assiff kicked him as he opened the driver's door, but the video evidence does not support his claim.  Sergeant Kelly told Mr. Assiff to get out of the vehicle or he would be pepper sprayed and when Mr. Assiff refused, Sergeant Kelly sprayed pepper spray at Mr. Assiff's face.

20.    Deputy Clark arrived to assist Sergeant Kelly and both deputies tried to pull Mr. Assiff out of the car.  Sergeant Kelly said he punched Mr. Assiff in the face because Mr. Assiff puched Deputy Clark in the chest, but the video evidence does not show Mr. Assiff punching anyone.

21.    Deputy Gallegos arrived and used his taser to drive stun Mr. Assiff three times.  Once to remove Mr. Assiff from the vehicle and two additional applications once Mr. Assiff was on the ground.  The deputies then handcuffed and arrested Mr. Assiff.

**Background**

22.    Sergeant Kelly's Body Worn Camera Video

    a.    07:52:52 – Sergeant Kelly parks his motorcycle and dismounts.

    b.    07:52:54 – Mr. Assiff is seated in the driver's seat of his vehicle with the driver's window rolled down.  He is looking back at the sergeant and his left arm is outside the window.  Mr. Assiff said, "Officer?"

    c.    07:52:55 – Sergeant Kelly, "What color was the light when you made the right-

6

hand turn." Sergeant Kelly approaches the driver's door of Mr. Assiff's vehicle. Mr. Assiff's left hand is on the open driver's window and his right hand is visible on the steering wheel.

d.    07:52:57 – Mr. Assiff, "It was a green light sir."

e.    07:52:58 – Sergeant Kelly, "No, it wasn't."

f.    07:52:58 – Mr. Assiff, "It was sir, I promise it was. I swear to God it was. I had the right of way. I swear to God it was, sir. Sir, sir."

g.    07:53:05 – Sergeant Kelly, "Stop." Sergeant Kelly extends his left hand to Mr. Assiff.

h.    07:53:07 – Mr. Assiff, "Oh my God."

i.    07:53:08 – Sergeant Kelly, "Are you listening to yourself right now? You are freaking out dude." Sergeant Kelly is still extending his left hand toward Mr. Assiff.

j.    07:53:13 – Mr. Assiff, "I don't want to have a problem. My practice starts at 9 AM in Antelope Valley officer. I apologize, my teammate . . ."

k.    07:53:19 – Sergeant Kelly, "Are you going to let me speak?"

l.    07:53:21 – Mr. Assiff, "Officer, I'm trying to help you understand."

m.    07:53:24 – Sergeant Kelly, "Let me see your driver's license. The light was red when you turned. I'm not going to talk."

n.    07:53:28 – Mr. Assiff, "It wasn't though, it wasn't though officer, it wasn't, it wasn't, it wasn't, I know it wasn't, I know when . . ."

o.    07:53:31 – Sergeant Kelly points at Mr. Assiff and states in a loud voice, "Give me your driver's license! Or you're going to jail!"

p.    07:53:34 – Mr. Assiff, "I'm going? Bro, hold on, let me get on my phone, bro, like." Mr. Assiff appears to be looking at something in his lap.

q.    07:53:38 – Sergeant Kelly uses his left hand to open the driver's door.

r.    07:53:38 – Sergeant Kelly, "Get out of the car."

s.    07:53:39 – Mr. Assiff, "No, I'm not." Sergeant Kelly reaches into the vehicle and

7

Mr. Assiff said, "Whoa, whoa, whoa."

t.      07:53:45 – Sergeant Kelly, "Request back up at …"

u.      07:53:50 – Mr. Assiff, "Do not put your hands on me.  Do not put your hands on me."  A second sheriff's deputy can be seen a distance behind Mr. Assiff's car apparently on a separate car stop.  "Sir, do not put your hands on me."

v.      07:53:44 – Sergeant Kelly, "just south of Soledad in the car wash.  Josh!"

w.      07:53:56 – Mr. Assiff, "Do not put your hands . . ."

x.      07:53:57 – Sergeant Kelly uses his left hand to point at Mr. Assiff and said, "Get out of the car now!"

y.      07:53:58 – Mr. Assiff appears to be holding his cell phone up and said, "Do not put your hands on me."

z.      07:54:01 – Sergeant Kelly, "Get out of the car now or you're getting pepper sprayed."

aa.     07:54:02 – Mr. Assiff, "No."

bb.     07:54:03 – Sergeant Kelly, "Get out of the car."

cc.     07:54:05 – Mr. Assiff, "I want your supervisor."

dd.     07:54:06 – Sergeant Kelly screams, "I am a supervisor!"  Sergeant Kelly appears to pepper spray Mr. Assiff.  Mr. Assiff uses his right arm to cover his face and he tries to duck away from the spray.

ee.     07:54:14 – Mr. Assiff's wallet is seen on his lap.

ff.     07:54:19 – Sergeant Kelly is grabbing at Mr. Assiff and Mr. Assiff said, "get off of me."  Both of Mr. Assiff's legs are inside the vehicle.

gg.     07:54:25 – A second deputy approached and both deputies grab Mr. Assiff's left arm.  Mr. Assiff's right hand is still holding his cell phone and he is saying, "Get off of me.  I got it all on video."

hh.     07:54:29 – Sergeant Kelly, "Get out of the car."

ii.     07:54:29 – Mr. Assiff, "What are you guys doing?  What are you guys doing?"  Mr. Assiff is moaning as both deputies are trying to pull Mr. Assiff out of his

8

vehicle.  Mr. Assiff's body including his legs are still inside the vehicle while the deputies are pulling his left arm out of the vehicle.

jj.      07:54:42 – Mr. Assiff raises his left knee but he does not kick at the deputies.  His left leg is seen almost immediately going back to the floorboard.  Mr. Assiff is screaming but it is mostly inaudible.

kk.     07:54:54 – Sergeant Kelly, "Get out of the car."

ll.      07:55:06 – Mr. Assiff, "Somebody help me.  Somebody help me."

mm.    07:55:10 – Sergeant Kelly, "Tase him, tase him."

nn.     07:55:13 – The deputies pull Mr. Assiff out of the vehicle and a taser activation can be heard.

oo.     07:55:19 – Mr. Assiff is on his left side on the ground and Deputy Kelly places a taser on Mr. Assiff's lower back.  A second taser activation can be heard and Mr. Assiff screams in pain at the sound of the taser.

pp.     07:55:34 – "Lay o n your stomach, lay on your stomach."

qq.     07:55:37 – Sergeant Kelly, "Put your hand behind your back."  Mr. Assiff puts his hands behind his back."

rr.     07:55:48 – "Shut the fuck up."

ss.     07:55:57 – A handcuff is placed on Mr. Assiff's left hand. A third deputy approaches and held Mr. Assiff's left hand.  Mr. Assiff is handcuffed.

23.    In his report, Sergeant Kelly said when he approached the vehicle, Mr. Assiff "interrupted him and spoke in an agitated and argumentative state."  Sergeant Kelly claimed he could smell the strong odor of burnt marijuana and due to Mr. Assiff's agitation, rapid speech, and odor of marijuana, he believed Mr. Assiff may be under the influence of marijuana.  Sergeant Kelly said he asked Mr. Assiff for his driver's license, but he continued to argue about the reason for the stop and grabbed for his cell phone. Sergeant Kelly said he immediately opened the driver's door of Mr. Assiff's vehicle because he was losing sight of Mr. Assiff's left hand, Mr. Assiff was agitated; the strong odor of marijuana; Assiff was possibly under the influence of marijuana; and, to prevent Mr. Assiff from driving away.

a.      Sergeant Kelly said he grabbed Mr. Assiff's left wrist because he could not see where he was reaching in to control him as he exited the vehicle.  Sergeant Kelly said as soon as he grabbed Mr. Assiff's risk, Mr. Assiff aggressively pulled his arm

9

away and kicked him in the left leg with his left foot.

b.      Sergeant Kelly said he called for a backup deputy on his radio and saw that Deputy Clark was on a traffic stop in the same parking lot.  Sergeant Kelly said he yelled to Deputy Clark, but Deputy Clark did not hear him.

c.      Sergeant Kelly said he ordered Mr. Assiff out of the car, or he would be pepper sprayed.  Sergeant Kelly said Mr. Assiff reached toward the center console with his right hand and fearing that he may be retrieving a weapon, he sprayed a 1-2 second burst of his OC spray at Mr. Assiff's face.

d.      Sergeant Kelly said Deputy Clark ran to his location and grabbed ahold of Mr. Assiff's body.  Sergeant Kelly said he saw Mr. Assiff hit Deputy Clark in the chest so he punched Mr. Assiff in the face with his left fist.  Mr. Assiff continued resisting my pulling away and kicking toward the deputies and he attempted to pull Mr. Assiff's legs out of the vehicle, but Mr. Assiff kicked out of his grasp.

e.      Sergeant Kelly said Deputy Gallegos arrived and pointed his Taser at Mr. Assiff. Sergeant Kelly said he ordered Deputy Gallegos to Taser Mr. Assiff so they can get him out of the vehicle and handcuffed him.  Sergeant Kelly said he and Deputy Clark removed Mr. Assiff from the vehicle and onto the ground.

f.      Sergeant Kelly said as they attempted to roll Mr. Assiff onto his stomach, Mr. Assiff began kicking and pulling his arms away in an effort to avoid being handcuffed.  Sergeant Kelly said he punched Mr. Assiff twice in the stomach to get him to comply.

g.      Sergeant Kelly said Mr. Assiff continued to resist, so he ordered Deputy Gallegos to Taser Mr. Assiff again.  Sergeant Kelly said the Taser had little effect on Mr. Assiff, but he was able to roll Mr. Assiff onto his stomach where he was handcuffed.[1]

24.     Deputy Clark said when he arrived at Mr. Assiff's vehicle, Mr. Assiff was refusing to comply with Sergeant Kelly.  Deputy Clark said he could smell the pepper spray and said it was obvious that Mr. Assiff had been sprayed with pepper spray, but it appeared to have no effect on him.

a.      Deputy Clark said as he attempted to grab Mr. Assiff's left arm, Mr. Assiff to pull away from his grasp and Mr. Assiff punched him in his chest with his left fist just below his radio microphone.  Deputy Clark said he then punched Mr. Assiff one time in his upper torso with his left fist, but Mr. Assiff leaned back and the punch struck Mr. Assiff on his neck.

