**EXHIBIT H**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSHUA ASSIFF,                          )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             ) Case No. 2:22-cv-05367
                                        )           RGK(MAAx)
COUNTY OF LOS ANGELES;                  )
SHERIFF DEPUTY BADGE                    )
NUMBER 404532; And DOES 1               )
through 10,                             )
                                        )
                    Defendants.         )
_____ )

Deposition of:      JOSHUA ASSIFF

Date and Time:      Friday, April 14, 2023
                    10:04 a.m.

Place:              841 Apollo Street
                    Suite 100
                    El Segundo, California

Reporter:           Dorothy M. Simpson, CSR
                    Certificate No. 14323

Case 2:22-cv-05367-RGK-MAA    Document 72-4    Filed 06/12/23    Page 3 of 20    Page ID #:3308
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   We're starting at about 24 seconds into the video.
 2            (Video playing.)
 3   BY MS. GUPTA:
 4        Q.   Okay.  So from about 24 seconds into the
 5   video to about 36 seconds into the video, you are having
 6   an exchange with Sgt. Kelly; is that accurate?
 7        A.   Yes.
 8        Q.   And during that exchange, you're trying to
 9   explain what you were trying to explain to me about
10   going to basketball practice.  Is that accurate?
11        A.   Yes.  Yes.
12        Q.   Okay.  And what was your intent in giving him
13   that information?
14        A.   Just let him know that I was on a time
15   crunch.  As you could see right then in the video, it's
16   7:53.  Antelope Valley is about 45 to 50 minutes away,
17   and I was trying to make it on time to practice about 15
18   minutes early.
19            At the point when I got pulled over, it 7:40.
20   So at the rate I was going, I would have been there
21   probably about 20 to 30 minutes early for practice.  So
22   that was my whole entire goal.
23        Q.   Got it.  So you weren't in the Antelope
24   Valley at the time of the traffic stop; correct?
25        A.   No, this is Canyon Country, ma'am.
```

Case 2:22-cv-05367-RGK-MAA    Document 72-4    Filed 06/12/23    Page 4 of 20    Page ID #:3309

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

```
 1       Q.    Okay.  And that's in Santa Clarita Valley;
 2  correct?
 3       A.    Yes, it is.
 4       THE REPORTER:  Okay.  You guys are going too fast.
 5       MS. GUPTA:  Sorry.
 6       THE WITNESS:  Sorry.
 7       THE REPORTER:  Okay.
 8  BY MS. GUPTA:
 9       Q.    And where you were in -- in the Exhibit C,
10  the video that we see, you said that was about 45
11  minutes to an hour away from Antelope Valley?
12       A.    Yes.
13       Q.    Okay.  And do you know how many -- how many
14  miles that is?
15       A.    No, I do not.
16       Q.    Okay.  It's about 50 miles; is that accurate?
17       A.    Around there.  50 to 55.  I'm not sure about
18  the -- the exact mileage.
19       MS. GUPTA: Got it.  Okay.  All right.  So right
20  around 35 seconds into the video, let's start there.
21  Okay?
22            (Video playing.)
23  BY MS. GUPTA:
24       Q.    Okay.  Would you agree with me around 35
25  seconds into the video, Sgt. Kelly makes a request for
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 5 of 20   Page ID #:3310
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   prior testimony.  Mischaracterizes the video.  Vague and
 2   ambiguous as to struggle.
 3   BY MS. GUPTA:
 4        Q.   We can we go back and read that question and
 5   answer I just asked you, that you continued to struggle
 6   with Sgt. Kelly for 16 seconds.
 7             And you agreed with me that that -- there was
 8   a struggle between you and Sgt. Kelly for 16 seconds.
 9   Is that accurate?
10        A.   Yes, ma'am.
11        Q.   What I am asking you is why did you continue
12   to struggle with Sgt. Kelly for about 16 seconds,
13   remaining in your vehicle until that second officer
14   arrived?
15             So just for that 16-second time period
16   between when you get pepper sprayed and a second officer
17   arrives on scene, why did you continue to struggle with
18   Sgt. Kelly during that time period?
19        A.   I was pepper sprayed in the face, and I felt
20   like I was being taken advantage of.
21        Q.   Okay.  So at that point --
22        A.   By a man with a -- sorry to interrupt you.
23   By a man with a gun and a badge.
24        Q.   So after you were pepper sprayed at
25   approximately one minute and 19 seconds into the video,
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 6 of 20   Page ID #:3311
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   were you consciously struggling with Sgt. Kelly?
 2        A.    Consciously or constantly?  Sorry.
 3        Q.    Consciously.
 4        A.    Consciously?
 5        Q.    Were you making a conscious decision to
 6   remain in your car, struggle with him, --
 7        A.    Yes.
 8        Q.    -- resist his efforts to get you out of the
 9   vehicle?
10        A.    Yes.
11        Q.    Okay.  And why were you continuing to do so?
12        A.    I didn't feel safe being removed from my
13   vehicle.
14        Q.    Okay.  At any point during the incident, did
15   you come to an understanding -- and I understand you got
16   pepper sprayed -- but did you perceive that another
17   officer had arrived on scene?
18        A.    Yes.  At one point I thought it was maybe
19   three officers to my recollection when I was thrown on
20   the ground.  I had no idea how many officers it was.  I
21   did have a recollection of another officer being there,
22   yes, but I had no idea how many it was.
23        Q.    Okay.
24        A.    There was too much going on with my senses.
25        Q.    That's completely understandable.
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 7 of 20   Page ID #:3312

