# Exhibit 10

S▮▮visor's Report on Use of F▮▮  Page 11
015-01439-5640-057

The following inmates said they were asleep in their cell and did not see or hear anything:

▮▮▮ and ▮▮▮
There were two inmates housed in Cell A-8 ▮▮▮ and ▮▮▮. I interviewed ▮▮▮ in his cell, through the cell tray slot, while his cellmate ▮▮▮ was asleep in the cell. ▮▮▮ said he was asleep during the incident, and did not see or hear anything. I then woke, and interviewed ▮▮▮ through the open tray slot, after ▮▮▮ backed away from the tray slot. ▮▮▮ also said he was asleep and did not see or hear anything.

**SUSPECT INTERVIEW(S)**

Suspect Interview(s) Conducted by:  ☒ Watch Commander    ☒ Supervising Sergeant

Lieutenant Michael Berg #223370 and I conducted a Watch Commander's interview of ▮▮▮ at 0848 hours, inside Infirmary Quiet Cell 2. Deputy ▮▮▮ operated the video camera.

▮▮▮ provided the following information regarding a past incident with Sergeant Kelly during the interview:

▮▮▮ mentioned a past incident involving Sergeant Kelly during a DRB Hearing, on June 6, 2015, for a prior violation. At that hearing, Sergeant Kelly had sentenced him to twenty-nine days of discipline for being disrespectful, to which ▮▮▮ felt was excessive. During the hearing, ▮▮▮ had asked Sergeant Kelly for the name of the deputy who had handcuffed him. ▮▮▮ said Sergeant Kelly responded by saying: "What the fuck are you, a Southsider (Hispanic jail gang member), what punk ass shit is that, are you going to write a complaint?" Following the DRB hearing, ▮▮▮ believed there was "bad blood" between them, and he had not seen Sergeant Kelly since the DRB Hearing occurred (See attached Inmate Complaint from ▮▮▮ and subsequent inquiry attached #015-01187-5640-687).

▮▮▮ relayed the following events regarding the use of force:

▮▮▮ had been sleeping in his cell (A-2) when ▮▮▮ stopped at the outside of his cell, after speaking with another inmate on the same row. ▮▮▮ said words were exchanged between the sergeant and him. The sergeant insulted him and he responded by calling him a "faggot" and "little punk." Sergeant Kelly asked

*CONFIDENTIAL-PURSUANT TO STIPULATED PROTECTIVE ORDER*                    COLA-000057

▓▓▓ if he remembered what happened at the prior hearing. ▓▓▓ responded by saying, "I should have took my chance then." Sergeant Kelly replied with, "Oh you want a chance?" and he ordered cell 2 be opened.

▓▓▓ said his cell door was unlocked and then opened by Sergeant Kelly, who stood in the doorway and said "Here's your shot." While still inside his cell, ▓▓▓ stepped forward towards Sergeant Kelly and ▓▓▓ attempted to grab him by the front of his shirt, so ▓▓▓ tried pushing ▓▓▓ off ▓▓▓ demonstrated this by dodging his body to the right, and pushing away with his left hand). He said the sergeant and another deputy grabbed him on the right side, causing him to fall to the floor. ▓▓▓ said he landed on his chest, as the deputies twisted his right arm up behind his back causing pain to his right shoulder. His right hand was then handcuffed. He heard the deputies ordering him to stop resisting, and to put his left hand behind his back; however, he said he could not put his left hand behind his back because ▓▓▓ was in the way (on ▓▓▓ left side).

▓▓▓ said while he was on the floor, the deputies were choking him (he mimicked the choking with his left arm). He told deputies he could not breathe, and a deputy said, "You can breathe." Lieutenant Berg and I asked him to further describe the choking, but he said it was hard to describe because he was face down and could not see what was going on. ▓▓▓ said he could feel pressure as the deputies wrapped their arms around his neck. ▓▓▓ said he was punched or kneed in the right rib area at least once, but the punches were not hard. ▓▓▓ said there were five or six deputies involved, and maybe one custody assistant present. ▓▓▓ denied fighting or resisting and said he only attempted to push the deputy away.

