THOMAS M. FERLAUTO (SBN 155503)
LAW OFFICE OF THOMAS M. FERLAUTO, APC
25201 Paseo de Alicia, Suite 270
Laguna Hills, California 92653
Telephone: 949-334-8650
Fax: 949-334-8691
Email: TMF@lawofficeTMF.com

Attorney for Plaintiff, JOSHUA ASSIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ASSIFF,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF LOS ANGELES;<br>SHERIFF DEPUTY BADGE<br>NUMBER 404532;<br>And DOES 1 through 10,<br><br>　　　　Defendants. | Case No. 2:22-cv-05367 RGK (MAAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #1**<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br><br>Assigned to: Hon. R. Gary Klausner, District Judge, Courtroom 850 |

Plaintiff, JOSHUA ASSIFF (hereinafter "Plaintiff") hereby respectfully submits the following memorandum of points and authorities in opposition to Defendants' motion in limine #1 to preclude evidence of prior or subsequent complaints, discipline, administrative investigations or proceedings, or other alleged incidents.

**I.    INTRODUCTION**

Plaintiff is a 21-year old black male and a student at Antelope Valley College where he plays basketball. Plaintiff was driving from his home to a teammate's house

in order to carpool to basketball practice. For no apparent reason and without probable cause, KELLY, a male Caucasian motorcycle Sheriff deputy, pulled Plaintiff over. For no apparent reason and without probable cause, KELLY – as well as other deputies who subsequently responded to the call – all tasered, choked, pepper sprayed, beat and arrested Plaintiff. Plaintiff has asserted the First Cause of Action against KELLY for violation of 42 USC § 1983 (arrest without probable cause and with excessive force).

Plaintiff Assiff will seek to introduce evidence of prior or other incidents involving Defendant Kelly in which Defendant Kelly was rude and abusive to motorists, in which Defendant Kelly failed to use de-escalation techniques and unnecessarily escalated incidents, and in which Defendant Kelly was alleged to have improperly used force against an inmate.

In July of 2013, Defendant Kelly was rude to a motorist during a traffic stop. He threw the driver's license back at the motorist (a nurse), took back the citation, changed it, gave it back to the motorist, and said, "now it's double."

In November of 2019, Defendant Kelly was dealing with a motorist involved in a collision. The motorist complained that Defendant Kelly was incomplete, defensive, disrespectful and condescending. The Department investigated and concluded, "our employee could have been better."

In February of 2020, Defendant Kelly was accused of harassing a motorist and arresting a motorist for merely having an expired registration. After an investigation of the complaint, the Sheriff's Department again concluded, "our employee could have been better."

In April of 2020, Defendant Kelly was subject of a personnel complaint while dealing with a member of the public who called into the station to complain about excessive motorcycle noise. Defendant Kelly, a motorcycle cop and rider, reportedly refused to accept the report, was rude, and threatened to hang up.

In June of 2022, Defendant Kelly was once again rude to a motorist. He threw the motorist's credentials back at the motorist and told him to "enjoy your citation." After an investigation of the complaint, the Sheriff's Department once again concluded, "our employee could have been better."

These repeated complaints show that Defendant Kelly simply does not have the temperament, nor the manners, to be a law enforcement officer dealing with motorists and other members of the public. However, there are even more troubling incidents in Defendant Kelly's past reflecting on his disposition and temperament.

In June of 2014, Defendant Kelly while riding a motorcycle off-duty was himself pulled over by a sergeant with the LAPD for speeding. Defendant Kelly was rude to the sergeant, questioned where he worked, and drove off from the traffic stop before the sergeant could cite him. The Sheriff's Department investigated the incident and yet again officially concluded "the actions of [Defendant Kelly] should have been better." Internally, Defendant Kelly's supervisor found, "[y]our actions were unprofessional and your behavior brought discredit to yourself and the Department."

In July of 2015, Defendant Kelly was criticized for his conduct leading up to a use of force incident against an Hispanic inmate. According to reports, Defendant Kelly had a history of conflict with this Hispanic inmate. Defendant Kelly caused this inmate to be sentenced to 29 days of discipline for allegedly being disrespectful, and yet it was Defendant Kelly who had been disrespectful. He said to the inmate, "What the fuck are you, a Southsider (an Hispanic jail gang member)" After sentencing this Hispanic inmate to discipline, Defendant Kelly taunted the inmate outside his cell. Defendant Kelly called the Hispanic inmate a "faggot" and "little punk." When the inmate responded by saying he should have taken his shot at Defendant Kelly at the discipline hearing, Defendant Kelly responded, "Oh you want a chance?" Then Defendant Kelly, against department policy, ordered the inmate's

cell door opened, stood in the doorway, and said, "Here's your shot." A physical altercation between the inmate and Defendant Kelly ensued and the inmate claimed he was beaten and choked.

