THOMAS M. FERLAUTO (SBN 155503)
LAW OFFICE OF THOMAS M. FERLAUTO, APC
25201 Paseo de Alicia, Suite 270
Laguna Hills, California 92653
Telephone: 949-334-8650
Fax: 949-334-8691
Email: TMF@lawofficeTMF.com

Attorney for Plaintiff, JOSHUA ASSIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ASSIFF,<br><br>     Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; SHERIFF DEPUTY BADGE NUMBER 404532;<br>And DOES 1 through 10,<br><br>     Defendants. | Case No. 2:22-cv-05367 RGK (MAAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #4**<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br><br>Assigned to: Hon. R. Gary Klausner, District Judge, Courtroom 850 |

Plaintiff, JOSHUA ASSIFF (hereinafter "Plaintiff") hereby respectfully submits the following memorandum of points and authorities in opposition to Defendants' motion in limine #4 to exclude or limit the testimony of Plaintiff's expert Jeffrey Nobel.

**I.     INTRODUCTION**

Plaintiff is a 21-year old black male and a student at Antelope Valley College where he plays basketball. Plaintiff was driving from his home to a teammate's house in order to carpool to basketball practice. For no apparent reason and without

probable cause, KELLY, a male Caucasian motorcycle Sheriff deputy, pulled Plaintiff over. For no apparent reason and without probable cause, KELLY – as well as other deputies who subsequently responded to the call – all tasered, choked, pepper sprayed, beat and arrested Plaintiff. Plaintiff has asserted the First Cause of Action against KELLY for violation of 42 USC § 1983 (arrest without probable cause and with excessive force).

## II. MR. NOBEL'S OPINIONS SATISFY THE *DAUBERT* STANDARD

Expert testimony may be excluded if the underlying reasoning or methodology is invalid or irrelevant to the issues in the case. [See, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 592, 113 S.Ct. 2786, 2796—trial judge must ensure that any and all testimony or evidence admitted is not only relevant, but reliable.] In exercising the "gatekeeping role" mandated by *Daubert, supra*, the trial court generally will hold a "Daubert hearing" pursuant to Federal Rules of Evidence Rule 104(a) to determine the reliability and relevance of expert testimony. [*Allison v. McGhan Med. Corp.* (11th Cir. 1999) 184 Fed.3d 1300, 1306; *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)* (9th Cir. 1995) 43 Fed.3d 1311, 1318, fn. 10; *Weaver v. Blake* (10th Cir. 2006) 454 Fed.3d 1087, 1089—Daubert hearing held on plaintiff's motion in limine]

As set forth in detail in his report, Mr. Nobel is a very qualified expert with over 35 years of experience in the field of police use of force; pursuits; police administration; training; police operations; criminal investigations; interviews and interrogations; civil rights violations and investigations; internal/administrative investigations; criminal investigations; police discipline; citizen complaints; and police policies and procedures. (Nobel Report p. 4, ¶ 7)

He reviewed sufficient information concerning the incident to make informed opinions. (Nobel Report p. 4, ¶ 8)

His methodology of forming his opinions was reliable, because they were based on a comprehensive review of the provided materials that establishes his

understanding of the facts of the case and on the professional and generally accepted principles and practices in policing as of the date of this incident. "Generally accepted practices" refers to those protocols, techniques, and procedures that are widely known, acknowledged, and relied upon in the field. A practice is generally accepted when well-educated, well-trained, and experienced professionals would agree that it is conventional, customary, and reasonably standard. Generally accepted practices in policing reflect technical and specialized knowledge in the law enforcement field. A practice can be generally accepted without necessarily being universally adopted or rising to the level of a long-established, empirically validated best practice. Generally accepted practices may be, but are not necessarily, reflected in Department of Justice consent decrees, publications by professional associations (such as the International Association of Chiefs of Police, the Police Executive Research Forum, the National Police Foundation, etc.), in agency policies, and in reputable training materials. (Nobel Report p. 5, ¶ 12)

To identify and apply the applicable generally accepted practices in policing, Mr. Nobel relied upon his knowledge, skill, experience, training, and education in law enforcement. This includes work his field of study as a policing scholar and author; his knowledge of historical and contemporary law enforcement standards and methods; and the relevant professional and academic literature. He employed a similar methodology when he conduct professional evaluations of police officers or agencies as a consultant and when writing for reputable academic and professional publishers. The methodology he applied in this case is consistent with the methodology utilized by other experts in the field of law enforcement when analyzing incidents of this type. (Nobel Report p. 5, ¶ 13)

His use of terminology such as "excessive," "unreasonable," and "disproportionate," etc., is intended to and should be read as references to the professional and generally accepted standards in policing and is not intended and

should not be interpreted as references to or the application of legal standards within the sole province of the factfinder or judge. (Nobel Report p. 5, ¶ 14)

This case clearly involves issues of generally accepted police practices. Mr. Nobel is well qualified in the field, and his opinions are reliable and will assist the jury in deciding this case.

### III. MR. NOBEL'S OPINION ABOUT PASSIVE RESISTANCE IS ADMISSIBLE

Defendants argue that Mr. Nobel should be precluded from stating the opinion that Plaintiff's resistance was "passive." Defendants' objection to this proffered testimony derives from the fact that they do not necessarily understand it. There were times during the encounter where Plaintiff Assiff's resistance might be characterized as active, but there are other times were his resistance was certainly merely passive. Mr. Nobel's point is that the level of force used on Plaintiff Assiff -- while he was only passively resisting -- was unwarranted and inconsistent with generally accepted police practices. This is something that would be made clear in cross-, if not direct-, examination. There is no need for an order precluding this testimony.

### IV. MR. NOBEL'S TESTIMONY REGARDING DEPUTY CLARK'S USE OF FORCE IS ADMISSIBLE

Defendant Sergeant Kelly was the supervisor on the scene. He instructed Deputy Clark to assist him in removing Plaintiff Assiff from the vehicle, just like he instructed Deputy Gallegos to tase Plaintiff Assiff. Thus, Deputy Clark's excessive use of force during the incident is relevant to this case. Based upon the obvious visual evidence captured by Plaintiff Assiff's mobile phone, as well as Plaintiff Assiff's own testimony, it is evident that Deputy Clark attempted to pull Plaintiff Assiff from the vehicle with a chokehold around Plaintiff Assiff's neck. Mr. Nobel opines that this use of force was unreasonable – meaning it was inconsistent with generally accepted police practices. There is ample evidence from which to base this opinion, and this opinion is admissible.

## V. MR. NOBEL RESERVED THE RIGHT TO UPDATE HIS OPINIONS BASED UPON LATE ARRIVING DISCOVERY

As explained elsewhere, Defendants were delinquent in providing discovery. Neither Defendant Kelly nor Defendant County of Los Angeles appeared for their properly noticed depositions. The due date for Mr. Nobel's report required him to prepare his report without the benefit of reviewing the deposition testimony of either Defendants. In his report, Mr. Nobel noted that additional depositions were pending and reserved the right to supplement his report upon receipt of this new material. (Nobel Report p. 20, ¶ 48) Since Defendants are responsible for this late discovery, Mr. Nobel should be permitted to take this late discovery into consideration in formulating his opinions.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's expert Jeffrey Nobel should be permitted to testify to his opinions in his report and any other opinions based upon late arriving discovery.

DATED: June 30th, 2023        The Law Office Of Thomas M. Ferlauto, APC

By: _____
Thomas M. Ferlauto
Attorney For: Plaintiff, JOSHUA ASSIFF