PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendant,
**SERGEANT TRAVIS KELLY**
*(Exempt from filing fees pursuant to Government Code § 6103)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA ASSIFF,**<br><br>       **Plaintiff,**<br><br>    **v.**<br><br>**COUNTY OF LOS ANGELES;<br>SHERIFF DEPUTY BADGE<br>NUMBER 404532;<br>And DOES 1 through 10,**<br><br>       **Defendants.** | **Case No. 2:22-cv-05367 RGK (MAAx)**<br><br>**DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS**<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br><br>Assigned to: Hon. R. Gary Klausner,<br>District Judge, Courtroom 850 |

1    COMES NOW Defendant SERGEANT TRAVIS KELLY (hereinafter

2  "Defendant") hereby respectfully submits the following [PROPOSED]JURY

3  INSTRUCTIONS.

4

5  DATED: July  10, 2023          KJAR, McKENNA & STOCKALPER, LLP

6

7

8                                    By: _____

9                                         Molshree Gupta
                                         Attorney For:  Defendant TRAVIS KELLY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 2.  INSTRUCTIONS ON TYPES OF EVIDENCE

2

3    2.2      Stipulations of Fact

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

## 2.2 Stipulations of Fact

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you].  You must therefore treat these facts as having been proved.

## Comment

When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir. 1999) (citing *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976)), *amended by* 180 F.3d 1091 (9th Cir. 1999).

# 9.  CIVIL RIGHTS ACTIONS—42 U.S.C. § 1983

9.2      Causation
9.21     Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—
         Exception to Warrant Requirement—*Terry* Stop
9.34     Qualified Immunity (Comment only)

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

## 9.2 Causation

## Comment

### General Principles

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.* This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989) (noting that federal courts turn to common law of torts for causation in civil rights cases).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). For example, when deprivation of a protected interest is substantively justified but the procedures were deficient, a plaintiff must show injury from the denial of procedural due process itself and cannot recover damages from the justified deprivation. *Carey v. Piphus*, 435 U.S. 247, 260-64 (1978); *Watson v. City of San Jose*, 800 F.3d 1135, 1140-42 (9th Cir. 2015) (expanding types of constitutional tort actions subject to *Carey's* causation analysis and quoting trial court's damages instruction).

A person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (internal quotes omitted)). Thus, an "officer could be held liable where he is just one participant in a sequence of events that gives rise to [the alleged] constitutional violation." *Nicholson*, 935 F.3d at 692.

*Revised Dec. 2019*

### 9.21 Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Exception to Warrant Requirement—*Terry* Stop

In general, a seizure of a person for an investigatory stop is reasonable if, under all of the circumstances known to Defendant Sergeant Kelly at the time:

1.    Defendant Sergeant Kelly had a reasonable suspicion that Plaintiff had made a traffic infraction; and

2.    the length and scope of the seizure was reasonable.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that the officer[s] lacked reasonable suspicion to stop [him] [her] or that the length or scope of the stop was excessive.

"Reasonable suspicion" is a particularized and objective basis for suspecting the plaintiff of a traffic infraction. Defendant Sergeant Kelly was permitted to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him.

In determining whether the length or scope of the seizure was reasonable, consider all of the circumstances, including:

(1)    the intrusiveness of the stop, such as the methods the police used, the restriction on the plaintiff's liberty, and the length of the stop;

(2)    whether the methods used were reasonable under the circumstances; and

(3)    whether any conduct of Plaintiff prolonged the seizure.

### Comment

Use this instruction only in conjunction with the applicable elements instructions, Instruction 9.3–9.8, and in conjunction with Instruction 9.20 (Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally).

