PATRICK E. STOCKALPER, SBN 156954
MOLSHREE GUPTA, SBN 275101
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
mgupta@kmslegal.com

Attorneys for Defendant,
**SERGEANT TRAVIS KELLY**
*(Exempt from filing fees pursuant to*
*Government Code § 6103*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA ASSIFF,**<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**COUNTY OF LOS ANGELES;**<br>**SHERIFF DEPUTY BADGE**<br>**NUMBER 404532;**<br>**And DOES 1 through 10,**<br><br>　　　　　**Defendants.** | **Case No. 2:22-cv-05367 RGK (MAAx)**<br><br>**DEFENDANT'S FURTHER**<br>**[PROPOSED] JURY INSTRUCTIONS**<br><br>Action Filed: August 3, 2022<br>Pretrial Conference: July 10, 2023<br>Trial Date: July 25, 2023<br><br>Assigned to: Hon. R. Gary Klausner,<br>District Judge, Courtroom 850 |

Defendant TRAVIS KELLY (hereinafter "Defendant") hereby respectfully submit the following FURTHER [PROPOSED] JURY INSTRUCTIONS.

Per the Court's Order for Jury Trial (Dckt. #24, 4:14-15), Plaintiff was to "serve plaintiff's proposed jury instructions and special verdict forms on defendant" no later June 20, 2023. No such documents were served by Plaintiff on or before June 20, 2023.

On June 27, 2023, Defendant served his timely proposed Jury Instructions. As Plaintiff failed to serve his proposed jury instructions on June 20, 2023, Defendants were unable to prepare any objections.

On June 28, 2023, Plaintiff served proposed Jury Instructions *eight days late*. Between June 28, 2023, and July 10, 2023, Defendant worked diligently and cooperatively with Plaintiff to create a JOINT JURY INSTRUCTIONS document. However, on the afternoon of July 10, 2023, Plaintiff failed to approve the final version of the JOINT JURY INSTRUCTIONS prior to the end of the business day.

As such, Defendant is forced to unilaterally lodge these FURTHER [PROPOSED] JURY INSTRUCTIONS.


DATED: July 10, 2023              KJAR, McKENNA & STOCKALPER, LLP



                                 By: _____
                                     Molshree Gupta
                                     Attorney For: Defendant TRAVIS KELLY

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.  INSTRUCTIONS ON THE TRIAL PROCESS

1.2    Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)

1.3    Duty of Jury (Court Reads Instructions Only)

1.4    Duty of Jury (Court Reads and Provides Written Instructions at End of Case)

1.5    Claims and Defenses

1.6    Burden of Proof—Preponderance of the Evidence

1.7    Burden of Proof—Clear and Convincing Evidence

1.8    Two or More Parties—Different Legal Rights

1.9    What is Evidence

1.10   What is Not Evidence

1.11   Evidence for Limited Purpose

1.12   Direct and Circumstantial Evidence

1.13   Ruling on Objections

1.14   Credibility of Witnesses

1.15   Conduct of the Jury

1.16   Publicity During Trial

1.17   No Transcript Available to Jury

1.18   Taking Notes

1.19   Questions to Witnesses by Jurors

1.20   Bench Conferences and Recesses

1.21   Outline of Trial

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.2 Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set of instructions to refer to throughout the trial.  These instructions are not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, these instructions will be collected, and I will give you a final set of instructions.  It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction may be used as a preliminary instruction if the court decides to provide a written set of preliminary instructions at the beginning of the trial that the jurors are permitted to keep with them.  In the final set of instructions, the court should substitute Instruction 1.3.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.3 Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)**

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction may be used as an oral instruction if the court elects to read its preliminary instructions to the jury but not to provide the jury with a copy of the instructions.

**1.4 Duty of Jury (Court Reads and Provides Written Instructions at End of Case)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction should be used with the written final set of the instructions to be sent to the jury. Bracketed material should be selected to cover whether single or multiple sets of written instructions are provided.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.5 Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff Joshua Assiff asserts that Defendant Sergeant Kelly violated plaintiff's Constitutional rights by wrongfully arresting plaintiff and arresting plaintiff with excessive force.  The plaintiff has the burden of proving these claims.

Defendant Sergeant Kelly denies those claims and also asserts the following affirmative defenses:

- First Affirmative Defense – Defendant Sergeant Kelly asserts that Plaintiff cannot meet his burden of establishing that Defendant violated his constitutional rights.
- Second Affirmative Defense - Qualified Immunity: Defendant Sergeant Kelly's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known and was reasonable based upon the information that it possessed at the time. Defendant Sergeant Kelly reasonably believed "in good faith" that what he did was lawful and appropriate, and relied upon information known to him. Moreover, Defendant Sergeant Kelly acted under a reasonable, even if mistaken, belief that what he did was reasonable, appropriate and lawful.
- Third, Fifth, Sixth Affirmative Defenses – Plaintiff's contribution: The damages, if any, alleged by Plaintiff was caused in whole or in part, or were contributed to by reason of the negligence and intentional acts of Plaintiff. That the incidents referred to in the First Amended Complaint, and resulting damages, if any, to Plaintiff was proximately caused or contributed to by Plaintiff's own negligence or culpable conduct, and such negligence or culpable conduct was greater than the negligence, if any, of Defendant Sergeant Kelly. That any damage suffered by Plaintiff was a direct and proximate result of his own misconduct and actions or the misconduct or actions of a third person.
- Fourth Affirmative Defense – Failure to mitigate: Plaintiff has failed, in whole or in part, to mitigate his damages. Plaintiff had a duty to use reasonable efforts to mitigate his alleged damages.
- Seventh Affirmative Defense – Probable Cause: Probable cause to arrest is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each.

Defendant Sergeant Kelly has the burden of proof on *affirmative defenses.*

Plaintiff Joshua Assiff denies defendant's affirmative defenses.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.6 Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.7 Burden of Proof— Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Comment**

*See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence).  *See also Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (citing *Colorado*).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 1.8 Two or More Parties—Different Legal Rights

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.9 What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I [may instruct] [have instructed] you to accept as
proved.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.10 What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## Comment

With regard to the bracketed material in paragraph 3, select the appropriate bracket depending on whether the instruction is given at the beginning or at the end of the case. *See also* Instruction 1.11 (Evidence for Limited Purpose).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**1.11 Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

**Comment**

As a rule, limiting instructions need only be given when requested and need not be given *sua sponte* by the court. *United States v. McLennan*, 563 F.2d 943, 947-48 (9th Cir. 1977).

*See United States v. Marsh*, 144 F.3d 1229, 1238 (9th Cir. 1998) (when trial court fails to instruct jury in its final instructions regarding receipt of evidence for limited purpose, Ninth Circuit examines trial court's preliminary instructions to determine if court instructed jury on this issue).

*See also* Instructions 1.10 (What is Not Evidence) and 2.9 (Impeachment Evidence—Witness).

## 1.12 Direct and Circumstantial Evidence

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## Comment

It may be helpful to include an illustrative example in the instruction:

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

1

**1.13 Ruling on Objections**

2

3          There are rules of evidence that control what can be received into evidence.
When a lawyer asks a question or offers an exhibit into evidence and a lawyer on
4   the other side thinks that it is not permitted by the rules of evidence, that lawyer
may object.  If I overrule the objection, the question may be answered, or the
5   exhibit received.  If I sustain the objection, the question cannot be answered, and
6   the exhibit cannot be received.  Whenever I sustain an objection to a question, you
must ignore the question and must not guess what the answer might have been.

7

8          Sometimes I may order that evidence be stricken from the record and that
you disregard or ignore that evidence.  That means when you are deciding the case,
9   you must not consider the stricken evidence for any purpose.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.14 Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 1.15 Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research

about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

## Comment

This instruction has been updated specifically to instruct jurors against accessing electronic sources of information and communicating electronically about the case, as well as to inform jurors of the potential consequences if a juror violates this instruction. An abbreviated instruction should be repeated before the first recess, and as needed before other recesses.