---

[1] COUNTY 00073-74.

b.      Deputy Clark said he reached into the vehicle and attempted to wrap his right arm around Mr. Assiff's upper torso, but Mr. Assiff pulled his upper body back into the passenger seat and as a result, his right arm slid up around Mr. Assiff's shoulders and neck.  Deputy Clark said he did not apply pressure to Mr. Assiff's neck or attempt to apply a carotid restraint hold.  Deputy Clark said he let go of Mr. Assiff's upper body and again tried to grab his left wrist and grabbed his hair in an attempt to pull him out of the vehicle.

c.      Deputy Clark said he yelled at Mr. Assiff to stop fighting and within a few seconds he heard Sergeant Kelly say, "Taser, Taser, Taser."  Deputy Clark said he heard a Taser deployment and looked to his right and saw Deputy Gallegos had deployed his Taser in the drive stun mode.

d.      Deputy Clark said the Taser caused Mr. Assiff's entire body to go limp and he and Sergeant Kelly pulled Mr. Assiff from the vehicle and guided him to the ground. Once on the ground, they attempted to roll Mr. Assiff onto his stomach, but the effectiveness of the Taser began to wear off and Mr. Assiff began to kick.  Deputy Gallegos applied the Taser in the drive stun mode again which briefly made Mr. Assiff's body go limp and they were able to roll Mr. Assiff onto his left side. Deputy Clark said as he pulled Mr. Assiff's right arm behind his back, he saw Mr. Assiff kicking both of his legs at Sergeant Kelly and Deputy Gallegos.

e.      Deputy Clark said he heard the Taser being deployed again and this time Mr. Assiff complied with their commands and rolled onto his stomach where he was handcuffed.[2]

25.    Deputy Gallegos said when he arrived, he could smell the strong odor of pepper spray and saw both deputies trying to pull Mr. Assiff out of the vehicle.  Deputy Gallegos said he drew his Taser and said, "I'm going to tase him."  Deputy Gallegos said he heard one of the deputies say tase him and he pointed his Taser at Mr. Assiff's lower back and activated the Taser.  Deputy Gallegos said he heard the sound of the Taser being activated but did not see the prongs deployed.  He looked down and saw that the Taser did not have a cartridge loaded.

a.      Deputy Gallegos said he pushed the front of the Taser onto the lower back of Mr. Assiff in the drive stun mode and the Taser appeared to have an effect and the deputies were able to remove him from the vehicle.

b.      When Mr. Assiff was taken to the ground, he continued to kick and flail his feet and he believed Mr. Assiff was trying to get up to try to escape.  Deputy Gallegos said he applied a second drive stun to Mr. Assiff's right hip and Mr. Assiff began

---

[2] COUNTY 00077-78.

screaming and continued to try to stand up. Because Mr. Assiff continued to try to stand up, he laid his body on top of Mr. Assiff's legs and applied a third drive stun to Mr. Assiff's right thigh.

    c.    Mr. Assiff rolled onto his stomach and was handcuffed.[3]

26.    Mr. Assiff said he was distraught at being stopped because he did not believe he had done anything wrong. Mr. Assiff said he told the deputy he was concerned because he was potentially going to be late to basketball practice and said he felt he was very calm.

    a.    Mr. Assiff said three or four deputies tried to pull him out of his car, grabbed him by his hair, and pepper sprayed him on his face. The deputies threw him on the ground, tased him, and punched him in his face. Mr. Assiff said when he was on the ground and being ordered to rollover, he did not because he was being hit on his face.

    b.    Mr. Assiff denied that he ever swung his arm or tried to kick at the deputies and he had no idea what had happened because it happened so fast.[4]

    c.    Mr. Assiff said he was not arguing with Sergeant Kelly would not let him finish his statement.[5]

    d.    Mr. Assiff said he had every intention to give Sergeant Kelly his driver's license and it was in his hand.[6] Mr. Assiff said he did not give Sergeant Kelly his driver's license because Sergeant Kelly told him he was going to jail.[7]

    e.    Mr. Assiff said he never kicked or punched any of the deputies[8] and he was punched in the face while he was still seated in his vehicle.[9]

27.    Deputy Gallegos' taser report shows three 5-second activations at 7:53:11, 7:53:19, and 7:15:30.[10]

28.    The Los Angeles County Supervisor's Report on Use of Force found several inconsistencies.

---

[3] COUNTY 00080-81.
[4] COUNTY 00083.
[5] Assiff deposition at 54.
[6] Assiff deposition at 55.
[7] Assiff deposition at 104.
[8] Assiff deposition at 145.
[9] Assiff deposition at 147.
[10] COUNTY 00085.

a.      Sergeant Kelly claimed Mr. Assiff kicked open the driver's door was open, but the video does not show the kick.  There are several moments where the video does not show Mr. Assiff's legs where a kick could have occurred.

b.      Sergeant Kelly and Deputy Clark both reported that Mr. Assiff threw punches. The videos do not show Mr. Assiff throwing any punches when he is inside the vehicle.  There are moments when it appears that Mr. Assiff punches at the deputies.  The videos do not show Sergeant Kelly's and Deputy Clark's punches.

c.      Mr. Assiff claimed he was kicked on the side by the deputies, but that was not reported by any of the deputies.  Mr. Assiff did not have visible injuries consistent with this allegation.

d.      In the video, it appears a deputy placed his knee on Mr. Assiff's side and back. The deputy was wearing uniform pants and not motor pants.  Deputy Gallegos said he was not intentionally using his knee to control Mr. Assiff.

e.      On Sergeant Kelly's body camera video, Deputy Clark appears to place his knee on the side of Mr. Assiff's face.  Deputy Clark said he did not recall pressing his knee on to Mr. Assiff's face.[11]

29.   The supervisor's report makes the following recommendations:

a.      A better tactic after Sergeant Kelly backed away and presented his pepper spray, would have been to request assistance while maintaining distance.  Reaching into a vehicle is a potentially dangerous tactic for law enforcement, putting the officer at significant risk of injury.   This tactic was recently listed in Field Operations order Services Newsletter 21 – 13 (Reaching into Vehicles)

b.      After Mr. Assiff was pepper sprayed, Sergeant Kelly backed up and requested assistance.  Sergeant Kelly then reengaged Mr. Assiff.  Pepper spray can take time for the effects to be felt by the suspect.  A better tactic would have been to wait for assistance then developed a tactical plan and reassess the threat presented by the suspect.

c.      The suspect was handcuffed by Sergeant Kelly.  The handcuffs appeared to be applied by using momentum.  The proper technique would be to press the handcuffs against the risks then press them onto the suspect.[12]

d.      Deputy Clark received a Performance Log Entry were telling Mr. Assiff to "Shut the fuck up."

---

[11] COUNTY 000104.
[12] COUNTY 000109.

e.   24 minutes prior to this incident, Sergeant Kelly responded to a backup request on a uncooperative driver.  During this backup request, Sergeant Kelly was able to de-escalate the uncooperative driver.  The next traffic stop for Sergeant Kelly was this incident.

f.   Sergeant Kelly's report documented the odor of her marijuana.  Sergeant Kelly located and inspected a marijuana smoking pipe and then left the pipe in the vehicle.  The pipe should have been taken for evidence or photograph.[13]

### Sergeant Kelly's Failure to Use De-Escalation Techniques Was Inconsistent with Generally Accepted Police Practices

30.   Police officers are taught that it is generally preferable to avoid conflict (i.e., conflict avoidance) or use communication skills to reduce or resolve conflict (e.g., de-escalation) than it is to use force.  Doing so increases both officer safety and the safety of the individuals with whom officers are interacting.  Not every situation allows for conflict avoidance or allows officers the opportunity to use de-escalation techniques, of course.  In that way, tactical communications are, like any other police tool, appropriate to use in some situations—namely, when they are safe and feasible—but not others.