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

```
 1            So you did not see any officers other than
 2   Sgt. Kelly but you did perceive that there were other
 3   officers?
 4       A.   I could perceive it, yes.  Yes.
 5       Q.   And could you perceive that you were
 6   struggling physically with more than one officer at some
 7   point during the incident?
 8       A.   Yes.
 9       Q.   Could you perceive that you were struggling
10   with at least three officers during the incident?
11       A.   Seemed like more than one person.  I -- I
12   don't.
13       Q.   More than --
14       A.   Two to three.
15       Q.   -- two to three?
16       A.   No -- no more than that, ma'am.
17       Q.   Perfect.  At any point during the incident,
18   do you know if you got tasered?
19       A.   I did.
20       Q.   And you felt it?
21       A.   Yes.
22       Q.   And do you know approximately how many times
23   you were tasered?
24       A.   I would have to watch the video.  I would say
25   maybe three, four times approximately.  I would have to
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 8 of 20   Page ID #:3313
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   watch the video to give you more of a accurate number.
 2        Q.    Sure.  And I'm just asking for your
 3   recollection.
 4        A.    I understand.
 5        Q.    And none of this is a quiz at all, so...
 6        A.    I understand.
 7        Q.    Okay.
 8        A.    Trying to give you the best answer that you
 9   are looking for.
10        Q.    And again, I'm just not -- I'm not looking
11   for anything beyond the truth.
12        A.    Exactly.
13        MS. GUPTA:  Okay.
14             (Video playing.)
15   BY MS. GUPTA:
16        Q.    Okay.  I'm sorry.  I apologize, I know that
17   that was difficult to watch for you.  But let me just
18   ask you a couple of questions.
19             So would you agree with me that starting at
20   about one -- one minute and 35 seconds into the video,
21   once the second officer joins the scene, there are now
22   two officers trying to pull you out of your vehicle.  Is
23   that accurate?
24        A.    Yes.
25        Q.    Okay.  And would you agree with me that
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 9 of 20   Page ID #:3314
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

1    starting at about 1.35 to about two minutes and 20

2    seconds into the video, you're -- two minutes and 24

3    seconds into the video, so that's about a time period of

4    49 seconds -- 49 to 50 seconds, that you are actually

5    struggling with two police officers who are trying to

6    pull you out of the vehicle, and you are still

7    continuing to struggle with the both of them.  Is that

8    accurate?

9         A.    Yes.

10        Q.    And tell me why you continued for that 59 or

11   40 second -- sorry -- 49 or 50-second time period

12   between the second officer arriving and you actually

13   being taken out of the vehicle?  Why did you continue to

14   struggle for that 50-second time period?

15        A.    I thought I was being abused, and I was

16   hoping someone would come to help me.

17        Q.    And at any point during the video did you --

18   strike that.

19              At any point prior to the incident, did you

20   hear any of the officers tell you that you would be

21   tasered prior to the time that you were first tasered?

22        A.    No.

23        Q.    Okay.  So you were never warned prior to

24   being tasered?

25        A.    No.

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 10 of 20   Page ID #:3315
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1      Q.    And had you been warned prior to being
 2 tasered, would you have stopped struggling?
 3      A.    I don't know.
 4      MR. FERLAUTO:  Objection.  Calls for speculation.
 5 Calls for an incomplete hypothetical.
 6      THE WITNESS:  I don't know.  I don't know.
 7      MS. GUPTA:  Do you need a minute to stretch your
 8 legs?
 9      THE WITNESS:  I'm okay.  Sorry.  Just my knees
10 hurt.
11      MS. GUPTA:  Anytime you want to take a break, let
12 me know.
13      THE WITNESS:  Thank you.
14      MS. GUPTA: All right.  Let's continue watching,
15 but obviously communication from this point devolves so
16 we're not going to have as much questions for you.
17      THE WITNESS:  Okay.
18           (Video playing.)
19 BY MS. GUPTA:
20      Q.    Okay.  So we're about three minutes and five
21 seconds into the video.
22           Has watching the video refreshed your
23 recollection as to the number of times you believe you
24 were tasered during the incident?
25      A.    Yes, but I'd have to watch it again.  I
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 11 of 20   Page ID #:3316

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