▓▓▓ was visually inspected for injuries at the onset of the interview. His shirt had been cut by medical staff, in order to examine his right shoulder during his medical treatment. We saw abrasions and some dried blood on his lower lip, an abrasion on his chin, an abrasion to his knuckle on his right finger, abrasions to his inner and outer right bicep, abrasions to his left elbow and left knee, redness on his right shoulder and right upper chest area, a scrape on the right side of his neck, and a red mark on his right upper back. ▓▓▓ said he felt sharp pain in his right shoulder and pain to his right wrist. He said his left wrist was sore from a prior injury. I saw some brown marks on the right side of his ribcage that ▓▓▓ identified as an old scar and as a birthmark. I saw a small, light red, half-inch vertical mark on the right side of ▓▓▓ I saw no bruising or visible injury to his right ribs. ▓▓▓ said he had been treated by medical staff after the incident, and all of his medical concerns had been addressed. He denied consuming any alcohol, and said he had taken medication for his left wrist earlier in the day (June 4, 2015).

We re-interviewed ▓▓▓ a few minutes after the first interview to clarify his statement of stepping towards the sergeant. ▓▓▓ said after his cell door was opened, he felt challenged by the sergeant, so he took a step forward. His reaction was

a result of the deputies mocking him, and he had no intention of fighting. He stated while he stood in his cell, his hands were to his sides. He denied biting or hitting any deputies during the incident.

> **NOTE:** During the interview, [REDACTED] said he had filed a complaint while at NCCF approximately a month prior (June 6, 2015), because his left wrist was injured after he had been handcuffed for an excessive period of time. Details regarding insults that were made by Sergeant Kelly during [REDACTED] DRB Hearing were included in the complaint. The complaint was investigated by [REDACTED] under Reference number 5640-2015-0603-251. The disposition of the complaint was, "Employee's Conduct Appeared Reasonable" regarding the handcuffing and medical evaluation/treatment of [REDACTED] "Employee's Conduct Could Have Been Better," regarding Sergeant Kelly's refusal to provide information to [REDACTED] during the DRB hearing, and "Unable to Make a Determination," concerning Inmate [REDACTED] allegation of deputies using profanity toward him. (See attached Inmate Complaint inquiry by [REDACTED]

## MEDICAL REVIEW

[REDACTED] and [REDACTED] responded to the 915 AB shower to evaluate [REDACTED]. I un-handcuffed [REDACTED] so his shoulders could be evaluated by [REDACTED] was then transported to the NCCF Infirmary on a medical gurney. [REDACTED] and [REDACTED] escorted [REDACTED] under my supervision, as [REDACTED] video recorded the escort.

Upon arrival to the Infirmary, [REDACTED] was evaluated by [REDACTED]. I was present during his medical evaluation. [REDACTED] said the inmate's injuries were consistent with the takedown by deputies; however, the Inmate Injury Report (section 14) indicated "unknown" for injury consistent with claim. During the evaluation noted by [REDACTED] stated he was "beat up" by deputies and complained of pain he felt in his right shoulder and right hand, and also complained of numbness to his left arm. [REDACTED] noted an abrasion on [REDACTED] #4 finger on his left hand, and indicated there was no swelling, or redness, to his left arm. [REDACTED] noted a limited range of motion to his left side, from his shoulder to his hand. There was no swelling, or bruising to his right shoulder, right arm, or right hand, but he also had a limited range of motion from his right arm, and complained of pain to his right arm. He had an abrasion on his lower lip with slight bleeding, and abrasions to his right knee, left elbow, inner and outer right bicep, and a scratch to his right clavicle/chest area. He had a limited range of motion to his neck, but denied any pain. He had no injuries to his head, nor did he complain of pain to that area.

[REDACTED] was transported to Twin Towers Urgent Care for further evaluation of his right shoulder. [REDACTED] checked [REDACTED] medical chart at 1320 hours and saw

*CONFIDENTIAL-PURSUANT TO STIPULATED PROTECTIVE ORDER*                    COLA-000059