Defendant Kelly was criticized for this use of force by his supervisor for there being no video of the incident, there was no radio broadcast of the incident, and Defendant Kelly opened the cell door against department policy. An internal affairs investigation apparently resulted in Defendant Kelly being suspended for 4 days, but the suspension was not given until almost three years later in April of 2017. Furthermore, Defendant Kelly in his deposition admitted that he never served the 4 day suspension.

**II. SERGEANT KELLY'S HISTORY OF ABUSE TOWARDS MOTORISTS, FAILURE TO USE DE-ESCALATION TECHNIQUES AND PRIOR USE OF FORCE IS RELEVANT AND ADMISSIBLE**

It is well established that evidence of prior and/or subsequent conduct by a defendant can be admissible. As explained in *United States v. Boone*, 828 F.3d 705 (8th Cir. 2016):

> Although evidence of a prior bad act is not admissible to show a defendant's propensity to commit criminal acts, it is admissible under Rule 404(b) to show "**motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident**." Fed. R. Evid. 404(b). Evidence of a prior bad act "is admissible if (1) it is relevant to a material issue, (2) it is similar in kind and not overly remote in time to the charged offense, (3) it is supported by sufficient evidence, and (4) its potential prejudice does not substantially outweigh its probative value."

Id. at 711 (emphasis added); see also, *United States v. Ellis*, 817 F.3d 570, 579

(8th Cir. 2016); *United States v. Bailey*, 696 F.3d 794 (9th Cir. 2012); *Sibrian v. City of Los Angeles*, 288 Fed.Appx. 385, (9th Cir.2008).

*Boone* is instructive, and employs reasoning that is equally applicable to the facts of our case:

> Evidence of Boone's use of unreasonable force against Dooley was relevant to prove that Boone acted willfully when he deprived Hill of his right to be free from unreasonable force. To prove willfulness, the government was required to show that Boone acted with specific intent to deprive Hill of his constitutional rights. See 18 U.S.C. § 242; *United States v. Jackson*, 235 F.2d 925, 928 (8th Cir. 1956) (citing *Screws v. United States*, 325 U.S. 91, 103(1945)). By testifying that he did not intend to hurt Hill or kick him in the head, but was instead trying to assist his fellow officers in securing Hill, Boone placed his state of mind squarely at issue and rendered evidence of his prior use of unreasonable force probative of his intent, knowledge, motive, and absence of mistake in his use of force against Hill. See *United States v. Brugman*, 364 F.3d 613, 620-21 (5th Cir. 2004) (holding that the district court did not abuse its discretion in admitting evidence of a border patrol agent's prior use of excessive force to prove the agent's intent in the charged offense).

*Boone* at 711.

> Further, ". . . it is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in Fed. R. Evid. 401 & 402." *Doe v. Glanzer*, 232 F.3d

1258, 1268 (9th Cir. 2000), [citing Fed. R. Evid. 401 (stating that evidence is relevant if it has a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); Fed.R.Evid. 402 (stating that only relevant evidence is admissible at trial); *Old Chief v. United States*, 519 U.S. 172, 181 (1997)]

It this case, Defendant Kelly's state of mind is at issue. His conduct towards motorists is at issue. His use of de-escalation techniques are at issue. His use of force is at issue. As permitted in *Boone*, the prior incidents are admissible to prove Defendant Kelly's "**motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.**

Finally, Defendant Kelly's is a crucial witness in this case, and the evidence that Defendants seek to exclude is admissible, as it is relevant to the weight or credibility of Defendant Kelly's testimony or the other witnesses from the Sheriff's Department that Defendants may seek to call. [Federal Rules of Evidence, Rule 104(e)]

### III. CONCLUSION

For the reasons set forth above, Defendant's motion should be denied.

DATED: June 30th, 2023        The Law Office Of Thomas M. Ferlauto, APC

By: _____
Thomas M. Ferlauto
Attorney For: Plaintiff, JOSHUA ASSIFF