A police officer may conduct a brief stop for investigatory purposes when the officer has only "reasonable suspicion" to believe the stopped individual is engaged

in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 23-27 (1968). An investigatory stop of a vehicle is justified under the Fourth Amendment if the officer reasonably suspects that only a traffic violation has occurred. *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012). However, a traffic stop "exceeding the time needed to handle the matter for which the stop was made" violates the constitutional protection against unreasonable seizures. *Rodriguez v. United States*, 135 S. Ct 1609, 1612 (2015). Handling the traffic stop includes checking driver's licenses, determining whether there are outstanding warrants and inspecting the car's registration and proof of insurance. *Id.* at 1615. An officer may not conduct unrelated checks (such as a dog sniff) "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

"Reasonable suspicion" is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). It requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Because the standard is objective, an officer need not tell the individual the real reason for the stop. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) (holding that officer may lie to individual about basis for *Terry* stop). An officer is permitted to draw on the officer's own "experience and specialized training to make inferences from and deductions about the cumulative information available to the officer that might otherwise elude an untrained person." *Valdes-Vega*, 738 F.3d at 1078 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A court must consider the totality of the circumstances when determining whether reasonable suspicion existed. *Id.* Additional information acquired through consensual questioning combined with an officer's knowledge and training can give rise to reasonable, articulable suspicion. *See United States v. Brown*, 996 F.3d 998, 1007 (9th Cir. 2021).

In cases involving multiple individuals who are searched or seized, "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). However, an officer's lack of individualized suspicion does not, standing alone, make the search and seizure automatically unlawful. *See Lyall v. City of Los Angeles*, 807 F.3d 1178, 1194-95 (9th Cir. 2015). The reasonableness of the search and seizure must be determined in light of the circumstances. *Id.*

"[R]ace is a trait that, when *combined with others*, can reasonably lead an officer to zero in on a particular suspect," but "[r]ace is of little value in distinguishing one suspect from others, particularly where everyone in the pool of

possible suspects is of the same race." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1174-75 (9th Cir. 2013).

"[A]voidance of the police, standing alone, does not give rise to a particularized, reasonable suspicion that a person is committing a crime." *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011).

In the case of a *Terry* stop to investigate a completed misdemeanor, the court must "consider the nature of the misdemeanor offense in question, with particular attention to the potential for ongoing or repeated danger (*e.g.*, drunken and/or reckless driving), and any risk of escalation (*e.g.*, disorderly conduct, assault, domestic violence)" when determining "whether the Fourth Amendment permits an officer to detain a suspected misdemeanant." *Johnson*, 724 F.3d at 1175.

"There is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) (citing *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988)). The analysis depends on the "totality of the circumstances" and is "fact-specific." *Id.*

In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, *i.e.*, the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, *i.e.*, whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken. In short, we decide whether the police action constitutes a *Terry* stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances. As a result, we have held that while certain police actions constitute an arrest in certain circumstances, *e.g.*, where the "suspects" are cooperative, those same actions may not constitute an arrest where the suspect is uncooperative, or the police have specific reasons to believe that a serious threat to the safety of the officers exists. "The relevant inquiry is always one of reasonableness under the circumstances."

*Id.* (citations omitted); *see also Lyall*, 807 F.3d at 1193 n.13 (permitting jury to conclude that detention of plaintiffs for 30-45 minutes for field identification did not transform detention from *Terry* stop into arrest requiring more demanding showing of probable cause).

In *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937-40 (9th Cir. 2020), the Ninth Circuit explained the requirements for a lawful *Terry* stop.  This case arose in the context of a person who might not lawfully be in the United States.  The Court also noted that, unlike illegal entry into the United States, which is a crime under 8 U.S.C. § 1325, illegal presence is not a crime.  *Id.* at 938.

*Revised June 2021*

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

## 9.34 Qualified Immunity

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014).  The qualified immunity analysis consists of two prongs: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted.  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020).  A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (noting that analyzing first then second prong, while not mandatory, "is often beneficial [,] . . . promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable"); *see also Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019).  *But see District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) ("We continue to stress that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim"); *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) ("Although qualified immunity involves a two-step analysis, we may exercise our discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional." (citations omitted)); *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (applying *Pearson*, 555 U.S. at 236).

Whether a right is clearly established turns on whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it."  *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).  Regarding the second prong, the Ninth Circuit has explained: "We begin our inquiry into whether this constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner."  *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).   The Ninth Circuit also confirmed that it is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established.  *Id.* at 1118.  Moreover, in order to show that a right was clearly established, the plaintiff must demonstrate that, at the time of the alleged violation, the state of the law gave fair warning that the relevant conduct was unconstitutional.  *See Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022). "Courts should look to precedent for evidence that the unlawfulness of an officer's conduct

is clearly established" regardless whether the officer is alleged to have made a mistake of fact or a mistake of law. *J. K. J. v. City of San Diego*, 42 F.4th 990, 1001 n.4 (9th Cir. 2021).