The practice in federal court of repeatedly instructing jurors not to discuss the case until deliberations is widespread. *See, e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

State court practice in some jurisdictions does allow discussion of the case by jurors prior to the beginning of deliberations. The Ninth Circuit has not addressed this practice.

*Revised Dec. 2020*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.16 Publicity During Trial

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

## Comment

This instruction may be useful in cases involving significant media coverage and may be given more than once at appropriate times during the trial. *See United States v. Waters*, 627 F.3d 345, 364 (9th Cir. 2010) (reversing criminal conviction due to court's insufficient questioning of jury regarding negative publicity during jury deliberations); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.2 (2013).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 1.17 No Transcript Available to Jury

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

### Comment

The court may wish to modify this instruction for use at the end of the trial.

1

### 1.18 Taking Notes

2

3      If you wish, you may take notes to help you remember the evidence.  If you
do take notes, please keep them to yourself until you go to the jury room to decide

4      the case.  Do not let notetaking distract you.  When you leave, your notes should be
left in the [courtroom] [jury room] [envelope in the jury room].  No one will read

5      your notes.

6

7      Whether or not you take notes, you should rely on your own memory of the
evidence. Notes are only to assist your memory. You should not be overly

8      influenced by your notes or those of other jurors.

9

### Comment

10

11     It is well settled in this circuit that the trial judge has discretion to allow
jurors to take notes.  *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993).

12     *See also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON
JURY TRIAL PROCEDURES, § 3.4 (2013).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.19 Questions to Witnesses by Jurors During Trial

*Option 1*

Only the lawyers and I are allowed to ask questions of witnesses.  A juror is not permitted to ask questions of witnesses.  *[Specific reasons for not allowing jurors to ask questions may be explained.*]  If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

*Option 2*

When attorneys have finished their examination of a witness, you may ask questions of the witness.  [*Describe procedure to be used.*]  If the rules of evidence do not permit a particular question, I will advise you.  After your questions, if any, the attorneys may ask additional questions.

## Comment

There may be occasions when a juror desires to ask a question of a witness, and the court has discretion in permitting or refusing to permit jurors to do so.  *See United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994) ("Huebner does not point out prejudice resulting from any of the few questions [jurors] asked.  There was no error or abuse of discretion"); *United States v. Gonzales*, 424 F.2d 1055, 1056 (9th Cir. 1970) (holding there was no error by trial judge in allowing juror to submit question to court); JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.5 (2013) (providing practical suggestions).

Option 1 is for judges who want to disallow jury questions explicitly.  Option 2 is for judges who want to tell jurors explicitly that they may submit questions to be asked of witnesses.

*Revised Oct. 2019*

### 1.20 Bench Conferences and Recesses

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess.  Please understand that while you [are] [were] waiting, we [are] [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum.  I [may] [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 1.21 Outline of Trial

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 2.  INSTRUCTIONS ON TYPES OF EVIDENCE

2.0     Cautionary Testimony

2.3     Judicial Notice

2.4     Deposition in Lieu of Live Testimony

2.5     Transcript of Recording in English

2.6     Transcript of Recording in Foreign Language

2.9     Impeachment Evidence—Witness

2.11    Use of Interrogatories

2.12    Use of Requests for Admission

2.13    Expert Opinion

2.14    Charts and Summaries Not Received in Evidence

2.15    Charts and Summaries Received in Evidence

2.16    Evidence in Electronic Format

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 2.0 Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

### Comment

This instruction is derived from the model instruction prepared by the Judicial Conference Committee on Court Administration and Case Management in June 2020.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

The practice in federal court of repeatedly instructing jurors not to discuss the case until deliberations is widespread.  *See e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

*Created Dec. 2020*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 2.3 Judicial Notice

The court has decided to accept as proved the fact that [*state fact*].  You must accept this fact as true.

## Comment

An instruction regarding judicial notice should be given at the time notice is taken.  In a civil case, the Federal Rules of Evidence permit the judge to determine that a fact is sufficiently undisputed to be judicially noticed and requires that the jury be instructed that it is required to accept that fact.  Fed. R. Evid. 201(f).  In a criminal case, however, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.  *Id.*; *see United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (in a criminal case, "the trial court must instruct 'the jury that it may, but is not required to, accept as conclusive any fact judicially noticed'"); NINTH CIRCUIT MODEL CRIMINAL JURY INSTRUCTION 2.5 (2010) (Judicial Notice).

## 2.4 Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

### Comment

This instruction should be used only when testimony by deposition is used in lieu of live testimony. The Committee recommends that it be given immediately before a deposition is to be read. It need not be repeated if more than one deposition is read. If the judge prefers to include the instruction as a part of his or her instructions before evidence, it should be modified appropriately.

### 2.5 Transcript of Recording in English

You [are about to [hear] [watch]] [have heard] [watched]] a recording that
has been received in evidence. [Please listen to it very carefully.] Each of you [has
been] [was] given a transcript of the recording to help you identify speakers and as
a guide to help you listen to the recording. However, bear in mind that the
recording is the evidence, not the transcript. If you [hear] [heard] something
different from what [appears] [appeared] in the transcript, what you heard is
controlling. [After] [Now that] the recording has been played, the transcript will be
taken from you.

### Comment

*See United States v. Delgado*, 357 F.3d 1061, 1070 (9th Cir. 2004),
*abrogated on other grounds by United States v. Katakis*, 800 F.3d 1017, 1028 (9th
Cir. 2015) (holding that district court properly instructed jury that transcripts were
only aids to understanding and that recordings themselves were evidence); *United
States v. Franco*, 136 F.3d 622, 626 (9th Cir. 1998) (noting that recording itself is
evidence to be considered; transcript is merely aid); *see also* Instructions 2.6
(Transcript of Recording in Foreign Language), 2.7 (Disputed Transcript of
Recording in Foreign Language), and 2.8 (Foreign Language Testimony).

The Committee recommends that this instruction be given immediately
before a recording is played so that the jurors are alerted to the fact that what they
hear is controlling. It need not be repeated if more than one recording is played.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 2.6 Transcript of Recording in Foreign Language

You [are about to [hear] [watch]] [have heard] [watched]] a recording in [*specify foreign language*] language.  Each of you [has been] [was] given a transcript of the recording that has been admitted into evidence.  The transcript is an English-language translation of the recording.

Although some of you may know the [*specify foreign language*] language, it is important that all jurors consider the same evidence.  The transcript is the evidence, not the foreign language spoken in the recording.  Therefore, you must accept the interpreter's translation contained in the transcript and disregard any different meaning of the non-English words.

## Comment

This instruction is appropriate immediately before the jury hears a recorded conversation in a foreign language if the accuracy of the translation is not in issue; it may also be included in the concluding written instructions to the jury.  *See, e.g.*, *United States v. Rrapi*, 175 F.3d 742, 746 (9th Cir. 1999); *United States v. Franco*, 136 F.3d 622, 626 (9th Cir. 1998); *United States v. Fuentes–Montijo*, 68 F.3d 352, 355-56 (9th Cir. 1995).