31.   De-escalation means taking action to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources are available to resolve the situation.  The goal of de-escalation is to gain the voluntary compliance of subjects, when feasible, and thereby reduce or eliminate the necessity to use physical force.  Police officers are trained that de-escalation is accomplished through verbal persuasion; slowing down a situation allowing for more time, options and resources; avoiding or minimizing physical confrontation; maximizing tactical advantage by increasing distance to allow for greater reaction time; and the use of shielding, when possible, for cover and concealment.[14]

32.   The Los Angeles Sheriff's Department Policy states, "Department members shall only use that level of force which is objectively reasonable, and force should be used as a last resort.  Whenever feasible, Department members should endeavor to de-escalate confrontations through tactical communication, crisis intervention, advisements, warnings, verbal persuasion, and other common-sense methods (such as utilizing alternative tactics) which can prevent the need to use force, or reduce the amount of force, that is required."[15]

---

[13] COUNTY 000110-111.
[14] See, POST LD 20, Chapter 2 De-Escalation and California Gov't Code Section 7286 that requires officers use de-escalation techniques, crisis intervention tactics, and other alternatives to force when feasible.
[15] LASD Policy Section 3-10/009.00 Force Prevention and De-Escalation Principles.

33.   Sergeant Kelly unnecessarily escalated the contact with Mr. Assiff creating the need to use force that would have likely not have been otherwise necessary.  Police officers are trained that they should strive to be courteous and professional during a traffic stop.[16]  Officers are trained that the attitude of the officer can affect the reaction of the driver and the outcome of a vehicle stop.  Officers should make their approach in a businesslike manner while also employing verbal communication techniques.  Flexibility and courtesy are important in making contact with the vehicle occupants.[17]

34.   Police officers are trained that a major goal of law enforcement is to generate voluntary compliance without resorting to physical force.[18]

35.   Here, instead of simply telling Mr. Assiff why he had been stopped, Sergeant Kelly initiated the conversation by asking Mr. Assiff the color of the light when he made his turn.  When Mr. Assiff told Sergeant Kelly he believed the light was green, Sergeant Kelly told Mr. Assiff to stop and extended his hand out to Mr. Assiff in a manner consistent with telling Mr. Assiff to stop talking and told Mr. Assiff that he was "freaking out."  Mr. Assiff tried to explain his perspective to Sergeant Kelly and Sergeant Kelly told Mr. Assiff he was not going to talk.  37 seconds after his initial contact with Mr. Assiff, Sergeant Kelly told him to provide his driver's license, or he would be going to jail.

36.   Sergeant Kelly failed to take basic reasonable steps to de-escalate the situation before telling Mr. Assiff that he would be arrested and using force to gain compliance.  It is not unusual for motorist to question the reason for their stop and to spend a few minutes explaining the reasons for the stop and de-escalating the situation to gain voluntary compliance.  Indeed, the LAPD supervisor's report states that Sergeant Kelly was able to use de-escalation skills to gain voluntary compliance on the stop he made immediately prior to his stop of Mr. Assiff.

37.   Had Sergeant Kelly followed generally accepted police practices and his department policy and used de-escalation to gain voluntary compliance, it is likely that no force would have been necessary.

**Sergeant Kelly's Use of Pepper Spray on Mr. Assiff was Objectively Unreasonable, Excessive and Inconsistent with Generally Accepted Police Practices**

38.   Police officers are trained that the U.S. Supreme Court in its landmark decision *Graham v. Connor* held that to determine whether the force used to affect a particular seizure is reasonable, one must balance the nature and quality of the intrusion on the individual's rights against the countervailing government interests at stake.  This balancing test is achieved by the application of what the Court labeled the objective reasonableness test.

---

[16] POST LD 22 at 2-24.
[17] POST LD 22 at 2-25.
[18] POST LD 22 at 2-25.

15

The factors to be considered include: 1.) The severity of the crime, 2.) Whether the suspect poses an immediate threat to the safety of the officers or others, and 3.) Whether the suspect is actively resisting or attempting to evade arrest by flight.

39.     Whether one's actions were objectively reasonable cannot be considered in a vacuum, but must be considered in relation to the totality of the circumstances.  The standard for evaluating the unreasonable use of force reflects deference to the fact that peace officers are often forced to make split-second judgments in tense circumstances concerning the amount of force required.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

40.     Police officers are trained and prepared to assess dangerous situations and respond accordingly.  Police officers are trained that for their force to be reasonable the level and manner of force must be proportional to the level of resistance and threat with which they are confronted.  Proportionality is best understood as a range of permissible conduct based on the totality of the circumstances, rather than a set of specific, sequential, predefined force tactics arbitrarily paired to specified types or levels of resistance or threat.

41.     Whether or not the suspect poses an immediate threat to the safety of the officer or others is the most important of the *Graham* factors.  There must be objective factors to justify an immediate threat, as a simple statement by an officer that he fears for his safety or the safety of others is insufficient.  There is no requirement that a police officer wait until a suspect harms another to confirm that a serious threat of harm exists, but merely a subjective fear or a hunch will not justify the use of force by police.

42.     When determining whether or not there is an immediate threat to the officer or others, police officers are trained to assess a number of factors. These factors include, but are not limited to:

a.      Severity of the threat to officers or others.

b.      The conduct of the individual being confronted as reasonably perceived by the officer at the time.

c.      Officer/subject factors (age, size, relative strength, skill level, injury/exhaustion and number of officers vs. subjects).

d.      The effects of drugs or alcohol.

e.      Subject's mental state or capacity.

f.      Proximity of weapons or dangerous improvised devices.

16

g.    The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

h.    The availability of other options and their possible effectiveness.

i.    Seriousness of the suspected offense or reason for contact with the individual.

j.    Training and experience of the officer.

k.    Potential for injury to citizens, officers and suspects.

l.    Whether the person appears to be resisting, attempting to evade arrest by flight or is attacking the officer.

m.    The risk and reasonable foreseeable consequences of escape.

n.    The apparent need for immediate control of the subject or a prompt resolution of the situation.

o.    Whether the conduct of the individual being confronted no longer reasonably appears to pose an immediate threat to the officer or others.

p.    Prior contacts with the subject or awareness of any propensity for violence.

q.    Other exigent circumstances[19]

43.    Here, Sergeant Kelly said when he opened the driver's door of Mr. Assiff's vehicle, he grabbed Mr. Assiff's left wrist because he could not see where he was reaching to control him as he exited the vehicle. Sergeant Kelly said as soon as he grabbed Mr. Assiff's risk, Mr. Assiff aggressively pulled his arm away and kicked him in the left leg with his left foot.

a.    The video evidence from Sergeant Kelly's BWC contradicts his statement that Mr. Assiff kicked him.

b.    Instead, the video shows Sergeant Kelly yelling at Mr. Assiff to "Give me your driver's license now or you're going to jail!" Mr. Assiff immediately responds, "I'm going to . . .bro, hold on bro, let me get on my phone." Mr. Assiff appears to be holding his phone. Sergeant Kelly immediately opens the driver's door and tells Mr. Assiff to get out of the car. Sergeant Kelly appears to grab for Mr. Assiff and Mr. Assiff screams, "Whoa, whoa, whoa," and leans toward the passenger

---

[19] *See*, POST LD 20 and LASD policy Chapter 10.

side of the vehicle as Sergeant Kelly backs away. Sergeant Kelly radios for a back up officer and yells to another deputy who is nearby. Sergeant Kelly then again orders Mr. Assiff to exit the vehicle and tells him if he doesn't, he will get pepper sprayed.  Mr. Assiff is holding his phone up apparently videotaping Sergeant Kelly and asks to speak with his supervisor.  Sergeant Kelly yells, "I am a supervisor," and sprays Mr. Assiff with his OC spray in the face.

c.    Sergeant Assiff said he used his OC spray because Mr. Assiff reached toward the center console with his right hand and fearing that he may be retrieving a weapon, he sprayed a 1-2 second burst of his OC spray at Mr. Assiff's face.

d.    The video shows both of Mr. Assiff's hands just prior to Sergeant Kelly's use of the OC spray and Mr. Assiff never reached for the center console as claimed by Sergeant Kelly.

44.    While Mr. Assiff was not complying with Sergeant Kelly's commands he was not actively resisting, but merely passively resisting.

a.    Passive resistance is defined as "Does not respond to verbal commands but also offers no physical form of resistance."

b.    Active resistance is defined as "Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally or physically signaling an intention to avoid or prevent being taken into or retained in custody."[20]

45.    Police officers are trained that the use of OC spray for someone engaging in passive resistance is excessive.

46.    Sergeant Kelly and Deputy Clark claimed that Mr. Assiff punched Deputy Clark in the chest and Sergeant Kelly said in response he punched Mr. Assiff in the face.

a.    The video evidence does not show Mr. Assiff punching Deputy Clark, or anyone else, during the incident and Mr. Assiff denied that he ever punched or kicked anyone.

b.    There is no legitimate police training that instructs officers to strike subjects in the head or face; indeed, police agencies commonly instruct officers to avoid such strikes unless circumstances justify the application of deadly force.[21]  Under some circumstances strikes to the head or face can be reasonably expected to risk of causing death or serious physical injury.  There is a substantial likelihood,

---

[20] POST LD 20 at 3-6.  Also see LASD Training Video
[21] SETH W. STOUGHTON, JEFFREY J. NOBLE, GEOFFREY P. ALPERT, EVALUATING POLICE USES OF FORCE 201 (2020).

depending on the type of strike and where the strikes connect, that a strike will damage the eyes, nose, orbital bone, cheekbone, or jaw through blunt trauma; cause permanent scarring by, for example, tearing the skin or damaging the outer ear; cause a head to twist beyond normal rotation in a way that injures the cervical spine and or associated muscles; or cause an epidural hematoma, which can carry a substantial risk of death.  Police officers in California are trained that serious bodily harm or injury means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement.[22]

    c.      The use of a punch to the face in these circumstances was excessive, objective unreasonable and inconsistent with generally accepted police practices.