```
 1    wasn't counting.  I was just watching the video.  You

 2    would have to play it again if you want a number.

 3         Q.    Okay, so as you sit here right now, it hasn't

 4    refreshed your recollection.

 5         A.    I was just watching me getting tased on the

 6    ground and being abused.  I wasn't thinking about the

 7    numbers, no.

 8         Q.    Okay.  That's okay.  I was just wondering if

 9    it had.

10               I know you mentioned previously that you did

11    not typically smoke marijuana through a pipe of any

12    sort.  Did you ever purchase a marijuana pipe ever?

13         A.    In my life?

14         Q.    Prior to the date of the incident?

15         A.    Yes, I have.

16         Q.    Okay.  And where did you purchase that?

17         A.    I have no idea.

18         Q.    Approximately how many times had you

19    purchased a marijuana pipe prior to the incident?

20         A.    Once.

21         Q.    Okay.  And do you know, had you ever used it?

22         A.    Yes.

23         Q.    Had you ever used it in your car?

24         A.    No.

25         Q.    Where did you typically keep the marijuana
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 12 of 20   Page ID #:3317
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   pipe?
 2        A.    I can't recall.
 3        Q.    Had -- did you ever keep the marijuana pipe
 4   in your vehicle?
 5        A.    I can't recall.
 6        Q.    Had you ever smoked marijuana in your vehicle
 7   prior to the date of the incident?
 8        A.    No.
 9        Q.    Are you -- do you know one way or the other
10   whether there was a marijuana pipe in your vehicle on
11   the date of the incident?
12        A.    Yes, there was.
13        Q.    And is that the same marijuana pipe that you
14   had purchased?
15        A.    Yes.
16        Q.    And when was the last time you had used it
17   prior to the date of the incident?
18        A.    I have no idea.
19        Q.    What was it doing in your car?
20        A.    Sitting there collecting dust.
21        Q.    Okay.  Why was it in your car?  Had you ever
22   used it in your car before?
23        A.    No.  Just in my car.  I didn't want to take
24   it inside my house.
25        Q.    And did you typically smoke marijuana in your
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 13 of 20   Page ID #:3318
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1   car?
 2        A.    No.
 3        Q.    So when you used the marijuana pipe for
 4   smoking, would you take it out of the vehicle?
 5        A.    (No verbal response.)
 6        Q.    Smoke, put -- store it back in your vehicle?
 7        A.    Yes, ma'am.
 8        Q.    And where did you typically store it?
 9        A.    In the console.  Center console.
10        Q.    Is that the same place where your phone was?
11        A.    No, ma'am.
12        Q.    Okay.  Okay.
13        A.    It was in between where the two -- driver's
14   side and the passenger side, front seat.
15        Q.    Got it.  There's like a little flap that
16   opens up, and you can store stuff inside?
17        A.    Um-hum.
18        Q.    Do you know if you had a lighter that day?
19        A.    Yes, there was a lighter in my car.
20        Q.    Do you know if you had any marijuana that
21   day?
22        A.    No, there was no marijuana in my car.
23        Q.    When -- prior to that date of the incident,
24   when is the last time, regardless of whether you smoked
25   in your car that you trapped -- that you had marijuana
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 14 of 20   Page ID #:3319