Qualified immunity is a question of law, not a question of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). "Immunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Only when "historical facts material to the qualified immunity determination are in dispute" should the district court submit the factual dispute to a jury. *Torres*, 548 F.3d at 1211; *see also Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) ("Summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt."). If the only material dispute concerns what inferences properly may be drawn from the historical facts, a district court should decide the issue of qualified immunity. *Conner*, 672 F.3d at 1131 n.2 ("[W]hile determining the facts is the jury's job (where the facts are in dispute), determining what objectively reasonable inferences may be drawn from such facts may be determined by the court as a matter of logic and law."). Only the judge can decide whether a particular constitutional right was "clearly established" once any factual issues are resolved by a fact finder. *See Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017).

An institutional defendant, such as a school district or municipality, is not entitled to qualified immunity. *See Owen v. Independence*, 445 U.S. 622, 638 (1980) (holding that "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983").

"The Supreme Court has provided little guidance as to where courts should look to determine whether a particular right was clearly established at the time of the injury . . .. In the Ninth Circuit, we begin our inquiry by looking to binding precedent . . .. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end. On the other hand, when 'there are relatively few cases on point, and none of them are binding,' we may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results . . .. Thus, in the absence of binding precedent, we 'look to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004); *see also Jessop*, 936 F.3d at 939, 942 (stating there is "no clearly established law holding that officers violate the Fourth or Fourteenth Amendment when they steal property seized pursuant to a warrant," where Ninth Circuit had not decided issue and other circuits are divided;

although officers "ought to have recognized that" stealing seized property "was morally wrong, they did not have clear notice that it violated the Fourth Amendment").

Generally, a plaintiff need not find "a case directly on point," but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (emphasizing "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'" (quoting *al-Kidd*, 563 U.S. at 742)); *J. K. J. v. City of San Diego*, 42 F.4th at 1000 (same); *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016). For example, in *Seidner v. de Vries*, the Ninth Circuit held that because "[t]here are material differences between motorized and non-motorized vehicles," a case holding using a roadblock to stop a motorcyclist was excessive force under specified circumstances did not clearly establish that using a roadblock to stop a bicyclist was excessive force. 39 F.4th at 602 (9th Cir. 2022).

However, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)). *See also Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018) (finding border patrol agent's fatal shooting of teenager on other side of border for no apparent reason to be one such rare but obvious circumstance); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1138 (9th Cir. 2018) (finding police officers' "shepherding" of presidential candidate's supporters into crowd of violent counter-protesters to be one such rare but obvious circumstance); *Hardwick v. Vreeken*, 844 F.3d 1112, 1120 (9th Cir. 2017) (identifying intentional use of perjured or fabricated evidence in child dependency hearing to be one such rare but obvious circumstance). "[A] right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ballentine*, 28 F.4th at 66 (quoting *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) (abrogated on other grounds by *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)). *But see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) ("Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks and citations omitted)).

In *Rice v. Morehouse*, the Ninth Circuit reiterated that, for purposes of clearly established law, "we clearly established one's 'right to be free from the application of non-trivial force for engaging in mere passive resistance.'" 989 F.3d 1112, 1125 (9th Cir. 2021) (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)) (citing *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (explaining that cases dating back to 2001 established that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force")).

A defendant is entitled to qualified immunity as a matter of law only if, taking the facts in the light most favorable to the nonmoving party, he or she did not violate any clearly established constitutional right. *Torres*, 548 F.3d at 1210. If reasonable jurors could believe that the defendant violated the plaintiff's constitutional right, and the right at issue was clearly established, the case should proceed to trial. *Id.*: *see also LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("If … there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested."). "Though we may excuse the reasonable officer for … a mistake, it sometimes proves necessary for a jury to determine first whether the mistake, was, in fact, reasonable." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013) (citations omitted); *see also Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (explaining that if determining reasonableness of officer's action depends on disputed issues of fact—*i.e.*, which version of facts is accepted by jury—this is question of fact best resolved by jury). When a case proceeds to trial, qualified immunity is no longer an "immunity from suit"; rather, it effectively becomes a defense. *Torres*, 548 F.3d at 1211 n. 9.