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.11.B (2013); *see also* Instructions 2.5 (Transcript of Recording in English), 2.7 (Disputed Transcript of Recording in Foreign Language) and 2.8 (Foreign Language Testimony).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**2.9 Impeachment Evidence—Witness**

The evidence that a witness *[e.g., has been convicted of a crime, lied under oath on a prior occasion, etc*.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Comment**

*See* Fed. R. Evid. 608–09; *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (finding that district court properly admitted impeachment evidence following limiting instruction to jury).  If this instruction is given during the trial, the Committee recommends giving the second sentence in numbered paragraph 3 of Instruction 1.10 (What Is Not Evidence) with the concluding instructions.  *See also* Instruction 1.11 (Evidence for Limited Purpose).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.11 Use of Interrogatories

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

### Comment

Use this oral instruction before interrogatories and answers are read to the jury; it may also be included in the concluding written instructions to the jury.  The attorney should warn the judge ahead of time and give the judge an opportunity to give this oral instruction.  This oral instruction is not appropriate if answers to interrogatories are being used for impeachment only.

Do not use this instruction for requests for admission under Fed. R. Civ. P. 36.  The effect of requests for admission under the rule is not the same as the introduction of evidence through interrogatories.  *See* Instruction 2.12 (Use of Requests for Admission).

**2.12 Use of Requests for Admission**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

**Comment**

*See* Fed. R. Civ. P. 36 ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").  A court may properly exclude evidence at trial that is inconsistent with a Rule 36 admission.  *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

Use this oral instruction before admissions are read to the jury; it may also be included in the concluding written instructions to the jury.  The attorney should warn the judge ahead of time and give the judge an opportunity to give this oral instruction.

Do not use this instruction for interrogatories.  The effect of requests for admission is not the same as the introduction of evidence through interrogatories. *See* Instruction 2.11 (Use of Interrogatories).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 2.13 Expert Opinion

You [have heard] [are about to hear] testimony from [_name_] who [testified] [will testify] about [his] [her]opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

## Comment

_See_ Fed. R. Evid. 702-05.

According to Federal Rule of Evidence 702, "[t]he purpose of expert testimony is to 'assist the trier of fact to understand the evidence or to determine a fact in issue' by providing opinions on 'scientific, technical, or other specialized knowledge.'" _Wagner v. County of Maricopa_, 701 F.3d 583, 589 (9th Cir. 2012) (quoting Fed. R. Evid. 702). Under Federal Rule of Evidence 703, an expert's opinion must be based on facts or data in the case that the expert has been made aware of or personally observed. Fed. R. Evid. 703. The facts and data need not be admissible so long as experts in the particular field would reasonably rely on such facts and data. _Id._

This instruction avoids labeling the witness as an "expert." If the court refrains from informing the jury that the witness is an "expert," this will "ensure [] that trial courts do not inadvertently put their stamp of authority' on a witness's opinion and will protect against the jury's being "overwhelmed by the so-called 'experts.'" _See_ Fed. R. Evid. 702 advisory committee's note (2000) (quoting Hon. Charles Richey, _Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials_, 154 F.R.D. 537, 559 (1994).

In addition, Fed. R. Evid. 703 (as amended in 2000) provides that facts or data that are the basis for an expert's opinion but are otherwise inadmissible may nonetheless be disclosed to the jury if the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

This instruction is appropriate for a witness who provides only expert opinion testimony. If the same witness provides expert opinion testimony and percipient witness testimony (whether fact testimony, lay opinion testimony, or both), these different roles should be clarified for the jury, even in a civil case. Model Criminal Instruction 3.15 (Dual Role Testimony) provides guidance.

*Revised Mar. 2023*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**2.14 Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Comment**

This instruction applies only when the charts and summaries are not admitted into evidence and are used for demonstrative purposes.  Demonstrative materials used only as testimonial aids should not be permitted in the jury room or otherwise used by the jury during deliberations.  *See United States v. Wood*, 943 F.2d 1048, 1053-54 (9th Cir. 1991) (citing *United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984)); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.10.A (2013).

1

### 2.15 Charts and Summaries Received in Evidence

2

3      Certain charts and summaries [may be] [have been] admitted into evidence to

4  illustrate information brought out in the trial.  Charts and summaries are only as

5  good as the testimony or other admitted evidence that supports them.  You should,

6  therefore, give them only such weight as you think the underlying evidence
   deserves.

### Comment

7

8      This instruction applies when the charts and summaries are received into

9  evidence.  *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012) ("[T]he

10 proponent of a summary must demonstrate the admissibility of the underlying

   writings or records summarized, as a condition precedent to introduction of the

11 summary into evidence under [Fed. R. Evid. Evid.] 1006.") (quoting *United States*

12 *v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979)); *United States v. Rizk*, 660 F.3d

   1125, 1130-31 (9th Cir. 2011); *see also* Fed. R. Evid. 1006; JURY INSTRUCTIONS

13 COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES §

14 3.10.A (2013).  This instruction may be unnecessary if there is no dispute as to the

   accuracy of the chart or summary.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.16 Evidence in Electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

### Comment

This instruction is premised on the assumption that either the court has ordered these procedures, or the parties have agreed to the availability of electronic display devices in the jury room and to the procedures set forth in the instruction.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

If the parties' agreement is in the form of a written stipulation, the stipulation should be subject to approval by the judge and entered as an order. The following are possible provisions in such a stipulation:

1.  The parties agree to an allocation of the costs of providing the necessary equipment, including the computer, hard drive, projector, cable, printer, monitor and other accessories.

2.  The parties jointly arrange to load images of the admitted exhibits onto a hard drive in "PDF" format. (This format is meant to assure maximum security.) They will ensure that the hard drive contains only such items and nothing else.

3.  The parties jointly compile a document entitled "Admitted Exhibit List" that consists of all trial exhibits actually received into evidence, listed in numerical order and containing the date (where available) and a brief description of the exhibit. The Admitted Exhibit List should be text searchable. (In complicated or document-laden cases, it would be advisable for the parties to prepare a second exhibit list that would contain the same information, except that the exhibits would be listed in chronological order. That second list would be made available to the jury in "hard copy," not electronic form.)

4.  Before the jury retires to deliberate, the parties will review the notebook computer, the exhibit list interface and the images of the exhibits, to ensure their accuracy. Unless a party objects before the jury retires to deliberate, that party waives all objections to the materials and equipment submitted to the jury.

5.  The parties will maintain at the courthouse a backup notebook computer and a backup hard drive with images and data identical to what was loaded onto the hard drive sent into the jury room.

If the jury encounters a technical problem after it has begun to deliberate, the jury should communicate that issue in writing to the court. The technician may require and receive information from one or more jurors about the difficulty the jury is encountering. In many instances, the court technician will need to re-enter the jury room to address the problem. It is conceivable that the technician will be exposed to evidence that the jury was attempting to view or at least to the exhibit

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

number(s) of such evidence.  If the jurors themselves developed charts, summaries, vote tallies or other indicia of their deliberations, or if they wrote summaries of their findings thus far, the technician might be exposed to that information.  (E.g., such matters could have been placed on a blackboard or in summaries strewn about the jury table.) The Committee suggests that in the event a nonjuror might be required to enter the jury room to deal with a technical problem, the judge should *sua sponte* raise these and related issues with counsel before authorizing such entry. Among the factors that the judge and counsel should discuss are the following:

(a)    Can the technical problem be addressed without entry into the room; e.g., by removing the equipment for examination outside the presence of jurors?

(b)    Can the technical problem be addressed without any information from the jury other than an innocuous statement to the effect that (for example) "the printer isn't working"?

(c)    Can the risk of even inadvertent disclosure of the jury's deliberations be eliminated by instructing the jury to cover any charts and to remove or conceal any papers, etc.?

(d)    Should the technician, bailiff or clerk be sworn in, with an oath that requires him or her not to disclose whatever he or she sees or hears in the jury room, except for the nature of the technical problem and whether the problem has been fixed?

Whether or not these or other appropriate precautions to minimize or eliminate the risk of disclosure are taken, the judge may consider giving the jury this instruction:

You have informed me that there is a technical problem that has interfered with your ability to review evidence electronically. I will send a technician into the jury room to deal with the problem while you are out of the deliberation room on a break.  Please do not allow any materials reflecting any aspect of your deliberations to be visible during the technician's presence.