47.    Deputy Clark aid that he reached into the vehicle and attempted to wrap his right arm around Mr. Assiff's upper torso, but Mr. Assiff pulled his upper body back into the passenger seat and as a result, his right arm slid up around Mr. Assiff's shoulders and neck.  Deputy Clark said he did not apply pressure to Mr. Assiff's neck or attempt to apply a carotid restraint hold.  Deputy Clark said he let go of Mr. Assiff's upper body and again tried to grab his left wrist and grabbed his hair in an attempt to pull him out of the vehicle.

    a.      Deputy Clark's actions were captured by Mr. Assiff's cell phone video.



---

[22] POST LD 20 at 3-5 (Version 3.2 2005) and POST LD 20 at 4-7 (Version 5.4 2021).

b.    While Deputy Clark claims he immediately released his neck hold, it appears that Deputy Clark pulled Mr. Assiff from the vehicle by use of his neck hold.

c.    The use of a neck hold in these circumstances is excessive, objectively unreasonable and inconsistent with generally accepted police practices.

### Conclusion

48.    I am aware that discovery is ongoing in this matter and depositions are pending for the involved deputies.  If I receive additional material, I will make a supplemental report.


I declare under penalty of perjury that the foregoing is true and correct. Executed at Rancho Santa Margarita, CA.

Jeffrey J. Noble                                              Date 5/10/23

# JEFFREY J. NOBLE

Rancho Santa Margarita, CA 92688

Telephone: (949) 279-4678
*Email:* jeffnoble@cox.net
www.policeconduct.net

## EXPERIENCE

*CONSULTANT/EXPERT WITNESS* (2005 – Present)

Provide consulting and expert witness services on a wide range of law enforcement and personnel issues including misconduct, corruption, use of force, workplace harassment, pursuits, police administration, training, police operations, criminal and administrative investigations, interviews and interrogations, civil rights violations, police procedures, and investigations.

*FEDERAL COURT APPOINTED MONITOR*

Santa Clara, California, Sheriff's Department (March 2019 – present)

Review of policies, procedures and use of force applications in the Santa Clara County Jails as part of a federal court consent decree in the matter of *Chavez v. County of Santa Clara.*

*DEPUTY CHIEF OF POLICE* (April 2014 – January 2015)

Westminster Police Department, California
(Sworn 87; Civilian – 40; Population- 91,377; 10 sq. mi.)

Served as an interim Deputy Chief of Police to review Internal Affairs, auditing processes, department policies and procedures, risk management and to facilitate the efforts of a new external oversight agency.

*DEPUTY CHIEF OF POLICE* (September 1984 – July 2012)

Irvine Police Department, California
(Sworn – 205, Civilian – 100; Population: 217,000; 70 sq. mi.)

Served as a Patrol Officer, Narcotics Detective, Traffic Detective, Training Sergeant, SWAT sergeant and Commander, Internal Affairs, Sergeant, Lieutenant, Commander and Deputy Chief of Police.  As the Deputy Chief of Police, I was responsible for all operations of the Irvine Police Department including Patrol, Traffic and Investigations.

# JEFFREY J NOBLE

## EDUCATION

*Western State University, College of Law* (Irvine, California)
J.D. *with honors*, 1993.
Assistant Editor, Consumer Law Journal.  California State Bar, 1994, #170911.

*California State University at Long Beach*
B.A. Criminal Justice, 1989

*Senior Management Institute for Police*
Police Executive Research Forum.  Boston University, Boston, Massachusetts, 2002

## PUBLICATIONS

### Books:

Stoughton, S., Noble, J. and G. Alpert, *Evaluating Police Uses of Force*, New York University Press (2020).

Noble, J., and G. Alpert, *Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight*.  Prospect Heights, IL. Waveland Press (2008).

### Book Chapters:

Alpert, G., J. Noble and J. Rojek, *Solidarity and the Code of Silence,* Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).

Noble, J., and G. Alpert, *State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?* (Updated) Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).

Noble, J., and G. Alpert, *State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?* Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Sixth Edition (2009).

# JEFFREY J NOBLE

*Articles:*

Stoughton, S., Noble, J., and Alpert, G., *How to Actually Fix America's Police*, The Atlantic (June 2020)

Stoughton, S., Noble, J., and Alpert, G., *George Floyd's death shows exactly what police should not do,* The Washington Post (May 29, 2020)

Stoughton, S., Alpert, G. and Noble, J., *Why Police Need Constructive Criticism*, The Atlantic (December 23, 2015)  http://www.theatlantic.com/politics/archive/2015/12/officer-porter-mistrial-police-culture/421656/

Stoughton, S., Noble, J. and Alpert G., *Better Information is the Key to Policing Reform,* The Atlantic, (September 24, 2015) http://www.theatlantic.com/politics/archive/2015/09/better-information-is-the-key-to-policing-reform/406696/

Noble, J., *Rethinking Tactical Team Warrant Entries*, The Tactical Edge (Summer 2014).

Noble, J. *Assessing Police Discretion,* The Journal of California Law Enforcement (Vol. 47, No. 4, 2013).

Noble, J. and G. Alpert, *Criminal Interrogations of Police Officers After Use-of-Force Incidents,* FBI Law Enforcement Bulletin (September 2013).

Noble, J. and G. Alpert, *What Do We Really Know About American Policing?* The Journal of California Law Enforcement (Vol. 47, No. 1, 2013).

Noble, J., *Do I Need A SWAT Team?  Threat Assessments for Warrant Services*, The Tactical Edge (Winter 2013).

Alpert, G., J. Rojek and J. Noble, *The Cognitive Interview in Policing: Negotiating Control.* ARC Centre of Excellence in Policing and Security: Briefing Paper, Australian Government Research Council (June 2012).

Noble, J. and G. Alpert, *Evaluating the Quality of Law Enforcement Investigations: Standards for Differentiating the Excellent, Good and Reasonable, From the Unacceptable.* The Journal of California Law Enforcement (Vol. 46, No. 1, 2012)

Noble, J., *Police Explorers: Protecting a Valued Asset.* The Journal of California Law Enforcement (Vol. 45, No. 3, 2011).

Noble, J., and G. Alpert, *Lies, True Lies and Conscious Deception: Police Officers and the Truth.* Police Quarterly, Volume 12, Number 2 (June 2009).

Noble, J., Assessing *Witness Credibility.*  International Association of Chiefs of Police, Training Key #597 (2006).

Noble, J., Albertsons *Homicide: An Active "Shooter" Response*, The Tactical Edge (Fall 2004).

Noble, J., Police *Officer Truthfulness and the <u>Brady</u> Decision*, Police Chief Magazine (October 2003).

Noble, J., *The Boomerang Employee – What to do When a Fired Employee Comes Back*, The Journal of California Law Enforcement (Volume 37, No. 1, 2003).

Noble, J., Why *Appearance Matters*, Network – California Peace Officers' Association Newsletter (August 2001).

# JEFFREY J NOBLE

Noble, J., *Tactical Team Basics: Warrants*, The Tactical Edge (Summer 2000).

Noble, J., Encouraging *Interaction*, Minnesota Cities Magazine (Volume 84, Issue 11, November 1999).

Noble, J., *Neighborhood Watch Evolves Into Community Engagement Tool in Irvine*, Community Policing Consortium.  www.communitypolicing.org/publications/artbytop/w6/w6noble.htm (October 1999).

Noble, J., Childhood Experiences Find a Place in Today's Public-Safety Strategies, Community Links (Ph. VI, No.3, Issue 9 - Summer 1999).

Noble, J., *Police Pursuits: Law Enforcement or Public Safety?* The Journal of California Law Enforcement (Volume 33, No.1, 1999).

Noble, J., *Alternative Work Schedules can be an Evolution of Team Policing*, Network - California Peace Officers' Association Newsletter (December 1998).

Noble, J., *Continuing Police Training: The Interactive Multimedia Approach*, The Journal of California Law Enforcement (Volume 29, No.1, 1995).

Noble, J., *Environmental Advertising Claims: "Ozone Friendly"* Consumer Protection, 2 W. St. U. Consumer L.J. 95 (1993).

## SELECTED PROFESSIONAL ACTIVITIES

*Peer Review* – Law Enforcement Dog Encounters Training Toolkit for Law Enforcement, DOJ, Office of Community Oriented Policing Services, COPS, (December 2018)

*Presenter* – Developing or Revitalizing an Internal Affairs Unit.  Public Agency Training Council: Internal Affairs Conference (December 2014)

*Presenter* – Addressing Police Misconduct: Standards to Consider.  The International Association of Chiefs of Police Annual Conference (October 2014).

*Presenter* – Reducing Traffic-Related Officer Injuries and Deaths.  The International Association of Chiefs of Police Annual Conference in Orlando, Florida (October 2014).

*Participant* – Reducing Violence and Improving the Rule of Law: Organized Crime, Marginalized Communities, and the Political Machine.  Carnegie Endowment for International Peace. Washington, D.C. (September 2014)

*Presenter* – Preventing Corruption in Police Institutions.  Police Accountability in Democracies: First International Congress on Police Internal Affairs. Los Cabos, Baja California Sur, Mexico (October 2013).

*Presenter* – Testilying: Lies, True Lies, and Conscious Deception: Police Officers' Truth and the Brady Decision. American Psychological Association Annual Conference in Honolulu, Hawaii (July 2013).