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

1      in your car, just whether you were bringing it from the
2      store --
3           A.    When was the last time?
4           Q.    Yes.
5           A.    Prior to the incident?  I have no idea.
6           Q.    Okay.
7           A.    No idea.
8           Q.    And on the date of the incident, were you
9      aware that there was an odor of marijuana in your car?
10          A.    No.
11          Q.    And would it surprise you to learn that
12     someone perceived an odor of marijuana in your vehicle
13     that day?
14          A.    Yes, it would surprise me, yes.  Because
15     there was no smoking in my vehicle.
16          Q.    Okay.  Was that a rule you've had?
17          A.    Just trying to keep my car clean, that's all.
18          Q.    Okay.  At any point during the incident prior
19     to Sgt. Kelly opening the driver's side door of your
20     vehicle, do you believe that you were agitated?
21          A.    No.
22          Q.    At any --?  Same question.  Do you believe
23     you were irritated?
24          A.    Yeah.
25          Q.    And why were you irritated?

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 15 of 20   Page ID #:3320

Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1        A.    7:40 a.m., and it was an unfortunate problem
 2   that came my way that unfortunately I was not trying to
 3   deal with at that time of the day.
 4        Q.    It was an inconvenience to be pulled over?
 5        A.    Yes, it was.
 6        Q.    It was making you late?
 7        A.    Yes, it was.  I didn't ever make it to
 8   practice.
 9        Q.    And you stated that initially when you
10   started talking rapidly at the officer, your intention
11   was to avoid getting a ticket as you had previously done
12   in the past at the multiple occasions.  Is that
13   accurate?
14        A.    Yes.
15        Q.    Would it be accurate that at -- at least at
16   some point prior to Sgt. Kelly opening the passenger
17   side door, you were argumentative with him?
18        A.    Yes.
19        Q.    Were you aware that if you contested the
20   validity of a traffic citation that you could do so in
21   traffic court?
22        A.    Yes.
23        Q.    Okay.  And is there a reason why you chose to
24   continue arguing with Sgt. Kelly instead of explaining
25   yourself to a traffic judge?
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 16 of 20   Page ID #:3321

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

```
 1       A.    I was trying to go to practice.  Yes.  That's
 2  exactly the reason.  Just trying to make it so he would
 3  let me go so I could go to practice.
 4       Q.    In your estimation, it would be quicker to
 5  talk to him and have him let you go than to go through
 6  the process of him writing the ticket --
 7       A.    That's what I thought, yes.
 8       Q.    All right.  Do you think that Sgt. Kelly was
 9  racially profiling against you at the start of the
10  traffic stop?
11       A.    I think so, yes.
12       Q.    So you think he decided to pull you over
13  because of the color of your skin?
14       A.    I think that -- I think --.  Sorry.
15  Correct -- correct that.
16             I think that once he pulled me over and he
17  saw the color of my skin and my hair, I think that's
18  when it tipped the iceberg.
19       Q.    But when he initiated the traffic stop, when
20  he asked you to pull over, you --
21       A.    He just thought I ran the red light.
22       Q.    Okay.
23       MR. FERLAUTO:  I'm going to move to strike as calls
24  for speculation.
25       MS. GUPTA:  I'm going to object to that.  I think
```