When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017); *see also Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019). The issue should be preserved in a Rule 50(a) motion at the close of evidence and then revisited, if appropriate, after the verdict in a Rule 50(b) motion. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict."); *see also A.D. v. Cal. High. Patrol*, 712 F.3d 446, 452 n.2 (9th Cir. 2013) (noting that defendant preserved his position on qualified immunity—renewed in Rule 50(b) motion after trial—by bringing Rule 50(a) motion for JMOL before case was submitted to jury). Consistent with this case law, there may be particular cases in which a special verdict on a discrete fact is

warranted in order to resolve a qualified immunity claim.  But a special verdict is not required in every qualified immunity case involving disputed issues of material fact for the purpose of evaluating a post-verdict qualified immunity defense.  *See Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017).

The district court may raise the issue of qualified immunity *sua sponte*. *Easley v. City of Riverside*, 890 F.3d 851, 855 (9th Cir. 2018).  In *Easley*, the defendant asserted qualified immunity as a defense in his answer but took no further action on the defense.  At the pre-trial conference, the district court directed the parties to brief the issue, and entered summary judgment in defendant's favor. The Ninth Circuit affirmed.  *Id.*

Qualified immunity analysis is irrelevant to the issue of liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016).

"State action for § 1983 purposes is not necessarily co-extensive with state action for which qualified immunity is available."  *Bracken v. Okura*, 869 F.3d 771, 776 (9th Cir. 2017).  Thus, when an off-duty police officer, wearing his uniform, is working as a private security guard, qualified immunity does not apply, even if the off-duty work is with the consent of the police department and the off-duty officer may be found to have been acting under the color of state law.  *Id.* at 777-78.

For a discussion of when a law enforcement officer is entitled to rely on the judgment of a government agency for purposes of the second prong of the qualified immunity analysis, *see Sjurset v. Button*, 810 F.3d 609 (9th Cir. 2015).  For a discussion of when a law enforcement officer may rely on a policy, ordinance, or permit scheme underlying the officer's challenged actions that is not itself challenged, *see Saved Magazine v. Spokane Police Department*, 19 F.4th 1193 (9th Cir. 2021).

"As a general rule, members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties." *Juan Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)).  One exception to this general rule is the state-created danger doctrine.  Under this exception, a government employee must have affirmatively placed the plaintiff in a position of danger, that is, the employee's actions must have created or exposed an individual to a danger that he or she would not have otherwise faced.  *Id.*  To prove that the exception applies, "[t]he affirmative act must create an actual, particularized danger," "the ultimate injury to the plaintiffs must be foreseeable," and "the employees must have

. . . acted with 'deliberate indifference' to a 'known or obvious danger.'" *Id.* (citations omitted).  For a further discussion of the state-created danger doctrine, *see also Bracken*, 869 F.3d at 778-79; *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).

In *Thompson v. Raheem*, 885 F. 3d 582, 586 (9th Cir. 2018), the Ninth Circuit clarified that a qualified immunity defense to an excessive force claim is analyzed in three stages.  In the first stage, the court assesses the severity of the intrusion by evaluating the type and amount of force inflicted.  In the second stage, the court evaluates the government's interest by assessing the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or attempting to escape.  In the third and final stage, the court balances the gravity of the intrusion against the government's need for the intrusion.  *See also Williamson v. City of National City*, 23 F.4th 1146 (2022) (following same three-step analytical framework to analyze qualified immunity in excessive force claim).

*Revised Sept. 2022*

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

# DEFENDANT'S [PROPOSED] SPECIAL INSTRUCTIONS

## DEFENDANT'S PROPOSED SPECIAL INSTRUCTION NO. 1

The existence of probable cause is judged at the time of the arrest, irrespective of any later dismissal of criminal charges or acquittal.


**AUTHORITY**: Ninth Circuit Manual of Model Jury Instructions 9.20 (2009); *Baker v. McCollan*, 443 U.S. 137, 145 (1979); *Borunda v. Richmond*, 885 F.2d 1384, 1387-89 (9th Cir. 1988); *Johnson v. Lewis*, 120 Cal.App.4th 443, 456 (Cal. Ct. App. 2004).