In a criminal case, the judge should not permit any tape-recorded conversation or evidence to be included in the electronic evidence loaded onto the hard drive that contains the PDF files, because under Fed. R. Crim. P. 43, the

1  defendant has a right to be present at the replaying of a tape. *United States v. Felix-*
2  *Rodriguez*, 22 F.3d 964, 966-67 (9th Cir. 1994)

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 3. INSTRUCTIONS CONCERNING DELIBERATIONS

3.1     Duty to Deliberate

3.2     Consideration of Evidence—Conduct of the Jury

3.3     Communication with Court

3.4     Readback or Playback

3.5     Return of Verdict

3.6     Additional Instructions of Law

3.7     Deadlocked Jury

3.8     Continuing Deliberations After Juror is Discharged

3.9     Post-Discharge Instruction

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

1

## 3.1 Duty to Deliberate

2

3       Before you begin your deliberations, elect one member of the jury as your
presiding juror.  The presiding juror will preside over the deliberations and serve as

4       the spokesperson for the jury in court.

5       You shall diligently strive to reach agreement with all of the other jurors if

6       you can do so.  Your verdict must be unanimous.

7       Each of you must decide the case for yourself, but you should do so only

8       after you have considered all of the evidence, discussed it fully with the other
jurors, and listened to their views.

9

10      It is important that you attempt to reach a unanimous verdict but, of course,
only if each of you can do so after having made your own conscientious decision.

11      Do not be unwilling to change your opinion if the discussion persuades you that

12      you should.  But do not come to a decision simply because other jurors think it is
right or change an honest belief about the weight and effect of the evidence simply

13      to reach a verdict.

14

## Comment

15

16      A jury verdict in a federal civil case must be unanimous, unless the parties
stipulate otherwise.  *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451

17      (9th Cir. 1995) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369-70 n.5 (1972)); *see*

18      *also* Fed. R. Civ. P. 48(b). A federal civil jury must also unanimously reject any
affirmative defenses before it may find a defendant liable and proceed to determine

19      damages.  *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

20

21

22

23

24

25

26

27

28

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 3.2 Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

*Revised Dec. 2020*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 3.3 Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

### Comment

For guidance on the general procedures regarding jury questions during deliberations, *see* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.A (2013).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

1

**3.4 Readback or Playback**

2

**Comment**

3

4        If during jury deliberations a request is made by the jury or by one or more
5  jurors for a readback of a portion or all of a witness's testimony, and the court in
   exercising its discretion determines after consultation with the lawyers that a
6  readback should be allowed, the Committee recommends the following admonition
   be given in open court with both sides present:

7

8        Because a request has been made for a [readback] [playback] of the
         testimony of [*witness's name*] it is being provided to you, but you are
9        cautioned that all [readbacks] [playbacks] run the risk of distorting the
10       trial because of overemphasis of one portion of the testimony.
         [Therefore, you will be required to hear all the witness's testimony on
11       direct and cross-examination, to avoid the risk that you might miss a
         portion bearing on your judgment of what testimony to accept as
12       credible.] [Because of the length of the testimony of this witness,
13       excerpts will be [read] [played].] The [readback] [playback] could
         contain errors.  The [readback] [playback] cannot reflect matters of
14       demeanor [, tone of voice,] and other aspects of the live testimony.  Your
15       recollection and understanding of the testimony controls.  Finally, in
         your exercise of judgment, the testimony [read] [played] cannot be
16       considered in isolation but must be considered in the context of all the
17       evidence presented.

18

19       Although a court has broad discretion to read back excerpts or the entire
   testimony of a witness when requested by a deliberating jury, precautionary steps
20 should be taken.  Absent the parties' stipulation to a different procedure, the jury
   should be required to hear the readback in open court, with counsel for both sides
21 present, and after giving the admonition set out above.  *See United States v.*
22 *Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS
   COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL
23 PROCEDURES § 5.1.C (2013).

24

25

26

27

28

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 3.5 Return of Verdict

A verdict form has been prepared for you.  [*Explain verdict form as needed.*]
After you have reached unanimous agreement on a verdict, your [presiding juror]
[foreperson] should complete the verdict form according to your deliberations, sign
and date it, and advise the [clerk] [bailiff] that you are ready to return to the
courtroom.

### Comment

The judge may also wish to explain to the jury the particular form of verdict
being used.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 3.6 Additional Instructions of Law

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

### Comment

Use this instruction for giving an additional instruction to a jury while it is deliberating. If the jury has a copy of the instructions, send the additional instruction to the jury room. Unless the additional instruction is by consent of both parties, both sides must be given an opportunity to take exception or object to it. If this instruction is used, it should be made a part of the record. The judge and attorneys should make a full record of the proceedings.

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.B (2013).

### 3.7 Deadlocked Jury

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case.  I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience.  Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors.  During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong.  However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence.  All of you share an equal desire to arrive at a verdict.  Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now return to the jury room and continue your deliberations.

### Comment

Before giving any supplemental jury instruction to a deadlocked jury, the Committee recommends the court review JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.5 (2013); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1029 (9th Cir. 2009) (finding no error in standard *Allen* charge issued to deadlocked jury).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 3.8 Continuing Deliberations After Juror is Discharged

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

### Comment

A court may not seat a jury of fewer than six nor more than twelve jurors. *See* Fed. R. Civ. P. 48. The selection of alternate jurors in civil trials has been discontinued. *See* Advisory Committee Note, Fed. R. Civ. P. 47(b) (1991).

### 3.9 Post-Discharge Instruction

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings.  Now that the case is over, you are free to discuss it with any person you choose.  By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

[If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.]

[Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence.  Please respect the privacy of the views of the other jurors.]

[Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.]

### Comment

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 6.1 (2013).

*Added Dec. 2019*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 5.  DAMAGES

5.1    Damages—Proof

5.2    Measures of Types of Damages

5.3    Damages—Mitigation

5.4    Damages Arising in the Future—Discount to Present Cash Value

5.5    Punitive Damages

5.6    Nominal Damages

**5.1 Damages—Proof**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on the plaintiff's 42 U.S.C. Section 1983 claim, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

The mental, physical, emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The disability, disfigurement, loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time; and

The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Comment**

If liability is not disputed, this instruction should be modified accordingly.

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 5.2 Measures of Types of Damages

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The mental, physical, emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The disability, disfigurement, loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time; and

The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future.

## Comment

Insert only the appropriate bracketed items from this instruction into Instruction 5.1 (Damages—Proof). Additional paragraphs may have to be drafted to fit other types of damages. Particular claims may have special rules on damages. *See*, *e.g.*, Instructions 7.11 (Maintenance and Cure—Elements and Burden of Proof), 11.13 (Age Discrimination—Damages—Back Pay—Mitigation), and 11.14 (Age Discrimination—Damages—Willful Discrimination—Liquidated Damages).

Punitive and compensatory damages are subject to caps in Title VII cases. *See* 42 U.S.C. 1981a(b)(3). Regarding the amount of damages available under Title VII, *see Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999). The cap does not apply to front pay and back pay. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001). *See also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (defining front pay and back pay); Introductory Comment to Chapter 10.

In Title VII and ADA cases, the court, not the jury, determines the amount of back pay. *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1069 (9th Cir. 2005); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-16 (1975). Under the Family Medical Leave Act, the court, not the jury, determines the

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

amount of front pay. *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1011-14 (9th Cir. 2010).

### 5.3 Damages—Mitigation

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.    that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.    the amount by which damages would have been mitigated.

### Comment

As to mitigation of damages in an action under the Age Discrimination in Employment Act, *see* Instruction 11.13 (Age Discrimination—Damages—Back Pay—Mitigation).