*Presenter* – Police Misconduct Issues: Police Explorers and Reasonableness of Internal Affairs Investigations, The International Association of Chiefs of Police Annual Conference in San Diego, California (October 2012).

*Peer Review* – Building and Enhancing Criminal Justice Researcher-Practioner Partnerships, National Institute of Justice (June 2012).

*Committee Chairperson* – California Peace Officers' Association Communications Sub-Committee.

# JEFFREY J NOBLE

Responsible for publication of the Journal of California Law Enforcement (Jan. 2012 – present)

*Presenter* – The Lying Police Officer: Is Any Deception Acceptable?  With Karen Kruger.   The International Association of Chiefs of Police Annual Conference in Denver, Colorado (Nov. 2009).

*Presenter* – State-Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?  The Academy of Criminal Justice Sciences Annual Meeting in Boston, Massachusetts. (March 2009).

*Committee Chairperson* – Major Cities Chiefs of Police Task Force in Internal Affairs. Los Angeles, California (2005-2008).

*Peer Review* – Boston Police Department: Enhancing Cultures of Integrity Technical Assistance Guide, Office of Community Oriented Policing Services #TDL 2008-371 (July 2008)

*Peer Review* – Undocumented Immigrants in U.S./Mexico Border Counties: The Cost of Law Enforcement and Criminal Justice Services, National Institute of Justice #TDL 2008- 321 (December 2007).

*Presenter* – Truth or Consequences: Dealing with the Deceitful Police Officer, with Jeffrey Schlanger and Michael Stone, The International Association of Chiefs of Police Annual Conference, Los Angeles, California (November 2004).

*Presenter* - Albertsons Homicide: An Active "Shooter" Response, The California Association of Tactical Officers Annual Conference, Palm Springs, California (September 2004).

*Presenter* – Boomerang Employees, COPS Conference, Washington, D.C. (2002).

## PROFESSIONAL AFFILIATIONS

*California Peace Officers' Association* – Chair, Communications Sub-Committee (2012 – 2018)
*Police Executive Research Forum*
*International Association of Chiefs of Police*
*National Tactical Officers' Association*
*Special Olympics Torch Run* Southern California Region, Assistant Director (1997 – 2012)

## CONSULTING/EXPERT WITNESS

2023   <u>Assiff v Los Angeles County Sheriff's Department</u> (Plaintiff) (Expert Report)
       Use of Force
       Thomas M. Ferlauto, 25201 Paseo de Alicia, Suite 270, Laguna Hills, CA  92653
2023   <u>Beltran v City of Austin</u> (Plaintiff) (Expert Report)
       David James, Edwards Law, 603 W 17th St., Austin, Texas 78701
2023   <u>Espericueta v. Riverside County</u> (Plaintiff) (Expert Report) (Deposition)
       Officer involved shooting
       Neil Gehlawat, Taylor & Ring, 1230 Rosecrans Ave., Suite 360, Manhattan Beach, CA 90266
2023   <u>Talley/Rodriguez v. City of Austin</u> (Plaintiff) (Expert Report)
       Use of Force

Updated May 10, 2023

# JEFFREY J NOBLE

Scott Hendler, Hendler Flores Law, 901 S. MoPac Expressway, Bldg. 1, Suite #300, Austin, Texas 78746

2023    Sparks v City of Seattle (Defense) (Expert Report)
Reasonable Policies
Tara Gillespie, Seattle City Attorney's Office, Civil Division – Torts Section, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104-7095

2023    Perez v City of Fontana (Plaintiff) (Expert Report)
Detention and Interrogation
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2023    Augustus v LAPD, (Plaintiff) (Expert Report) (Deposition)
High Risk Car Stop Tactics
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena, California 91103

2023    Goodale v. San Antonio, (Plaintiff) (Expert Report)
Officer Involved Shooting
Patrick Toscano, Toscano Law Firm, PC, 846 Culebra Rd. Suite 500, San Antonio, Texas 78201

2023    McLaughlin v. San Bernadino Sheriff's Department (Plaintiff) (Expert Report)
Officer Involved Shooting
Renée V. Masongsong, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367

2023    Parsa v. Lopinto (Plaintiff) (Expert Report) (Deposition)
Use of Force
Andrew C. Clarke, The Cochran Firm – Midsouth, One Commerce Square, Suite 1700, Memphis, Tennessee 38103

2023    Sanders v. Austin (Plaintiff) (Expert Report)
Use of Force
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2023    Armijo v. Adams County (Defense) (Expert Report)
Use of Force
Kerri A. Booth, Senior Litigation Attorney, Adams County Attorney's Office, 4430 South Adams County Parkway, 5th Floor, Suite C5000B, Brighton, CO 80601

2022    Rodrigue Armijo v. Adams County v. Long Beach (Plaintiff) (Deposition) (Trial)
Search and Control Hold Tactics
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2022    Bhandari v. National City (Plaintiff) (Expert Report) (Deposition)
Use of Force
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2022    Huerta v. County of Tulare (Plaintiff) (Expert Report) (Criminal Trial Testimony)
Arrest and use of force
Doug Rochen, ACTS Law, 16001 Venture Blvd., Suite 200, Encino, CA 91436

# JEFFREY J NOBLE

2022  <u>Bahadoran v. City of New York</u> (Plaintiff) (Expert Report)
  Officer Involved Shooting
  Jonathan Abady, Emery, Celli, Brinckerhoff, Abady, Ward & Maazel, LLP, 600 Fifth Avenue at Rockefeller Center, 10th Floor, New York, NY 10020

2022  <u>Underwood v. Austin</u> (Plaintiff) (Expert Report)
  Use of Force
  Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2022  <u>People v. Simmonds</u> (Prosecution) (Grand Jury Testimony)
  Officer Involved Shooting
  Anti-Corruption & Civil Rights Division, Office of the Fulton County District Attorney, Atlanta Judicial Circuit, 136 Pryor Street SW| 3rd Floor, Atlanta, GA  30303

2022  <u>Harder v. City of Seattle</u> (Defense) (Expert Report)
  Allegation of vehicle pursuit
  Tara Gillespie, Seattle City Attorney's Office, Civil Division – Torts Section, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104-7095

2022  <u>Womble v. City of Durham</u> (Defense) (Expert Report)
  Allegation of False Conviction
  Henry Sappenfield, Kenon Cracer, PLLC, 4011 University Drive, Suite 300, Durham, NC 27717

2022  <u>Oshan v. District of Columbia</u>, (Plaintiff) (Expert Report)
  Vehicle Pursuit
  Patrick Regan, Regan Zambri & Long, PLLC, 1919 M Street, N.W., Suite 350, Washington, DC 20036

2022  <u>Denk v. City of Peoria, AZ</u> (Defense) (Expert Report)
  Officer Involved Shooting
  Amanda C. Sheridan, Senior Assistant City Attorney, Civil Litigation, City of Peoria, City Attorney's Office, 8401 Monroe Street, Suite 280, Peoria, AZ 85345

2022  <u>State of Missouri v. Prichard and Brummett</u> (Prosecution) (Deposition)
  Dion Sankar, Chief Deputy Prosecutor, Jackson County Prosecutor's Office, 415 E 12th Street Kansas City, Missouri 64106

2022  <u>Ong v. City of Beverly Hills</u> (Plaintiff) (Deposition)
  Traffic Control
  Stephen Johnson, Berglund and Johnson Law Group, 21550 Oxnard, Suite 900, Woodland Hills, CA 91367

2022  <u>Kelley v. City of San Marcos, TX</u>, (Plaintiff) (Expert Report)
  Use of Force
  Rebecca Webber, Hendler Flores Law, 901 S. MoPac Expressway, Building 1, Suite 300, Austin, TX 78746

2022  <u>Zelaya (Juarez Cedillo) v. LAPD</u> (Plaintiff) (Expert Witness) (Deposition)
  Use of Force
  Miguel Flores, Carrillo Law Firm, LLP, 1499 Huntington Drive, Suite 402, South Pasadena, CA

2022  <u>Cullinan v. LAPD</u>, (Plaintiff) (Expert Report) (Deposition)

# JEFFREY J NOBLE

Use of Force
Peter M. Williamson, Williamson Law Firm, 3200 Foothill Drive, Suite 4, Westlake Village, CA 91361

2022    Jane AM v. LAPD, (Plaintiff) (Expert Report) (Deposition) (Trial)
Detention and Use of Force
Laura Jimenez, Carrillo Law Firm, LLP, 1499 Huntington Drive, Suite 402, South Pasadena, CA 91030

2022    People v. Reynolds, Crestview, FL, (State) (Grand Jury)
Use of Force
Michelle G. Sandler, Assistant State Attorney, Felony Supervisor – Fort Walton Beach Office, 1804 Lewis Turner Boulevard, Fort Walton Beach, FL 32547

2022    Aden v. City of Bloomington, (Plaintiff) (Expert Report)
Officer Involved Shooting
Eva Rodelius, Wilson Law Group, 3019 Minnehaha Ave, Minneapolis, MN 55406

2022    Jackson v. Nassau County, (Plaintiff) (Expert Report) (Deposition)
Allegation of wrongful conviction
Gabriel P. Harvis, Esq., Elefterakis, Elefterakis & Panek, 80 Pine Street, 38th Floor, New York, New York 10005

2022    Baugus v. Newton (Morrow County Sheriff's Department, Ohio), (Plaintiff) (Expert Report)
Creation of danger that led to death
Connie Gadell-Newton, Fitrakis & Gadell-Newton, LLC, 100 E. Main Street, Columbus, OH 43215