Case 2:22-cv-05367-RGK-MAA    Document 72-4    Filed 06/12/23    Page 17 of 20    Page ID #:3322
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1    it was responsive.
 2    BY MS. GUPTA:
 3         Q.    Did you think that Sgt. Kelly was angry with
 4    you or upset with you?
 5         A.    Yes.
 6         Q.    And you said you had never previously had any
 7    interaction; correct?
 8         A.    No.
 9         Q.    You didn't know his name?
10         A.    No.
11         Q.    You didn't know him by reputation?
12         A.    No.
13         Q.    And since that date, have you learned
14    anything about Sgt. Kelly other than -- outside of the
15    interaction you had with him?
16         A.    I know nothing about him, ma'am.
17         Q.    Has anyone ever told you that he's a racist
18    man?
19         A.    I know nothing about him, ma'am.
20         Q.    Other than the fact that you are black, is
21    there any other reason you believe that Sgt. Kelly
22    profiled you racially?
23         A.    My long hair.  Some people just don't like
24    that.
25         Q.    Any other reason?
```

Case 2:22-cv-05367-RGK-MAA    Document 72-4    Filed 06/12/23    Page 18 of 20    Page ID #:3323
Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1        A.    No.  Because you can't see how tall I am
 2   until he opens the door so...
 3        Q.    But typically you have people profile you
 4   because of your height?
 5        A.    No, just -- just my skin.  Like, I mean, like
 6   if you want to say profile, you mean, trying to guess my
 7   character, sure, yeah.
 8        Q.    Okay.  So when you -- when I say the word
 9   profile, you're saying -- you hear that someone's
10   judging you on your character based on the color of your
11   skin?
12        A.    They are just profiling me based on what I
13   look like.  You know, he's a tall guy, he might be doing
14   this, he might be doing that.  I understand what you
15   mean.  I understand what profiling means.  I understand.
16        Q.    And do you understand that that's one of the
17   claims that you're making, that Sgt. Kelly racially
18   profiled?
19        A.    Yes.
20        Q.    Okay.  And you agree that that's true?
21        A.    Yes.
22        Q.    Okay.  I think we talked about when
23   Sgt. Kelly first opened the driver's side door to your
24   vehicle.  I believe you testified that he touched
25   your -- would it be your left arm that he touched?
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 19 of 20   Page ID #:3324

Joshua Assiff
Joshua Assiff vs. County of Los Angeles
1232274

```
 1      A.      It was my left arm he grab -- not touched.
 2  He grabbed me.
 3      Q.      And how hard did he grab you?
 4      A.      He tried to pull me out the vehicle.
 5  Probably as hard as he could.
 6      Q.      So when he grabbed you, you could feel him
 7  pulling you out of the vehicle?
 8      A.      Yes.
 9      Q.      And do you know approximately how long after
10  he grabbed you that you pulled your arm away?
11      A.      I pulled it back immediately as quick as I
12  could.
13      Q.      Okay.  Did you feel any pain or an injury to
14  your arm when Sgt. Kelly first grabbed you?
15      A.      Not when he first grabbed me, no.
16      Q.      Have you ever participated in any sort of
17  political activity relative to any sort of police
18  enforcement, either, you know, Defund the Police events
19  or anything like that?
20      A.      No.
21      Q.      No political rallies or anything like that?
22      A.      No.
23      Q.      Have you ever -- have you ever participated
24  in a political demonstration of any kind?
25      A.      No.
```

Case 2:22-cv-05367-RGK-MAA   Document 72-4   Filed 06/12/23   Page 20 of 20   Page ID #:3325

Joshua Assiff
Joshua Assiff vs. County of Los Angeles

1232274

```
 1              DEPOSITION OFFICER'S CERTIFICATION

 2              I, DOROTHY M. SIMPSON, CSR No. 14323,

 3    Certified Shorthand Reporter, certify:

 4              That the foregoing proceedings were taken

 5    before me at the time and place therein set forth, at

 6    which time the witness declared under penalty of

 7    perjury; that the testimony of the witness and all

 8    objections made at the time of the examination were

 9    recorded stenographically by me and were thereafter

10    transcribed under my direction and supervision;

11              That the foregoing is a full, true, and

12    correct transcript of my shorthand notes so taken and of

13    the testimony so given;

14              (X)   Reading and signing was requested.

15              ( )   Reading and signing was waived.

16              ( )   Reading and signing was not requested.

17              I further certify that I am not financially

18    interested in the action, and I am not a relative or

19    employee of any attorney of the parties, nor of any of

20    the parties.

21              I declare under penalty of perjury under the

22    laws of California that the foregoing is true and

23    correct.  Dated this 25th day of April, 2023.

24                    _____
25                    Dorothy M. Simpson, CSR No. 14323
```