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

**DEFENDANT'S PROPOSED SPECIAL INSTRUCTION NO. 2**

Once probable cause is established, officers are under no duty to continue the investigation and identify exculpatory evidence.  Officers also are under no obligation to give any credence to a suspect's story or alibi, nor should a plausible explanation in any sense require the police officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.

An officer may not ignore exculpatory evidence which would have negated a finding of probable cause. A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.

**AUTHORITY**: *Ahlers v. Schebil*, 188 F.3d 365 (9th Cir. 1999); *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988).

**DEFENDANT'S PROPOSED SPECIAL INSTRUCTION NO. 3**

A police officer has the right to use such force as is reasonably necessary under the circumstances to make a lawful arrest. An unreasonable seizure occurs when a law enforcement officer uses excessive force in making a lawful arrest. Whether force is reasonably necessary or excessive is measured by the force a reasonable and prudent police officer would use under the circumstances. Whether or not a police officer's use of force is reasonable must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, The standard is whether the officer's use of force was reasonable at the moment it occurred. Not every push or shove, even if it may later seem unnecessary in the peacefulness of a court room, is unreasonable at the moment it occurred. Your determination of the reasonableness of a police officer's actions must allow for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation.

**AUTHORITY**: *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

**DEFENDANT'S PROPOSED SPECIAL INSTRUCTION NO. 4**

In evaluating the reasonableness of the defendant officer's conduct, bear in mind that police officers are not required to use the least amount or type of force possible. Whether the officer hypothetically could have used less painful, less injurious, or more effective force is simply not the issue.

The issue for you to decide is whether the force Sergeant Kelly decided to use during this incident was within the range of reasonable conduct, given the circumstances.

**AUTHORITY**: *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.), cert. denied, 515 U.S. 1159 (1994); *Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

**DEFENDANT'S' PROPOSED SPECIAL INSTRUCTION NO. 5**

It is well settled the "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Police officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo."

**AUTHORITY**: *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *United States v. Hensley*, 469 U.S. 221, 235 (1985).

**DEFENDANT'S PROPOSED SPECIAL INSTRUCTION NO. 6**

In determining whether the defendant officer acted reasonably under settled law in arresting plaintiff, you should consider the dangers, apparent or reasonably foreseeable at the time and place in question, and not in light of the resulting sequence of events or hindsight. In other words, you must determine whether or not the officers acted reasonably at the time the incident occurred, not whether a different interpretation of the event can be construed after the fact.

**AUTHORITY**: *Hunter v. Bryant*, 502 U.S. 224 (1991).

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On July 10, 2023, I served the foregoing document described as **DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

### <u>SEE ATTACHED SERVICE LIST</u>

**By Mail**  I caused such envelope(s) to be deposited in the mail at El Segundo, California.  The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX   **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List.  My email address is mnixon@kmslegal.com.

**By Personal Service** I caused such document to be Personally Served on the parties listed in the Service List.

XX   **State**   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 10, 2023, at El Segundo, California.

_____
Maria Nixon

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS

1

## <u>SERVICE LIST</u>

2

3
### <u>Assiff, Joshua vs. County of Los Angeles, et al.</u>
Central District- Case No.: 2:22-cv-05367 RGK(MAAx)

4

5

6

7

8

| | |
|---|---|
| Thomas M. Ferlauto, Esq.<br>Law Office of Thomas M. Ferlauto, APC<br>25201 Paseo de Alicia, Ste. 270<br>Laguna Hills, CA 92653<br>EM: tmf@lawofficetmf.com | **Attorney for Plaintiff,**<br>**JOSHUA ASSIFF** |
| Philip Cohen, Esq.<br>Law Offices of Philip Kent Cohen, APC<br>100 Wilshire Boulevard, Suite 1300<br>Santa Monica, CA  90401<br>Telephone:  310/451-9111<br>Facsimile:  310/451-9119<br>EM:  pcohen@pcohenlaw.com | **Co-Attorney for Plaintiff.**<br>**JOSHUA ASSIFF** |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S [PROPOSED] JURY INSTRUCTIONS