### 5.4 Damages Arising in the Future—Discount to Present Cash Value

[Any award for future economic damages must be for the present cash value of those damages.]

Noneconomic damages such as pain and suffering, disability, disfigurement and loss of enjoyment of life are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages [will be incurred] [or] [would have been received].

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. [You should also consider decreases in the value of money that may be caused by future inflation.]

### Comment

There must be evidence to support this instruction.  *See Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 339-42 (1988); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 508-09 (9th Cir. 2000).

# 5.5 Punitive Damages

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

# Comment

Punitive damages are not available in every case.  For example, punitive damages are not available against municipalities, counties or other governmental entities unless expressly authorized by statute.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981).  Punitive damages may, however, be available against governmental employees acting in their individual capacities.  *See Monell v.*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

*New York City Dept. of Soc. Services,* 436 U.S. 658 (1978); *City of Newport,* 453 U.S. at 254. In diversity cases, look to state law for an appropriate instruction.

Whether and under what criterion punitive damages are available depends upon the substantive standards applicable to the underlying claim for relief, and, therefore, the third paragraph of this instruction should be modified accordingly.

As to Title VII claims, an employer may be liable for punitive damages when the employer "discriminate[s] in the face of a perceived risk that its actions will violate federal law." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 514-15 (9th Cir. 2000) (citing *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 536 (1999). *See also Caudle v. Bristol Optical Co.*, 224 F.3d 1014, 1026-27 (9th Cir. 2000). Punitive and compensatory damages are subject to caps in Title VII cases. *See* 42 U.S.C. § 1981a(b)(3); *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc) (analyzing constitutionality of punitive damages under § 1981(b) when only nominal damages are awarded).

As to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir. 1993). In *Dang v. Cross,* the Ninth Circuit held this "statement of the law of punitive damages is incomplete, however. The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases. . . . [M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.' . . . Such acts are therefore all proper predicates for punitive damages under § 1983." 422 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade,* 416 U.S. 30, 49 (1983)). The *Dang* court held it was reversible error to decline to instruct that "oppressive acts" were an alternative basis for punitive damages in a § 1983 case.

Similarly, punitive damages claim arising under state law are subject to state law standards for recovery which should be reflected in a modified jury instruction. *See, e.g.*, *Coughlin v. Tailhook Ass'n,* 112 F.3d 1052, 1056 (9th Cir. 1997).

Punitive damages are an available remedy on an unseaworthiness claim. *Batteron v. Dutra Group*, 880 F.3d 1089 (9th Cir. 2018). But they are not available for Jones Act claims. *Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987) (citing *Kopczynski v. The Jacqueline*, 753 F.2d 555, 560-61 (9th Cir. 1984)).

Whether punitive damages need to be proved by a preponderance of the evidence or clear and convincing evidence also depends on the standards applicable to the underlying claim for relief. For example, several states in the Ninth Circuit require proof by clear and convincing evidence before punitive damages are awarded on a state law claim. On the other hand, a preponderance of the evidence standard has been upheld for punitive damages in certain federal claims. *See, e.g., In re Exxon Valdez,* 270 F.3d 1215, 1232 (9th Cir. 2001) (holding that preponderance standard applied to punitive damages claim in maritime case, citing *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23 n.11 (1991)).

If punitive damages are available and evidence of the defendant's financial condition is offered in support of such damages, a limiting instruction may be appropriate. *See* Instruction 1.11 (Evidence for Limited Purpose) and numbered paragraph (3) in Instruction 1.10 (What Is Not Evidence).

Regarding degree of reprehensibility and punitive damages generally, *see Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007), *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *see also Morgan v. Woessner*, 997 F.2d 1244, 1256 (9th Cir. 1993) ("*Haslip* said that instructions should be fashioned to describe the proper purposes of punitive damages so that the jury understands that punitive damages are not to compensate the plaintiff, but to punish the defendant and to deter the defendant and others from such conduct in the future."). *See also White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (holding that trial court's failure to give a "harm to nonparties" instruction violated due process and was reversible error after *Williams*). Bracketed language in the fourth paragraph of the instruction addresses this requirement when evidence concerning harm to nonparties is admitted on the issue of degree of reprehensibility.

Regarding whether to instruct the jury concerning the relationship of any award of punitive damages to compensatory damages, the Ninth Circuit noted in *White v. Ford Motor Co.* that this inquiry "is markedly different from the jury's determination of a specific amount of punitive damages; its purpose is to aid in ascertaining the constitutional *ceiling*. Unlike the initial damage calculation, determining the constitutional ceiling on a punitive damage award is a question of law, properly reserved for the court." 500 F.3d at 974 (emphasis in original). The court also observed that, although "states are certainly free to incorporate the reasonable relationship concept into jury instructions, . . . it is also constitutionally permissible for a district court to delay the reasonable relationship inquiry until the judge's post-verdict review." *Id.* Because Nevada chose the latter course, it was

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

not error in *White* for the district court to decline a "relationship inquiry" instruction. *Id.*

Regarding the constitutional due process issues involved in the "relationship inquiry," *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), referring to *Gore* and *Haslip* and stating that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1." In *State Farm*, the Court went on to say that "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting *Gore*, 517 U.S. at 582.) For an application of the *State Farm* ratio principles in the context of a 42 U.S.C. § 1981 case, *see Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774-77 (9th Cir. 2005). *But see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008) (applying federal maritime common law to conclude punitive damages could not exceed 1:1 ratio in maritime cases).

*Revised Mar. 2018*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**5.6 Nominal Damages**

The law that applies to this case authorizes an award of nominal damages.  If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**Comment**

Nominal damages are not available in every case.  The court must determine whether nominal damages are permitted.  *See, e.g., Chew v. Gates,* 27 F.3d 1432, 1437 (9th Cir. 1994) (Section 1983 action); *Parton v. GTE North, Inc.*, 971 F.2d 150, 154 (8th Cir. 1992) (Title VII action).

When a plaintiff has indisputably suffered an actual injury, an award of compensatory damages is mandatory.  *Hazle v. Crofoot*, 727 F.3d 983, 991-92 (9th Cir. 2013).  However, nominal damages "must be awarded in cases in which the plaintiff is not entitled to compensatory damages, such as cases in which no actual injury is incurred or can be proven."  *Id*. at n.6.

Regarding cases brought under 42 U.S.C. § 1983, *see Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (involving violation of procedural due process); *Hazle*, 727 F.3d at 991 n.6 (involving violation of substantive constitutional rights); *Floyd v. Laws*, 929 F.2d 1390, 1401 n.9 (9th Cir. 1991) (providing suggested language).

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# 9.  CIVIL RIGHTS ACTIONS—42 U.S.C. § 1983

9.1     Section 1983 Claim—Introductory Instruction
9.3     Section 1983 Claim Against Defendant in Individual Capacity—
        Elements and Burden of Proof
9.20    Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—
        Generally
9.23    Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—
        Probable Cause Arrest
9.25    Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—
        Excessive Force

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 9.1 Section 1983 Claim—Introductory Instruction

Plaintiff brings his claim under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

## Comment

The Committee notes that past decisions of the Supreme Court and the Ninth Circuit used the phrases "under color of law" and "under color of state law" interchangeably. *Compare, e.g., Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994), and *Azer v. Connell,* 306 F.3d 930, 935 (9th Cir. 2002) (using phrase "under color of law"), *with Nelson v. Campbell*, 541 U.S. 637, 643 (2004), and *Meyers v. Redwood City*, 400 F.3d 765, 770 (9th Cir. 2005) (using phrase "under color of state law").