2022    Rios v. LAPD, (Plaintiff) (Expert Report)
High-Risk Car Stop
Toni Jaramilla, 1900 Avenue of the Stars, Suite 900, Los Angeles, CA 90067

2022    Sloan v. Anderson County Sheriff, SC, (Plaintiff) (Expert Report)
Officer Involved Shooting
Joshua Snow Kendrick, Kendrick & Leonard, P.C., 506 Pettigru Street, Greenville, SC 29601

2022    Jones v. Dupage County Sheriff's Office, (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Patrick R. Moran, Rock Fusco & Connelly, LLC, 321 N. Clark Street, Suite 2200, Chicago, Illinois 60654

2022    Brown v. Turbyfill (Spotsylvania County Sheriff's Department, VA), (Plaintiff) (Expert Report)
Officer Involved Shooting
Mark J. Krudys, The Krudys Law Firm, PLC, Truist Place, 919 East Main Street, Suite 2020, Richmond, VA 23219

2022    Cruz v. Riverside County Sheriff's Department, (Plaintiff) (Expert Report) (Deposition)
Use of Force
Steven Lerman, Steven A. Lerman and Associates, LLC, 6033 West Century Blvd., Suite 740 Los Angeles, CA 90045

2022    Yancy v. Tillman, Clayton County Police, GA, (Plaintiff) (Expert Report)

Updated May 10, 2023

# JEFFREY J NOBLE

Entry and Use of Force
Tanya F. Miller, DUBOSE MILLER, LLC, 75 14th Street NE, Suite 2110, Atlanta, GA 30309

2022 Penny v. LAPD, (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Shaleen Shanbhag, Hadsell, Stormer, Renick Dai LLP, 128 N. Fair Oaks Ave., Pasadena, California 91103

2022 Herrera v. Austin, (Plaintiff) (Expert Report)
Use of force during demonstration
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2022 Barragan v. LAPD, (Plaintiff) (Expert Report)
Positional Asphyxia
Dominique Boubion, Carrillo Law Firm, 1499 Huntington Drive, Suite 402, South Pasadena, CA 91030

2022 Sen v. Los Angeles, (Plaintiff) (Expert Report) (Deposition)
High-Risk Car Stop Tactics
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena, California 91103

2022 Ibarra v. Lee (Rogers County, OK), (Plaintiff) (Expert Report) (Deposition)
Officer involved Shooting
Dale Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2022 Tate v. Chicago (Defense) (Expert Report)
Monell Allegations
Marion C. Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2022 Lunneen v. Berrien Springs (Plaintiff) (Expert Report)
Use of Force
Noah W. Drew, Spence Lawyers, 15 S. Jackson Street, Jackson, WY 83001

2021 Carr v San Diego County Sheriff (Plaintiff) (Expert Report) (Deposition)
Use of Force
Joseph M. McMullen, Law Offices of Joseph M. McMullen, 501 W. Broadway, Suite 1510, San Diego, CA 92101

2021 Mountford v. City of Santa Monica (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Jeremy D. Jass, 4340 Von Karman Avenue, Suite 100, Newport Beach, CA 92660

2021 State v. Dagas (Prosecution) (Trial Testimony)
Allegation of False Police Report
Judy Taschner, Deputy District Attorney, Special Operations Division, San Diego County District Attorney's Office, East County Regional Center, 250 E. Main Street, El Cajon, CA 92020

2021 Stickney v. City of Phoenix (Defense) (Expert Report)

Updated May 10, 2023

# JEFFREY J NOBLE

Use of Force
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021 <u>Evans v City of Austin</u> (Plaintiff) (Expert Report)
Use of Force
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2021 <u>Rennells v. Kenealy</u> (Plaintiff) (Expert Report)
Use of Force
James End, First, Albrecht & Blondis, 158 N. Broadway, Suite 600 Milwaukee, WI 53202

2021 <u>Johnson v Baltimore</u> (Defense) (Expert Report)
*Monell* Allegations
Kara K. Lynch, Chief Solicitor, Baltimore City Department of Law, 100 N. Holliday Street, Room 101, Baltimore, Maryland 21202

2021 <u>Brown v City of Chicago</u> (Defense) (Expert Report) (Deposition)
*Monell* Allegations
Dan Nolan, Reiter-Burns, 311 S. Wacker, 5200, Chicago, IL 60606

2021 <u>Gonzalez v. CHP</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force
Dale Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2021 <u>Baney v City of Chapin</u> (Plaintiff) (Expert Report)
Use of Force
Joshua Snow Kendrick, Kendrick & Leonard, 1522 Lady Street, Columbia, SC 29201

2021 <u>Washington v City of Chapin</u> (Plaintiff) (Expert Report)
Use of Force
Joshua Snow Kendrick, Kendrick & Leonard, 1522 Lady Street, Columbia, SC 29201

2021 <u>King v. Fontana</u> (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Hang Le, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2021 <u>Harbin v. City of Breckenridge Hills, Missouri</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force
Javad Khazaeli, Khazaeli Wyrsch LLC, 911 Washington Ave, Suite 211, St. Louis, MO 63101

2021 <u>Green v St. Louis</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Javad Khazaeli, Khazaeli Wyrsch LLC, 911 Washington Ave, Suite 211, St. Louis, MO 63101

2021 <u>Debeaubien v CHP</u> (Plaintiff) (Expert Report) (Deposition)
Failure to Investigate
Stewart Katz, 555 University Avenue, Suite 270, Sacramento, CA 95825

2021 <u>Love v. Chicago</u> (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Marion C. Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law

## JEFFREY J NOBLE

Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2021  Groom v Paso Robles (Plaintiff) (Expert Report)
Sexual assault by police officer
Neda Lotfi, Taylor & Ring, 1230 Rosecrans Avenue, Suite 360, Manhattan Beach, CA 90266

2021  Barrera v. City of Woodland (Plaintiff) (Expert Report) (Deposition)
Use of Force
Neil Gehlawat, Taylor & Ring, 1230 Rosecrans Avenue, Suite 360, Manhattan Beach, CA 90266

2021  Shorter v. City of Greenville, MS (Plaintiff) (Expert Report)
Officer Involved Shooting
Tiffany Wright, Co-Director, Human and Civil Rights Clinic, Howard University School of Law

2021  Andrich v. City of Phoenix (Defense) (Expert Report)
Officer Involved Shooting
Christina Retts, Wieneke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021  Monk v. Gulick (Chesterfield, VA), (Plaintiff) (Expert Report)
Use of Force
Thomas Johnson, Bricker, Anderson & Johnson, 411 East Franklin Street, Suite 504, Richmond, VA 23219

2021  Hernandez v. City of Los Angeles (Plaintiff) (Expert Report)
Officer Involved Shooting
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2021  Garten v. City of Costa Mesa, (Plaintiff) (Expert Report) (Deposition)
Detention and search.
Richard Herman, Law Office of Richard P. Herman, P. O. Box 53114, Irvine, California 92619-3114

2021  Harris v. City of Phoenix, (Defense) (Expert Report)
Officer Involved Shooting
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021  Gagliani v. Lexington County Sheriff, SC, (Plaintiff) (Expert Report) (Deposition)
Use of Force
Eric Cavanaugh, Cavanaugh & Thickens, LLC, 1717 Marion St, Columbia, SC 29201

2021  Torres v. City of Cheyenne, WY (Plaintiff) (Expert Report)
Use of Force
Thomas B. Jubin, Jubin & Zerga, LLC., 2614 Pioneer Avenue, P.O. Box 943, Cheyenne, Wyoming 8203-0943

2021  Velez v. City of Sacramento, (Plaintiff) (Expert Report)
Officer Involved Shooting
Stewart Katz, 555 University Avenue, Suite 270, Sacramento, CA 95825

2021  Mojarrad v.  Edwards, City of Raleigh, NC, (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Cate Edwards, Edwards Kirby, 3201 Glenwood Avenue, Suite 100, Raleigh, North Carolina 27612

# JEFFREY J NOBLE

2021   <u>Pope v. Hill</u>, (Plaintiff) (Deposition)
Pursuit
Bart Turner, Savage, Turner, Durham, Pinckney & Savage, 102 East Liberty Street, Eight Floor (31401), PO Box 10600, Savannah, GA 31412

2021   <u>Rightsell v. Indiana State Police</u>, (Plaintiff) (Expert Report)
Officer Involved Shooting
Bruce Kehoe, Wilson Kehoe Winingham, 859 N Meridian St, Indianapolis, IN 46208

2021   <u>Mendez v City of Chicago</u>, (Defense) (Expert Report) (Deposition)
Monell Allegation
Marion Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law, Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2021   <u>Helvie v Jenkins (Adams County Sheriff, CO.)</u>, (Defense) (Expert Report)
Use of Force
Kerri A. Booth, Adams County Attorney's Office, 4430 South Adams County Pkwy., 5th Floor, Suite C5000B, Brighton, CO 80601

2021   <u>State of Minnesota v. Chauvin</u> (State) (Expert Report)
Use of Force
Steve Schlescher, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101

2021   <u>Humphrey v. Friar (City of Millington, TN)</u>, (Plaintiff) (Expert Report) (Deposition)
Sexual Misconduct
Andrew C. Clarke, The Cochran Firm – Midsouth, One Commerce Square, Suite 1700, Memphis, Tennessee 38103