Because recent Ninth Circuit case authority more frequently uses the phrase "under color of state law," rather than "under color of law," the Committee uses the phrase "under color of state law." *See Planned Parenthood Ariz.  Inc. v. Betlach*, 727 F.3d 960, 966 (9th Cir. 2013) ("Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States … of any rights, privileges, or immunities secured by the Constitution and laws.'"); *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2013) (using phrase "color of state law"); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (same); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012) (same).

In *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112 (9th Cir. 2022), the Ninth Circuit explained that when a private actor's conduct is challenged as "state action" under § 1983, a court looks to two requirements that the private actor must meet: (1) the state policy requirement; and (2) the state actor requirement.  Under the first requirement, the question is whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.  *Id*. at 1121-22.  Under the second requirement, courts generally use one of four tests outlined by the Supreme Court to examine whether the party charged with the deprivation could be described in all fairness as a "state actor."  *Id.* at 1122.  Those tests are the public function test, the joint action test, the state compulsion test, and the governmental nexus test.  *Id.  See also Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020).

For a discussion of the joint action test, *see Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167-71 (9th Cir. 2021).  For a discussion of the governmental nexus test, *see Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1170-73 (9th Cir. 2022) (holding that school board members engaged in state action when they operated social media pages on which they discussed official business with members of public and posted about budgetary issues, school board meeting dates, school safety and security issues, and other topics).

*Revised Dec. 2022*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

### 9.3 Section 1983 Claim Against Defendant in Individual Capacity—Elements and Burden of Proof

In order to prevail on his § 1983 claim against the Defendant Sergeant Kelly, Plaintiff must prove each of the following elements by a preponderance of the evidence:

1.  Defendant Sergeant Kelly acted under color of state law; and

2.  the act[s] of Defendant Sergeant Kelly deprived Plaintiff of his particular rights under the United States Constitution as explained in later instructions.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that the defendant acted under color of state law.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements he is required to prove under Instructions 9.20 and 9.23 or 9.20 and 9.25, your verdict should be for Plaintiff.  If, on the other hand, you find that Plaintiff has failed to prove any one or more of these elements, your verdict should be for Defendant Sergeant Kelly.

### Comment

Use this instruction only in conjunction with an applicable "particular rights" instruction, such as Instructions 9.9–9.33.  Such an instruction should set forth the additional elements a plaintiff must establish to prove the violation of the particular constitutional right or federal law at issue.

The elements of a § 1983 claim are (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  In order to be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation.  *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010).

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).  "To meet this causation

requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.*

In *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941-42 (9th Cir. 2020), the Ninth Circuit discussed, for the first time, the minimum level of involvement needed for § 1983 liability under the integral-participant doctrine. An actor may be deemed to have caused a constitutional violation under the "integral-participant doctrine," "only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022); *see id.* at 889-92 (holding that when non shooting officers did not form plan with shooting officers to shoot suspect, did not set in motion acts by shooting officers, and did not know or should have known constitutional violation would occur, non-shooting officers were not integral participants in constitutional violation). When liability is alleged against a defendant on this basis, the model instruction stated above will need to be modified.

*Revised Dec. 2022*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

## 9.20 Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally

As previously explained, the plaintiff has the burden of proving that the act[s] of Defendant Sergeant Kelly deprived the plaintiff of particular rights under the United States Constitution.  In this case, the plaintiff alleges the defendant deprived him of his rights under the Fourth Amendment to the Constitution when Defendant Sergeant Kelly arrested Plaintiff Joshua Assiff with excessive force.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of [his] [her] person.  In order to prove the defendant[s] deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1.      Defendant Sergeant Kelly seized the plaintiff's person;

2.      in seizing the plaintiff's person, Defendant Sergeant Kelly acted intentionally; and

3.      the seizure was unreasonable.

A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty through coercion, physical force or a show of authority.  A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, consider all of the circumstances, including:

1.      the number of officers present;

2.      whether weapons were displayed;

3.      whether the encounter occurred in a public or nonpublic setting;

4.      whether the officer's manner would imply that compliance would be compelled; and

---

71

5.    whether the officers advised the plaintiff that [he] [she] was free to leave.

[A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct.  Therefore, the plaintiff must prove that the defendant intended to arrest plaintiff with the use of pepper spray and other force.  It is not enough to prove that the defendant negligently or accidentally engaged in that action.  But while the plaintiff must prove that the defendant intended to act; the plaintiff need not prove that the defendant intended to violate the plaintiff's Fourth Amendment rights.].]

## Comment

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.3–9.8, and with an appropriate definition of an unreasonable seizure such as Instructions 9.21–9.25.

No separate instruction is provided for a child's claim for unreasonable removal by social workers.  Such action may violate the child's Fourth Amendment rights if the child is removed in the absence of either a warrant or exigent circumstances.  *See, e.g., Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 790-91 (9th Cir. 2016) (en banc) (holding that government official may take child away from parents' home without judicial authorization only "when officials have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant"); *see also Demaree v. Pederson*, 880 F.3d 1066 (9th Cir. 2018).  A parent may also be able to assert a Fourteenth Amendment claim in such circumstances for interference with the parent–child relationship.  *See* Instruction 9.32 (Particular Rights—Fourteenth Amendment—Due Process—Interference with Parent/Child Relationship); *see Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007).

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend IV.  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (omissions in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  This may occur through coercion, physical force, or a show of authority.  *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997).  A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *see also Dees v. Cty. of San Diego*, 960 F.3d 1145, 1154 (9th Cir. 2020) (holding that seizure occurs if, in view of all circumstances surrounding incident, reasonable person would have believed she was not free to leave). A seizure, however, "does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* at 434; *see United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2014). The general rule is that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In addition, a seizure "requires either physical force … or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013).

In determining whether a reasonable person would have felt free to ignore police presence, the Ninth Circuit considers five factors: "(1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or nonpublic setting; (4) whether the officer's officious or authoritative manner would imply that compliance would be compelled; and (5) whether the officers advised the detainee of his right to terminate the encounter." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (quoting *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004)).

In *Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993), the Ninth Circuit explained that "stops" under the Fourth Amendment fall into three categories:

> First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may "seize" citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause.

*Id.* at 1252 (citations omitted).

If the court is able to determine as a matter of law that the plaintiff was seized, the Committee recommends the court instruct the jury accordingly and omit the portions of this instruction that define a seizure.

Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071-72 (9th Cir. 2012) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).  It is well settled that "negligent acts do not incur constitutional liability." *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002), *abrogated on other grounds by County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017).  Specific intent to violate a person's rights "is not a prerequisite to liability under § 1983." *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992).

With respect to the Fourth Amendment, the Supreme Court has defined a seizure of a person as "a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007).  Thus, this instruction includes an optional definition of the term "intentionally" for use when it would be helpful to the jury.  In addition, "while the traditional Fourth Amendment analysis 'is predominantly an objective inquiry,' the 'actual motivations' of officers may be considered when applying the special needs doctrine." *Scott v. City. of San Bernardino*, 903 F.3d 943, 949 (9th Cir. 2018) (affirming summary judgment in favor of plaintiff middle school students unreasonably arrested without probable cause).  A Fourth Amendment seizure of a bystander can occur when officers intentionally use force that injures the bystander. *Villanueva v. California*, 986 F.3d 1158, 1168 (9th Cir. 2021) (citing *Nelson v. City of Davis*, 685 F.3d 867, 876 (9th Cir. 2012)).

*Revised Mar. 2021*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

**9.23 Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Probable Cause Arrest**

In general, a seizure of a person by arrest without a warrant is reasonable if Defendant Sergeant Kelly had probable cause to believe the plaintiff has committed or was committing a crime.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry.

Under California law, it is a crime to resist a law enforcement officer *(Penal Code* section 69) or to commit battery against the person of an officer *(Penal Code* section 243(b)).