2021   <u>Skommesa v. City of Murrieta</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force
Michael R. Marrinan, Law Office of Michael R. Marrinan, 501 W. Broadway, Suite 1510 San Diego, CA. 92101

2021   <u>Dominguez v. City of Escondido</u> (Defense) (Expert Report)
Use of Force
Keith Phillips, Assistant City Attorney, City Attorney's Office, City of Escondido, 201 N. Broadway, Escondido, CA 92025

2021   <u>Brown v. Ontario</u> (Defense) (Expert Report)
Use of Force
Daniel S. Roberts, Cole Huber LLP, 3401 Centrelake Dr., Ste. 670, Ontario, CA  91761

2021   <u>Galloway v. Nassau County Police</u> (Plaintiff) (Expert Report) (Deposition)
Allegation of wrongful conviction
Gabriel P. Harvis, Elefterakis, Elefterakis & Panek, 80 Pine Street, 38th Floor, New York, New York 10005

2021   <u>Richards v. Las Vegas Metropolitan Police</u> (Plaintiff) (Expert Report)
Officer involved shooting
E. Brent Bryson, 32302 West Charleston Blvd., Las Vegas, NV 89102

# JEFFREY J NOBLE

2021   <u>Hall v. City of Atlanta</u> (Plaintiff) (Expert Report) (Deposition)
Monell Allegation
Shean Williams, The Cochran Firm, 100 Peachtree Street NW, Suite 2600, Atlanta, Georgia, 30303

2021   <u>Drew v. Irby, Fauquier County Sheriff, VA</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force, Arrest
Victor M. Glasberg, 121 S. Columbus Street, Alexandria, VA 22314

2021   <u>Alves v. Riverside County Sheriff's Department</u> (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2020   <u>VanGilder v. McClean and Beale</u> (Plaintiff) (Expert Report)
Failure to Render Medical Assistance
Mark J. Krudys, The Krudys Law Firm, PLC, SunTrust Center, 919 East Main Street, Suite 2020, Richmond, VA  23219

2020   <u>Hood/Washington v. Chicago</u> (Defense) (Expert Report) (Deposition)
Monell Allegations
George Yamin, The Sotos Law Firm, 550 East Devon Avenue, Suite 150, Itasca, IL 60143

2020   <u>Grabbingbear v. Europe</u> (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Donald Sisson, Elkus and Sissnon, PC, 7100 E. Belleview Ave., Suite 101, Greenwood Village, CO 80111

2020   <u>Thurman v. Spokane County Sheriff's Department</u> (Defense) (Expert Report)
Reasonableness of Internal Investigation
Michael Kitson, Lane Powell, 1420 5th Avenue, #4200, Seattle, WA 98101

2020   <u>Dew v. City of Seaside</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Karen C. Joynt, Joynt Law, 225 S. Lake Ave., Suite #300, Pasadena, CA 91101

2020   <u>Arnold v. City of Olathe, Kansas</u> (Plaintiff) (Expert Report) (Deposition)
Tactical Decision Making
Ryan J. Gavin, Kamykowski, Gavin & Smith, P.C., 222 S. Central Ave., Suite 1100, St. Louis, MO 63105

2020   <u>Scott and Johnson v. Detroit</u> (Plaintiff) (Expert Report)
Allegation of Wrongful Convictions
Nick Bourland, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, 600 Fifth Avenue, 10th Floor, New York, NY 10020

2020   <u>Chinaryan v. LAPD</u> (Plaintiff) (Expert Report) (Trial)
High-risk car stop
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2020   <u>Lisner v. Huntington Park</u> (Plaintiff) (Expert Report)

Updated May 10, 2023

# JEFFREY J NOBLE

Employment Action
Michael J. Grobaty, Murtaugh Treglia Stern & Deily LLP, 2603 Main Street, Penthouse, Irvine, CA 92614

2020   <u>Meadows v. Town of Rising Sun, MD</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Jeffrey Nusinov, Nusinov, Smith, LLP, 6225 Smith Avenue, Suite 200B, Baltimore, MD 21209

2020   <u>People v. Nelson (King County, Washington)</u> (People) (Expert Report)
Officer Involved Shooting
Kathy Van Olst, King County Prosecuting Attorney's Office, 516 Third Avenue, W400 Seattle, WA 98104

2020   <u>Mesa v. Leon Valley, Texas</u> (Plaintiff) (Expert Report)
Pursuit
Gene Toscanao, 846 Culebra Road, San Antonio, Texas 78201

2020   <u>Doe v. Charlotte Board of Education</u> (Defense) (Expert Report) (Deposition)
Police investigation
Lori Keeton, The Law Offices of Lori Keeton, 13850 Ballantyne Corporate Place, Suite 500, Charlotte, North Carolina 28277

2020   <u>Bisetti v. City of Austin</u> (Plaintiff) (Expert Report) (Deposition)
Arrest and Disciplinary Action
Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2020   <u>Amaral v. City of San Diego</u> (Plaintiff) (Expert Report) (Deposition)
Use of force
Gastone Bebi, 501 West Broadway, Suite 1340, San Diego, CA 92101

2020   <u>Baker v. Coburn and McHugh (Stratford, Texas)</u> (Plaintiff) (Expert Report)
Officer Involved-Shooting
Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2020   <u>Scott v. Charlotte</u> (Defense) (Deposition)
Officer Involved Shooting
Mark Newbold, Deputy City Attorney, Charlotte-Mecklenburg, 601 E. Trade Street Charlotte, NC 28202

2020   <u>Dudley v. City of Kinston</u> (Plaintiff) (Expert Report) (Deposition)
Allegation of Wrongful Conviction
David Rudolf, Rudolf-Widenhouse, 225 East Worthington Ave., Suite 100, Charlotte, NC 28203

2020   <u>Taylor v. Los Angeles County Sheriff's Department</u> (Plaintiff) (Expert Report)
Internal Investigation, Failure to Render Medical Aid
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2020   <u>McBean v. Peraza</u> (Plaintiff)
Officer Involved Shooting
David I. Schoen, 2800 Zelda Road, Suite 100-6, Montgomery, Alabama  36106

2020   <u>Hayes v. City of Portland</u> (Defense) (Expert Report) (Deposition)
Officer Involved Shooting

Updated May 10, 2023

# JEFFREY J NOBLE

Bill Manlove, Portland Office of the City Attorney, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2020    Eatherton v. County of Riverside (Plaintiff) (Expert Report)
Use of force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2020    Godifay v. King County, WA (Defense) (Expert Report)
Alleged police pursuit
Daniel L. Kinerk, King County Senior Deputy Prosecuting Attorney, 900 King County Administration Building, 500 Fourth Avenue, Seattle, WA 98104-2316

2020    Doxator v. O'Brien, Green Bay Police Department (Plaintiff) (Expert Report) (Deposition)
Use of Force
Forrest K. Tahdooahnippah, Dorsey & Whitney, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402

2020    Krechmery v. City of Ontario (Plaintiff) (Expert Report)
Use of Force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2019    Taylor v. Seattle, (Defense) (Expert Report)
Officer Involved Shooting
Ghazal Sharifi, Seattle City Attorney's Office, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104

2019    Thomas v. County of Sacramento (Plaintiff) (Expert Report)
Officer Involved Shooting
Stewart Katz, 555 University Avenue, Suite 270, Sacramento, CA 95825

2019    Elifritz v. City of Portland, (Defense) (Expert Report)
Monell allegation
Naomi Sheffield, Deputy City Attorney, Portland Officer of the City Attorney, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2019    People v. Krichovich and LaCerra (Broward County, FLA) (State) (Deposition) (Trial)
Use of Force
Christopher Killoran, Assistant State Attorney, Seventeenth Judicial Circuit of Florida
Broward County Courthouse, 201 S.E. Sixth Street, Fort Lauderdale, FL 33301-3360

2019    Wilson v. City of Mission, TX (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Victor Rodriguez, 121 North 10th Street, McAllen, TX 78501

2019    Davis v. Waller (Georgia Bureau of Investigations) (Defense) (Expert Report)
Officer Involved Shooting
Ron Stay, Assistant Attorney General, Georgia Department of Law, 40 Capitol Square SW, Atlanta, Georgia

2019    Yatsko v. Graziolli (Cleveland Police Department) (Plaintiff) (Expert Report)
Officer Involved-Shooting
Jeremy Tor, Spangenberg, Shibley & Liber, 1001 Lakeside Ave. East, Suite 1700, Cleveland, OH 44114

Updated May 10, 2023

## JEFFREY J NOBLE

2019    Contreras v. City of Granger, WA (Plaintiff) (Expert Report)
Employment
Aaron V. Rocke, Rocke Law Group, PLLC, 101 Yesler Way, Suite 603, Seattle, WA 98104

2019    Doolittle v. Hickory, N.C. (Plaintiff) (Expert Report) (Deposition)
Use of Force
Paul Tharpe, Arnold & Smith, 200 North McDowell Street, Charlotte, NC 28204

2019    Slater v State of Arizona Department of Game and Fish (Defense) (Expert Report)
Use of Force
Timothy Watson, Assistant Attorney General, Liability Management Section, 2005 N. Central Ave., Ste. 100, Phoenix, AZ  85004

2019    Howard v. City of Durham, NC (Defense) (Expert Report) (Deposition) (Trial)
Allegation of Wrongful Conviction
J. Nicholas Ellis, Poyner Spruill, 130 S. Franklin, Rocky Mount, NC 27804