**Comment**

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.3–9.8, and in conjunction with Instruction 9.20 (Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County,* 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (alteration in original) (quoting *Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

officer, amount to probable cause.  Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules.  It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  Probable cause is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations and citations omitted).

In *Devenpeck v. Alford*, the Supreme Court reiterated the Fourth Amendment standards applicable in a § 1983 claim for false arrest:

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.  Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.  That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.  As we have repeatedly explained, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." . . . "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."

*Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004) (citations omitted) (emphasis in original); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012).

"There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010) (quoting *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without

violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "'[S]tate restrictions [on arrest] do not alter the Fourth Amendment's protections,' and under federal law, 'warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.'" *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (second alteration in original) (quoting *Virginia v. Moore*, 553 U.S. 164, 176 (2008)). A warrantless arrest for a crime committed in the presence of an arresting officer is permitted, even if the offense, as a matter of state law, was one for which the officers should have issued a summons rather than made an arrest. *Moore*, 553 U.S. at 167-72. Absent exigent circumstances, however, authority to make a warrantless arrest based on probable cause ends at the threshold of a private dwelling, and police may not make a warrantless, nonconsensual entry into a suspect's residence to make a felony arrest. *Payton v. New York*, 445 U.S. 573, 590 (1980); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009). "[A] 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" *Nicholson* v. City of Los Angeles, 935 F.3d 685, 691 (9th Cir. 2019).

"While the traditional Fourth Amendment analysis 'is predominantly an objective inquiry,' the 'actual motivations' of officers may be considered when applying the special needs doctrine." *Scott v. City. of San Bernardino*, 903 F.3d 943, 949 (9th Cir. 2018) (affirming summary judgment in favor of plaintiff middle school students unreasonably arrested without probable cause).

In *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 940-41 (9th Cir. 2020), the Ninth Circuit explained when a *Terry* stop has escalated into a full-blown arrest. This case arose in the context of a person who might not lawfully be in the United States. The Court also noted that, unlike illegal entry into the United States, which is a crime under 8 U.S.C. § 1325, illegal presence is not a crime. *Id.* at 938.

*Revised Sept. 2020*

## 9.25 Particular Rights—Fourth Amendment—Unreasonable

## Seizure of Person—Excessive Force

In general, a seizure of a person is unreasonable under the Fourth
Amendment if a police officer uses excessive force in making a lawful arrest and/or
in defending himself or another and/or in attempting to overcome the resistance of a
noncompliant suspect.  Therefore, to establish an unreasonable seizure in this case,
the plaintiff must prove by a preponderance of the evidence that Defendant
Sergeant Kelly used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is
"objectively reasonable" under all of the circumstances.  You must judge the
reasonableness of a particular use of force from the perspective of a reasonable
officer on the scene and not with the 20/20 vision of hindsight.   Although the facts
known to the officer are relevant to your inquiry, an officer's subjective intent or
motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider
all of the circumstances known to the officer on the scene, including:

(1)    the nature of the crime or other circumstances known to Defendant
Sergeant Kelly at the time force was applied;

(2)    whether the plaintiff posed an immediate threat to the safety of
Defendant Sergeant Kelly or to others;

(3)    whether the plaintiff was actively resisting arrest or attempting to
evade arrest by flight;

(4)    the amount of time Defendant Sergeant Kelly had to determine the
type and amount of force that reasonably appeared necessary, and any
changing circumstances during that period;

(5)    the relationship between the need for the use of force and the amount
of force used;

(6)    the extent of the plaintiff's injury;

(7)    any effort made by the officer to temper or to limit the amount of
force;

(8)    the severity of the security problem at issue;

(9)    the availability of alternative methods to take the plaintiff into custody and/or to subdue the plaintiff;

(10)   the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

(11)   whether it was practical for Defendant Sergeant Kelly to give warning of the imminent use of force, and whether such warning was given;

(12)   whether it should have been apparent to Defendant Sergeant Kelly that the person he used force against was emotionally distressed and/or disturbed; and

(13)   whether a reasonable officer would have or should have accurately perceived a mistaken fact.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

## Comment

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.3–9.8, and in conjunction with Instruction 9.20 (Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally).

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as set forth in *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021), *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017), *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490 U.S. 386, 397 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985). *See also Lombardo*, 141 S. Ct. at 2241 n.2 (explaining that objective reasonableness standard applies whether excessive force claim is brought under Fourth Amendment or Fourteenth Amendment). The objective reasonableness of such conduct is assessed by balancing the nature and quality of the intrusion on Fourth Amendment rights against the government's countervailing interest in the force used. *Estate of Aguirre v. County of Riverside*,

29 F.4th 624, 628 (9th Cir. 2022) (quoting *Graham*, 490 U.S. at 396); *see Mendez*, 137 S. Ct. at 1546 ("'[D]etermining whether the force used to effect a particular seizure is reasonable requires balancing of the individual's Fourth Amendment interests against the relevant government interests.'" (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396)); *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) ("To determine whether an officer's actions were objectively reasonable, we consider: '(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.'" (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[A]n 'officer's use of force cannot be deemed excessive based on facts that he [or she] reasonably would not have known or anticipated.'"). Further, the "analysis is not static, and the reasonableness of force may change as the circumstances evolve." *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022); *see also Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022) ("All determinations of unreasonable force must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (internal quotation marks omitted)). An officer's subjective intent or motivation is not relevant to the reasonableness inquiry. *See Graham*, 490 U.S. at 397; *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017).

In assessing a claim of excessive force, the jury should consider the three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor*. *See Williamson*, 23 F.4th at 1153; *Rice*, 989 F.3d at 1121. These factors are commonly referred to as *Graham* factors. *See, e.g.*, *Estate of Aguirre*, 29 F.4th at 628. The three *Graham* factors are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries*, 39 F.4th 591, 599 (9th Cir. 2022); *see also Estate of Aguirre*, 29 F.4th at 628 (describing second *Graham* factor as "the level of immediate threat [the individual] posed to the officer or others"). The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (internal

quotation marks omitted); *see, e.g.*, *Hyde*, 23 F.4th at 870; *Williamson*, 23 F.4th at 1153.

"Other factors, in addition to the three *Graham* factors, may be pertinent in deciding whether a use of force was reasonable under the totality of the circumstances." *Nehad v. Browder*, 929 F.3d 1125, 1137 (9th Cir. 2019); *see also Mattos*, 661 F.3d at 441 ("[W]e examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." (internal quotation marks omitted)).

In *Kingsley v. Hendrickson*, the Supreme Court listed several additional factors that are relevant to an excessive force inquiry.  *See* 576 U.S. 389, 397 (2015).  The Supreme Court has referred to these factors as the *Kingsley* factors.  *See, e.g.*, *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021).  The *Kingsley* factors are:

> "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Lombardo*, 141 S. Ct. at 2241 (quoting *Kingsley*, 576 U.S. at 397); *accord Demarest*, 44 F.4th at 1225; *Hyde*, 23 F.4th at 870.