2019    Tate v. City of Seattle (Defense) (Expert Report)
Detention and Use of Force
Ghazal Sharifi, Seattle City Attorney's Office, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104

2019    McNally v. San Diego (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Mike Marrinan, 501 W. Broadway, Suite 1510, San Diego, CA 92101

2019    Godinez v. Chicago (Defense) (Expert Report)
Monell allegation
Avi Kamionski, Nathan and Kamionski, LLP, 140 S. Dearborn, Suite 1510, Chicago, IL 60603

2019    Shortridge v. City of Arvada, CO (Defense) (Expert Report)
Use of Force
Julie Richards, Senior Assistant City Attorney, City Attorney's Office, 8101 Ralston Road Arvada, CO 80002

2019    Dunn v. City of Seattle (Defense) (Expert Report)
Violent Persons File – NCIC
Brian Esler, Miller, Nash, Graham & Dunn, LLP, 2801 Alaskan Way, Suite 300, Seattle, WA 98121

2019    Heard v. City and County of Denver (Defense) (Expert Report)
Use of Force
Michele Horn, City and County of Denver, City Attorney's Office, 201 W. Colfax Ave., Dept 1108, Denver, CO 80202

2019    Windle v. State of Indiana (Plaintiff) (Expert Report) (Deposition)
Use of Force
Zaki Ali, 522 West 8th Street, Anderson, Indiana 46016

2019    Wisdom v. County of Nassau (Plaintiff) (Expert Report)
Allegation of False Arrest
Gabriel Harvis, Elefterakis, Elefterakis & Panek, 80 Pine Street, 38th Floor, New York, New York 10005

# JEFFREY J NOBLE

2019   Castaway v. City of Denver (Defense) (Expert Report)
       Officer Involved-Shooting
       Wendy Shea, City and County of Denver, City Attorney's Office, 201 W. Colfax Ave., Dept 1108, Denver, CO 80202

2019   Mosquera v. City of San Gabriel (Plaintiff) (Expert Report)
       Identification Procedures
       John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2019   Harper v. Zoelling (Snohomish County Sheriff's Department), (Plaintiff) (Expert Report) (Deposition)
       Police Practices
       Jeff Kallis, Kallis Law, 321 High School Rd., Suite D3, Bainbridge Island, WA 98110

2019   Elmansoury v. Garden Grove (Plaintiff) (Expert Report) (Deposition)
       Use of Force
       Jeremy Jass, Jass Law, 4510 E. Pacific Coast Hwy., Suite 400, Long Beach, CA 90804

2019   Lee v. San Diego (Plaintiff) (Expert Report) (Deposition)
       Use of Force
       Mike Marrinan, 501 W. Broadway, Suite 1510, San Diego, CA 92101

2019   Kubiak v. City of Chicago (Defense) (Expert Report) (Deposition)
       Allegation of code of silence
       David Seery, Deputy Corporation Counsel, Administration, City of Chicago, Department of Law 121 N. LaSalle Street, Room 600, Chicago, Illinois 60602

2019   People v Krook (Prosecutor) (Grand Jury Testimony) (Trial)
       Officer Involved Shooting
       Richard Dusterhoft, Office of the Ramsey County Attorney, Criminal Division Director

2019   Roque v. Austin (Plaintiff) (Expert Report)
       Officer Involved Shooting
       Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2019   Green v Lara (Plaintiff) (Expert Report) (Deposition)
       Officer Involved Shooting
       Victor Rodriguez, 121 North 10th Street, McAllen, TX 78501

2018   Estate of McIntosh v. City of Chicago (Defendant) (Expert Report) (Deposition)
       *Monell* Allegations
       Patrick R. Moran, Rock Fusco & Connelly, LLC, 321 North Clark Street Suite 2200, Chicago, Ill 60610

2018   Delacruz v. City of Port Arthur, TX (Plaintiff) (Expert Report)
       Use of Force
       Mo Aziz, Abraham, Watkins, Nichols, Sorrels, Agosto & Aziz, 800 Commerce, Houston, TX 77002

2018   Westfall v. Luna (Southlake PD, TX) (Plaintiff) (Expert Report) (Deposition) (Trial)
       Use of Force

## JEFFREY J NOBLE

Grant Schmidt, Winston & Strawn, 2121 N. Pearl, Suite 900, Dallas, TX 75201

2018  Lyles v. Seattle (Defense) (Expert Report)
Officer Involved Shooting
Ghazal Sharifi, Seattle City Attorney's Office, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104

2018  Le v. King County (WA) (Defense) (Expert Report)
Officer Involved Shooting
Dan Kinerk, King County Prosecuting Attorney's Office, 500 Fourth Avenue, Seattle, WA

2018  Sweet v. City of Mesa, AZ (Defense) (Expert Report) (Deposition)
Reasonableness of tactics
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2018  Collins v. San Diego County (Plaintiff) (Expert Report) (Trial)
Reasonableness of Detention and arrest
Elizabeth Teixeira, Law Offices of Robert Vaage, 110 West "A" Street, Suite 1075, San Diego, CA 9201

2018  Ballew v. City of Pasadena (Plaintiff) (Expert Report)
Use of Force
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2018  Valverde v. City of Denver (Defense) (Expert Report)
Officer Involved Shooting
Michele Horn, Assistant City Attorney, Civil Litigation Section, City and County of Denver

2018  Port Authority Police Benevolent Association v. The Port Authority of New York and New Jersey (Defense) (Expert Report) (Arbitration Testimony)
Contract Dispute
Jason Stanevich, Littler, 265 Church Street, Suite 300, New Haven, CT 06510

2018  Smith v. Chicago (Defense) (Expert Report)
Policies and practices
Dan Nolan, Reiter-Burns, 311 S. Wacker, 5200, Chicago, IL 60606

2018  Carpenter v. Cleveland County Sheriff, N.C. (Plaintiff) (Expert Report) (Trial)
Officer Involved Shooting
Paul Tharp, Arnold & Smith, PLLC, 200 N. McDowell Street, Charlotte, NC 28204

2018  Courts v. Lee (Defense) (Deposition)
Traffic Collision
Jennifer Russel, Ford, Walker, Haggerty & Behar, One World Trade Center, 27th Floor, Long Beach, CA 90831

2018  Studdard v. Shelby County (TN) (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Daniel Seward, 4510 Chickasaw Road, Memphis, TN 38117

2018  Farmer/Milliner v. City of Chicago (Defense) (Expert Report)
Monell allegations
Raoul Mowatt, Chicago Law Department, 30 North LaSalle, 900, Chicago, IL 60602

Updated May 10, 2023

## JEFFREY J NOBLE

2018    <u>Milke v City of Phoenix</u> (Defense) (Expert Report) (Deposition)
        Allegation of wrongful conviction
        Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281
2018    <u>Kager v. Virginia Beach</u> (Plaintiff) (Expert Report) (Deposition) (Trial)
        Officer Involved shooting
        Ed Brady, Brady, Fischel & Daily, LLC, 721 Melvin Ave., Annapolis, MD 21401
2018    <u>Davis v. Chicago</u> (Defense) (Expert Report) (Trial)
        Employment
        Howard Levine, Chicago Law Department, 30 North LaSalle, 1020, Chicago, IL 60602
2018    <u>Williams v. King County, WA</u> (Defense) (Expert Report)
        Officer Involved Shooting
        Dan Kinerk, King County Prosecuting Attorney's Office, 500 Fourth Avenue, Seattle, WA
2018    <u>Faria v. McCarrick</u> (Plaintiff) (Expert Report) (Deposition)
        Wrongful Conviction
        Bevis Schock, 7777 Bonhomme Ave., 1300, St. Louis, MO 63105.
2018    <u>Zuniga v. CHP</u> (Plaintiff) (Deposition) (Trial)
        Arrest and Use of Force
        Dicks and Workman, 750 B Street, 2720 Symphony Towers, San Diego, CA 92101
2018    <u>Walker (Sanders) v. City of Independence, LA</u> (Plaintiff) (Expert Report)
        Pursuit
        Neile deGravelles, deGravelles & Palmintier, 618 Main Street, Baton Rouge, LA 70801
2018    <u>Espinoza v. City of Tracy</u> (Defense) (Expert Report)
        Reasonableness of Internal Affairs Procedures and Investigation
        Jesse Maddox, Liebert Cassidy Whitmore, 5250 N. Palm Avenue, Suite 310, Fresno, CA 93704
2018    <u>Luque-Villanueva v. County of San Diego</u> (Plaintiff) (Expert Report)
        Reasonableness of arrest
        Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660
2018    <u>Flores v. San Bernardino</u> (Plaintiff) (Expert Report) (Deposition)
        Officer Involved- Shooting
        Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 25201 Paseo de Alicia, Suite 270, Laguna Hills, CA 92653.  On May 10, 2023, I served the foregoing document(s) described as:

**DISCLOSURE OF EXPERT TESTIMONY**

[X]  **ELECTRONIC MAIL**: The foregoing document was served electronically without any errors noted at the email addresses stated below:

PATRICK E. STOCKALPER
MOLSHREE GUPTA
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

[X]  **BY MAIL AS FOLLOWS:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice the above described envelope(s) would be deposited with the US Postal Service on that same day with postage thereon fully prepaid at Laguna Hills, California in the ordinary course of business.

Executed on May 10, 2023, at Irvine, California.  I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

_____
Thomas M. Ferlauto