Additional factors set forth by Ninth Circuit in prior cases include:

1.    the type and amount of force used, *see Seidner*, 39 F.4th at 596; *Williamson*, 23 F.4th at 1151–52 ("The nature and degree of physical contact are relevant to this analysis, as are the 'risk of harm and the actual harm experienced.'" (citations omitted)); *see also Lombardo*, 141 S. Ct. at 2241 (listing as factor: "'the relationship between the need for the use of force and the amount of force used'" (quoting *Kingsley*, 576 U.S. at 397));

2.    "whether 'less intrusive alternatives' were available to law enforcement," *Seidner*, 39 F.4th at 599; *see Nehad*, 929 F.3d at 1138 (listing as factor: "'the availability of alternative methods of capturing or subduing a suspect'" (quoting *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005))); *see also Lombardo*, 141 S. Ct. at 2241 (listing as factor: "'any effort made by the officer to temper or to limit the amount of force'" (quoting *Kingsley*, 576 U.S. at 397)); *Nehad*, 929 F.3d at 1138 ("Police need not employ the least intrusive means available; they need only act

within the range of reasonable conduct."); *Rice*, 989 F.3d at 1124 ("officers 'need not avail themselves of the least intrusive means of responding to an exigent situation'");

2.    "'the number of lives at risk'" and the parties' "'relative culpability,'" *Mattos*, 661 F.3d at 441 (quoting *Scott*, 550 U.S. at 384); *see Williamson*, 23 F.4th at 1153 ("Where an arrestee's conduct risks the lives or safety of innocent bystanders, the court also considers her relative culpability under the second [*Graham*] factor.");

3.    whether the officers independently evaluated the situation when they arrived, *see Rice*, 989 F.3d at 1122 ("[O]fficers have a duty to independently evaluate a situation when they arrive, if they have an opportunity to do so.");

4.    whether the individual "was given 'proper warnings' before force was used," *Seidner*, 39 F.4th at 599 (quoting *Rice*, 989 F.3d at 1122); *see Nehad*, 929 F.3d at 1137 ("Whether an officer warned a suspect that failure to comply with the officer's commands would result in the use of force is another relevant factor in an excessive force analysis."); *see also Estate of Aguirre*, 29 F.4th at 628 ("Before using deadly force, law enforcement must, 'where feasible,' issue a warning." (quoting *Garner*, 471 U.S. at 11-12));

5.    whether the officers were responding to a domestic violence disturbance, *see George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013) ("Domestic violence situations are 'particularly dangerous' because 'more officers are killed or injured on domestic violence calls than on any other type of call.'" (quoting *Mattos*, 661 F.3d at 450));

6.    "whether it should have been apparent to officers that the person they used force against was emotionally disturbed," *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021) (quoting *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011)); *see Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) ("'[W]hether the suspect has exhibited signs of mental illness is one of the factors the court will consider in assessing the reasonableness of the force used.'");

7.    where "'an officer's particular use of force is based on a mistake of fact, . . . whether a reasonable officer would have or *should* have accurately perceived that fact,'" *Nehad*, 929 F.3d at 1133 (emphasis in original) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011)); *see also Torres*, 648 F.3d at 1127 ("[U]nder *Graham*, whether the mistake was an *honest* one is not the concern, only whether it was a *reasonable* one");

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

8.    whether the police officer failed "to identify himself or herself as such," *Nehad*, 929 F.3d at 1138;

9.    when the use of deadly force is at issue, whether the office has probable cause to believe that the individual poses a significant threat of death or serious physical injury to the officer or others, *see Tabares*, 988 F.3d at 1126 ("Under federal law, deadly force can be reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." (internal quotation marks omitted) (quoting *Garner,* 471 U.S. at 3)); *see also Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) ("use of deadly force against a non-threatening suspect is unreasonable" (citing *Garner,* 471 U.S. at 11–12)); and

10.    when deadly force is at issue, how quickly the officer used deadly force after encountering the individual, *see A. K. H v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016) (finding "most important" that officer at issue "escalated to deadly force very quickly").

The jury must consider "the type and amount of force," *Seidner*, 39 F.4th at 596, which may be quantified. "Some uses of force can be quantified categorically. The best example is shooting a firearm, which by definition is 'deadly force': force that 'creates a substantial risk of causing death or serious bodily injury.'" *Id.* "Most often, however, quantifying a particular use of force requires consideration of the 'specific factual circumstances' surrounding the event." *Id.* "For example, [the Ninth Circuit] has classified deployment of a police dog as both a severe use of force and a moderate use of force depending on the suspect's condition when the dog was ordered to attack, how long the attack lasted, and whether the dog was within its handler's control." *Id.* Similarly, "physical contact like hitting and shoving" and "roadblocks" are each "a type of force that must be quantified in reference to the surrounding circumstances." *Id.* at 597. In *Seidner*, the Ninth Circuit held that an officer who used his patrol car to block a suspect fleeing on his bicycle had used "intermediate force," defined as "force *capable* of inflicting significant pain and causing serious injury." *Id.* at 599. The court declined to create "a blanket rule that using a vehicle to block the path of a quickly moving cyclist, without allowing sufficient distance for the cyclist to avoid a collision, constitutes deadly force," because "[n]ot all roadblocks used [to stop cyclists] present the same level of risk, and the extent of the 'risk of harm and the actual harm experienced' are essential inquiries in determining whether an officer's actions were reasonable under the Fourth Amendment." *Id.*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

If deadly force is used, it is excessive unless the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury." *Garner*, 471 U.S. at 3.  By contrast, "the use of intermediate force must be justified by more than 'a minimal interest' held by the government."  *Seidner*, 39 F.4th at 600.  "[A] suspect's previous violent conduct does not justify non-trivial force where the suspect poses no immediate safety threat."  *Andrews*, 35 F.4th at 719.

The first *Graham* factor, the "severity of the crime at issue," should be modified as appropriate when officers are acting in a "community caretaking capacity" rather than to counter crime.  *Ames v. King County*, 846 F.3d 340, 349 (9th Cir. 2017).  In such circumstances, "the better analytical approach" focuses the inquiry on the seriousness of the situation that gives rise to the community-caretaking function.  *See id.*

It is not error for a trial court to decline to single out one factor in the reasonableness inquiry, when the instructions properly charge the jury to consider all of the circumstances that confronted the officer.  *See Lam v. City of San Jose*, 869 F.3d 1077, 1087 (9th Cir. 2017) (affirming district court declining "bad tactics" instruction).  It is not error for a trial court to decline to instruct explicitly on the availability of "alternative courses of action" when the instructions as a whole "fairly and adequately cover[ed] the issues presented."  *Brewer v. City of Napa*, 210 F.3d 1093, 1096-97 (9th Cir. 2000).

In *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017), the Supreme Court rejected the Ninth Circuit's "provocation rule" and abrogated *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002).  The provocation rule had permitted a law enforcement officer to be held responsible for an otherwise reasonable use of force when the officer intentionally or recklessly provoked a violent confrontation through a warrantless entry that was itself an independent Fourth Amendment violation.  In *Mendez*, the Supreme Court eliminated this rule.

*Revised March 2023*

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On July 10, 2023, I served the foregoing document described as **DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

**By Mail** I caused such envelope(s) to be deposited in the mail at El Segundo, California. The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX    **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List. My email address is mnixon@kmslegal.com.

**By Personal Service** I caused such document to be Personally Served on the parties listed in the Service List.

XX    **State** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 10, 2023, at El Segundo, California.

_____
Maria Nixon

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS

1

## <u>SERVICE LIST</u>

2

3

### <u>Assiff, Joshua vs. County of Los Angeles, et al.</u>
Central District- Case No.: 2:22-cv-05367 RGK(MAAx)

4

5

| | |
|---|---|
| Thomas M. Ferlauto, Esq.<br>Law Office of Thomas M. Ferlauto, APC<br>25201 Paseo de Alicia, Ste. 270<br>Laguna Hills, CA 92653<br>EM: tmf@lawofficetmf.com | **Attorney for Plaintiff,**<br>**JOSHUA ASSIFF** |
| Philip Cohen, Esq.<br>Law Offices of Philip Kent Cohen, APC<br>100 Wilshire Boulevard, Suite 1300<br>Santa Monica, CA  90401<br>Telephone:  310/451-9111<br>Facsimile:   310/451-9119<br>EM:  pcohen@pcohenlaw.com | **Co-Attorney for Plaintiff.**<br>**JOSHUA ASSIFF** |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S FURTHER [PROPOSED] JURY INSTRUCTIONS